## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

COOPERVISION, INC.

        Plaintiff

v.

CIBA VISION CORP.

        Defendant.

C.A. No. 06-239-SLR

## CIBA VISION'S MOTION FOR LEAVE TO FILE
## AN AMENDED ANSWER AND COUNTERCLAIMS

Defendant, CIBA Vision Corporation ("CIBA"), respectfully moves the Court, pursuant to Fed. R. Civ. P. 15(a), for leave to file the "First Amended Answer and Counterclaim to Complaint for Declaratory Judgment" attached hereto as Exhibit A.[1]

This action was filed on April 11, 2006 by CooperVision, Inc., seeking a declaratory judgment that CIBA Vision's patents are invalid and not infringed by CooperVision's Biofinity contact lenses. See D.I. 1. CIBA now seeks to amend its July 5, 2006 Answer (D.I. 10) and add counterclaims alleging that CooperVision's contact lenses, which were already at issue in the suit, infringe the same patents for which CooperVision seeks a declaration of non-infringement and invalidity. The counterclaims do not assert any new patents that were not previously at issue in the suit.

At the June 14, 2007 discovery conference, the Court directed CIBA to serve responses to CooperVision's contention interrogatories, setting forth CIBA's patent infringement contentions, by August 15, 2007. CIBA has complied with the Court's order (see D.I. 57). At the same time,

---

[1]    Pursuant to D. Del. LR 15.1, a blackline copy of CIBA's proposed "First Amended Answer and Counterclaim to Complaint for Declaratory Judgment" is attached hereto as Exhibit B. Additions are underlined, and redactions are in brackets.

the Court directed that the August 13, 2007 deadline for filing motions to amend the pleadings or join additional parties would be extended to October 1, 2007. As the transcript of the discovery conference clearly shows, the Court and the parties contemplated and expected at that CIBA would be filing an Amended Answer and Counterclaims for infringement of the patents in suit, no later than the Court's new deadline of October 1, 2007. See *Transcript of June 14, 2007 Discovery Conference* at pp. 42-44 (Exhibit C).

In view of the foregoing, and the fact that CIBA is seeking leave to file its Amended Answer and Counterclaims now, well in advance of the Court's October 1, 2007 deadline, granting this motion for leave is entirely appropriate. This is particularly true in view of the admonition of Fed. R. Civ. P. 15(a) that "leave [to amend] shall be freely given when justice so requires." In this case, it would certainly be unjust to deny CIBA the right to assert claims of infringement by CooperVision of the very same patents as to which CooperVision has already claimed that its lenses does not infringe.

In view of the foregoing, CIBA respectfully requests that the Court enter an Order in the form attached hereto, granting CIBA leave to file the "First Amended Answer and Counterclaim to Complaint for Declaratory Judgment" attached as Exhibit A.

YOUNG CONAWAY STARGATT & TAYLOR LLP

*/s/ Karen L. Pascale*

Date: August 27, 2007

Karen L. Pascale (No. 2903) [kpascale@ycst.com]
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone:  302-571-6600

2

Robert F. Altherr
BANNER & WITCOFF, LTD.
1001 G Street, N.W., 11th Floor
Washington, DC  20001
Telephone:  202-508-9100
Facsimile:  202-508-9299

Timothy C. Meece
Thomas K. Pratt
Shawn P. Gorman
BANNER & WITCOFF, LTD.
Ten South Wacker Drive
Suite 3000
Chicago, Illinois  60606-7407
Telephone:  312-463-5000
Facsimile:  312-463-5001

John P. Iwanicki
BANNER & WITCOFF, LTD.
28 State Street
28th Floor
Boston, MA 02109
Phone: 617-720-9600
Facsimile: 617-720-9601

***Attorneys for Defendant,
CIBA Vision Corporation***

065274.1001

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on August 27, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Jack B. Blumenfeld     jbbefiling@mnat.com
> Morgan Chu     mchu@irell.com
> David I. Gindler     dgindler@irell.com
> Amir A. Naini     anaini@irell.com
> Douglas G. NeJaime     dnejaime@irell.com
> Jason G. Sheasby     jsheasby@irell.com, mdonovan@irell.com
> Jonathan Steinsapir     jsteinsapir@irell.com
> Ben Yorks     byorks@irell.com

I further certify that on August 27, 2007, I caused a copy of the foregoing document to be served on certain of the above-listed counsel and on certain non-registered participants, as listed below in the manner indicated:

### *By Hand Delivery and E-Mail*

Jack B. Blumenfeld [jblumenfeld@mnat.com]
Rodger D. Smith II [rsmith@mnat.com]
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200

### *By E-Mail*

Morgan Chu [mchu@irell.com]
David I. Gindler [dgindler@irell.com]
Jason G. Sheasby [JSheasby@irell.com]
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067
(310) 277-1010

*/s/ Karen L. Pascale*
_____
Karen L. Pascale (No. 2903)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
Email:  kpascale@ycst.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COOPERVISION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-239-SLR |
| | ) | |
| CIBA VISION CORP., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

## FIRST AMENDED ANSWER AND COUNTERCLAIM TO COMPLAINT FOR DECLARATORY JUDGMENT

### Demand For Jury Trial

Defendant, CIBA VISION CORPORATION ("CIBA"), by and through its attorneys,

YOUNG CONAWAY STARGATT & TAYLOR LLP and BANNER & WITCOFF LTD., and

for its Answer to the Plaintiff, COOPERVISION, INC.'s ("CooperVision") Complaint, alleges

as follows:

### PARTIES, JURISDICTION AND VENUE

1.  This action arises under the Untied States Patent Act, 35 U.S.C. § 101, *et seq.*, and
    the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*

RESPONSE: CIBA admits the allegations contained in paragraph 1 of the Complaint for

Declaratory Judgment.

2.  Plaintiff CooperVision is a Corporation organized and existing under the laws of
    the State of New York. It has its principal place of business in Fairport, New
    York, and does business in the District of Delaware.

RESPONSE: CIBA is without knowledge or information sufficient to form a belief as to the

truth of the averments in this paragraph.

3.  CooperVision is informed and believes and on that basis alleges that CIBA is a
    corporation organized and existing under the laws of the State of Delaware.

CooperVision is informed and believes and on that basis alleges that CIBA has its principal place of business in Duluth, Georgia, and does business in the District of Delaware.

RESPONSE:    CIBA admits that it is a corporation organized and existing under the laws of the State of Delaware.  CIBA admits that it has its principal place of business in Duluth, Georgia, and does business in the District of Delaware.  CIBA is without knowledge or information sufficient to form a belief as to the truth of the other averments contained in this paragraph.

4.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 2201, 2202, 1331 and 1338(a), and venue in this District is proper under 28 U.S.C. § 1391.

RESPONSE:    CIBA admits the allegations contained in paragraph 4 of the Complaint for Declaratory Judgment.

## THE PATENTS-IN-SUIT

5.    United States Patent No. 5,760,100 ("the '100 patent"), entitled "Extended wear ophthalmic lens," was issued on June 2, 1998.  A Reexamination Certificate for the '100 patent was issued on November 14, 2000.  CooperVision is informed and believes and on that basis alleges that CIBA is the owner by assignment of all right, title and interest in and to this patent.  A true and correct copy of the '100 patent is attached hereto as Exhibit A.

RESPONSE:    CIBA admits the allegations contained in paragraph 5 of the Complaint for Declaratory Judgment.

6.    United States Patent No. 5,776,999 ("the '999 patent"), entitled "Methods of using and screening extended wear ophthalmic lenses," was issued on July 7, 1998.  A Reexamination Certificate for the '999 patent was issued on November 21, 2000.  CooperVision is informed and believes and on that basis alleges that CIBA is the owner by assignment of all right, title and interest in and to this patent.  A true and correct copy of the '999 patent is attached hereto as Exhibit B.

RESPONSE:    CIBA admits the allegations contained in paragraph 6 of the Complaint for Declaratory Judgment.

2

7.  United States Patent No. 5,789,461 ("the '461 patent"), entitled "Methods of forming an extended wear ophthalmic lens having a hydrophilic surface," was issued on August 4, 1998. A Reexamination Certificate for the '461 patent was issued on November 21, 2000. CooperVision is informed and believes and on that basis alleges that CIBA is the owner by assignment of all right, title and interest in and to this patent. A true and correct copy of the '461 patent is attached hereto as Exhibit C.

RESPONSE:  CIBA admits the allegations contained in paragraph 7 of the Complaint for Declaratory Judgment.

8.  United States Patent No. 5,849,811 ("the '811 patent"), entitled "Extended wear ophthalmic lens," was issued on December 15, 1998. A Reexamination Certificate for the '811 patent was issued on November 14, 2000. CooperVision is informed and believes and on that basis alleges that CIBA is the owner by assignment of all right, title and interest in and to this patent. A true and correct copy of the '811 patent is attached hereto as Exhibit D.

RESPONSE:  CIBA admits the allegations contained in paragraph 8 of the Complaint for Declaratory Judgment.

9.  United States Patent No. 5,965,631 ("the '631 patent"), entitled "Extended wear ophthalmic lens," was issued on October 12, 1999. CooperVision is informed and believes and on that basis alleges that CIBA is the owner by assignment of all right, title and interest in and to this patent. A true and correct copy of the '631 patent is attached hereto as Exhibit E.

RESPONSE:  CIBA admits the allegations contained in paragraph 9 of the Complaint for Declaratory Judgment.

10.  United States Patent No. 6,951,894 ("the '894 patent"), entitled "Extended wear ophthalmic lens," was issued on October 4, 2005. CooperVision is informed and believes and on that basis alleges that CIBA is the owner by assignment of all right, title and interest in and to this patent. A true and correct copy of the '894 patent is attached hereto as Exhibit F.

RESPONSE:  CIBA admits the allegations contained in paragraph 10 of the Complaint for Declaratory Judgment.

11.  Each of the foregoing patents lists a common set of inventors, the first of whom is Paul Clement Nicolson, and on their cover pages specify a common related

3

United States Application No. 08/301,166. Collectively, they are referred to in this Complaint as the "Nicolson Patents."

RESPONSE: CIBA admits the allegations contained in paragraph 11 of the Complaint for Declaratory Judgment.

## COMMON ALLEGATIONS

12.     On December 6, 2005, CooperVision received approval from the United States Food and Drug Administration ("FDA") to market in commerce contact lenses using its material comfilcon A for certain indications pursuant to Application No. K052560. CooperVision's comfilcon A lenses use the Biofinity brand name. These approved lenses are referred to in this Complaint as the "Biofinity lenses."

RESPONSE: CIBA admits the allegations contained in paragraph 12 of the Complaint for Declaratory Judgment.

13.     Shortly thereafter, CooperVision publicly announced the FDA approval and further announced that it would begin selling the Biofinity lenses in the United States during 2006. CooperVision has distributed Biofinity lenses in the United States.

RESPONSE: CIBA admits the allegations contained in paragraph 13 of the Complaint for Declaratory Judgment.

14.     Upon learning of the imminent release of the Biofinity lenses, CIBA made clear to CooperVision that CIBA believed the Biofinity lenses infringed the Nicolson Patents and that CIBA would asserts its patent rights against CooperVision upon commercial launch of the Biofinity line of lenses in the United States. CIBA has been aggressively asserting the Nicolson Patents and other patents in the industry.

RESPONSE: CIBA denies the allegations contained in paragraph 14 of the Complaint for Declaratory Judgment.

15.     CooperVision reasonably apprehends that it will imminently be sued by CIBA for infringement of the Nicolson Patents. There is an actual and justiciable controversy between CooperVision and CIBA as to whether CooperVision's Biofinity lenses infringe the Nicolson patents.

4

RESPONSE: CIBA admits that there is an actual and justiciable controversy between CooperVision and CIBA as to whether CooperVision's Biofinity lenses infringe the Nicolson patents. CIBA is without knowledge or information sufficient to form a belief as to the other averments contained in this paragraph including, but not limited to, CooperVision's alleged apprehension of suit and whether any such alleged apprehension was reasonable.

## CLAIMS FOR RELIEF

### COUNT I
**(Declaration of Non-infringement of any Valid and Enforceable Claim of the '100 patent)**

16.   CooperVision re-alleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 15, inclusive, as set forth above.

RESPONSE: CIBA re-alleges and incorporates herein by reference each and every one of its responses to paragraphs 1 through 15 of CooperVision's Complaint.

17.   The manufacture, use, sale, offer for sale, or importation of CooperVision's Biofinity lenses does not infringe any valid and enforceable claims of the '100 patent, either directly or under the doctrine of equivalents.

RESPONSE: CIBA denies the allegations contained in paragraph 17 of the Complaint for Declaratory Judgment.

18.   CooperVision is not contributing to or inducing infringement of any valid and enforceable claims of the '100 patent by the manufacture, use, sale, offer for sale, or importation of CooperVision's Biofinity lenses.

RESPONSE: CIBA denies the allegations contained in paragraph 18 of the Complaint for Declaratory Judgment.

19.   One or more claims of the '100 patent are invalid for failure to satisfy at least one of the requirements for patentability under 35 U.S.C. § 101, *et seq.*

RESPONSE: CIBA denies the allegations contained in paragraph 19 of the Complaint for Declaratory Judgment.

065274.1001

20.   A judicial declaration that CooperVision's Biofinity lenses do not infringe any valid and enforceable claims of the '100 patent is necessary and appropriate at this time so that CooperVision can ascertain its rights and duties.

RESPONSE:   CIBA denies the allegations contained in paragraph 20 of the Complaint for Declaratory Judgment.

## COUNT II
### (Declaration of Non-infringement of any Valid and Enforceable Claim of the '999 patent)

21.   CooperVision re-alleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 15 [sic], inclusive, as set forth above.

RESPONSE:   CIBA re-alleges and incorporates herein by reference each and every one of its responses to paragraphs 1 through 20 of CooperVision's Complaint.

22.   The manufacture, use, sale, offer for sale, or importation of CooperVision's Biofinity lenses does not infringe any valid and enforceable claims of the '999 patent, either directly or under the doctrine of equivalents.

RESPONSE:   CIBA denies the allegations contained in paragraph 22 of the Complaint for Declaratory Judgment.

23.   CooperVision is not contributing to or inducing infringement of any valid and enforceable claims of the '999 patent by the manufacture, use, sale, offer for sale, or importation of CooperVision's Biofinity lenses.

RESPONSE:   CIBA denies the allegations contained in paragraph 23 of the Complaint for Declaratory Judgment.

24.   One or more claims of the '999 patent are invalid for failure to satisfy at least one of the requirements for patentability under 35 U.S.C. § 101, *et seq.*

RESPONSE:   CIBA denies the allegations contained in paragraph 24 of the Complaint for Declaratory Judgment.

25.   A judicial declaration that CooperVision's Biofinity lenses do not infringe any valid and enforceable claims of the '999 patent is necessary and appropriate at this time so that CooperVision can ascertain its rights and duties.

6

RESPONSE:  CIBA denies the allegations contained in paragraph 25 of the Complaint for

Declaratory Judgment.

### COUNT III

**(Declaration of Non-infringement of any Valid and Enforceable Claim of the '461 patent)**

26.    CooperVision re-alleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 15 [sic], inclusive, as set forth above.

RESPONSE:  CIBA re-alleges and incorporates herein by reference each and every one of its

responses to paragraphs 1 through 25 of CooperVision's Complaint.

27.    The manufacture, use, sale, offer of sale, or importation of CooperVision's Biofinity lenses does not infringe any valid and enforceable claim of the '461 patent, either directly or under the doctrine of equivalents.

RESPONSE:  CIBA denies the allegations contained in paragraph 27 of the Complaint for

Declaratory Judgment.

28.    CooperVision is not contributing to or inducing infringement of any valid and enforceable claims of the '461 patent by the manufacture, sue, sale, offer for sale, or importation of CooperVision's Biofinity lenses.

RESPONSE:  CIBA denies the allegations contained in paragraph 28 of the Complaint for

Declaratory Judgment.

29.    One or more claims of the '461 patent are invalid for failure to satisfy at least one of the requirements for patentability under 35 U.S.C. § 101, *et seq.*

RESPONSE:  CIBA denies the allegations contained in paragraph 29 of the Complaint for

Declaratory Judgment.

30.    A judicial declaration that CooperVision's Biofinity lenses do not infringe any valid and enforceable claims of the '461 patent is necessary and appropriate at this time so that CooperVision can ascertain its rights and duties.

RESPONSE:  CIBA denies the allegations contained in paragraph 30 of the Complaint for

Declaratory Judgment.

7

## COUNT IV
**(Declaration of Non-infringement of any Valid and Enforceable Claim of the '811 patent)**

31.     CooperVision re-alleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 15 [sic], inclusive, as set forth above.

RESPONSE:    CIBA re-alleges and incorporates herein by reference each and every one of its

responses to paragraphs 1 through 30 of CooperVision's Complaint.

32.     The manufacture, use, sale, offer for sale, or importation of CooperVision's Biofinity lenses does not infringe any valid and enforceable claims of the '811 patent, either directly or under the doctrine of equivalents.

RESPONSE:    CIBA denies the allegations contained in paragraph 32 of the Complaint for

Declaratory Judgment.

33.     CooperVision is not contributing to or inducing infringement of any valid and enforceable claims of the '811 patent by the manufacture, use, sale, offer for sale, or importation of CooperVision's Biofinity lenses.

RESPONSE:    CIBA denies the allegations contained in paragraph 33 of the Complaint for

Declaratory Judgment.

34.     One of more claims of the '811 patent are invalid for failure to satisfy at least one of the requirements for patentability under 35 U.S.C. § 101, *et seq.*

RESPONSE:    CIBA denies the allegations contained in paragraph 34 of the Complaint for

Declaratory Judgment.

35.     A judicial declaration that CooperVision's Biofinity lenses do not infringe any valid and enforceable claims of the '811 patent is necessary and appropriate at this time so that CooperVision can ascertain its rights and duties.

RESPONSE:    CIBA denies the allegations contained in paragraph 35 of the Complaint for

Declaratory Judgment.

DB02:6198110.1                                              065274.1001

## COUNT V

### (Declaration of Non-infringement of any Valid and Enforceable Claim of the '631 patent)

36. CooperVision re-alleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 15 [sic] inclusive, as set forth above.

RESPONSE: CIBA re-alleges and incorporates herein by reference each and every one of its

responses to paragraphs 1 through 35 of CooperVision's Complaint.

37. The manufacture, use, sale, offer for sale, or importation of CooperVision's Biofinity lenses does not infringe any valid and enforceable claim of the '631 patent, either directly or under the doctrine of equivalents.

RESPONSE: CIBA denies the allegations contained in paragraph 37 of the Complaint for

Declaratory Judgment.

38. CooperVision is not contributing to or inducing infringement of any valid and enforceable claim of the '631 patent by the manufacture, use, sale, offer for sale, or importation of CooperVision's Biofinity lenses.

RESPONSE: CIBA denies the allegations contained in paragraph 38 of the Complaint for

Declaratory Judgment.

39. One or more claims of the '631 patent are invalid for failure to satisfy at least one of the requirements for patentability under 35 U.S.C. § 101, *et seq.*

RESPONSE: CIBA denies the allegations contained in paragraph 39 of the Complaint for

Declaratory Judgment.

40. A judicial declaration that CooperVision's Biofinity lenses do not infringe any valid and enforceable claims of the '631 patent is necessary and appropriate at this time so that CooperVision can ascertain its rights and duties.

RESPONSE: CIBA denies the allegations contained in paragraph 40 of the Complaint for

Declaratory Judgment.

9

<u>COUNT VI</u>

**(Declaration of Non-infringement of any Valid and Enforceable Claim of the '894 patent)**

41.    CooperVision re-alleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 15 [sic], inclusive, as set forth above.

<u>RESPONSE:</u>  CIBA re-alleges and incorporates herein by reference each and every one of its responses to paragraphs 1 through 40 of CooperVision's Complaint.

42.    The manufacture, use, sale, offer for sale, or importation of CooperVision's Biofinity lenses does not infringe any valid and enforceable claim the '894 patent, either directly or under the doctrine of equivalents.

<u>RESPONSE:</u>  CIBA denies the allegations contained in paragraph 42 of the Complaint for Declaratory Judgment.

43.    CooperVision is not contributing to or inducing infringement of any valid and enforceable claim of the '894 patent by the manufacture, use, sale, offer for sale, or importation of CooperVision's Biofinity lenses.

<u>RESPONSE:</u>  CIBA denies the allegations contained in paragraph 43 of the Complaint for Declaratory Judgment.

44.    One or more claims of the '894 patent are invalid for failure to satisfy at least one of the requirements for patentability under 35 U.S.C. § 101, *et seq.*

<u>RESPONSE:</u>  CIBA denies the allegations contained in paragraph 44 of the Complaint for Declaratory Judgment.

45.    A judicial declaration that CooperVision's Biofinity lenses do not infringe any valid and enforceable claims of the '894 patent is necessary and appropriate at this time so that CooperVision can ascertain its rights and duties.

<u>RESPONSE:</u>  CIBA denies the allegations contained in paragraph 45 of the Complaint for Declaratory Judgment.

DB02:6198110.1                                                                                               065274.1001

## COUNTERCLAIM

CIBA, for its counterclaim against CooperVision, alleges as follows:

## THE PARTIES

1.  CIBA is a corporation organized and existing under the laws of the State of Delaware, has a principal place of business in Duluth, Georgia and does business in the District of Delaware.

2.  On information and belief, CooperVision is a corporation organized and existing under the laws of the State of New York, has its principal place of business in Fairport, New York and does business in the District of Delaware.

## JURISDICTION AND VENUE

3.  This Counterclaim arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and particularly 35 U.S.C. §§ 271 and 281.

4.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 2201, 2202, 1331, 1338(a).

5.  Venue is proper in this District under 28 U.S.C. §1391.

6.  By the Complaint, CooperVision has expressly alleged that it does not infringe the '100, '999, '461, '811, '631 or '894 patents and has thus submitted itself to the jurisdiction and venue of this Court.

## COUNT I
### (Infringement of the '100 Patent)

7.  As a cause of action and ground for relief, CIBA alleges patent infringement under 35 U.S.C. §§ 271 and 281, and incorporates herein by reference the allegations set forth in Paragraphs 1 through 6 of this Counterclaim.

8.  CIBA is the sole owner of all right, title and interest to United States Patent No. 5,760,100 ("the '100 patent"), entitled "Extended Wear Ophthalmic Lenses," which was legally and duly issued to CIBA on June 2, 1998. The '100 patent was the subject of Reexamination Request No. 90/005,283, filed March 5, 1999. A Reexamination Certificate for the '100 patent was issued on November 14, 2000.

9.  CooperVision has, without authority or license from CIBA, made, used, offered to sell, sold and/or imported into the United States contact lenses that infringe the '100 patent in violation of 35 U.S.C. § 271(a).

065274.1001

10. CooperVision has been and still is contributing to the infringement and actively inducing others to infringe the '100 patent in violation of 35 U.S.C. §§ 271(b) and (c).

11. CooperVision's infringement has been with full knowledge of CIBA's '100 patent and deliberate and willful.

12. By reason of CooperVision's infringement of the '100 patent, CIBA has been irreparably harmed. Unless and until CooperVision is enjoined by this Court, CIBA will continue to suffer irreparable damage and injury for which it has no adequate remedy at law.

## COUNT II
### (Infringement of the '999 Patent)

13. As a cause of action and ground for relief, CIBA alleges patent infringement under 35 U.S.C. §§ 271 and 281, and incorporates herein by reference the allegations set forth in Paragraphs 1 through 6 of this Counterclaim.

14. CIBA is the sole owner of all right, title and interest to United States Patent No. 5,776,999 ("the '999 patent"), entitled "Methods of Using and Screening Extended Wear Ophthalmic Lenses," which was legally and duly issued to CIBA on July 7, 1998. The '999 patent was the subject of Reexamination Request No. 90/005,284, filed March 5, 1999. A Reexamination Certificate for the '999 patent was issued November 21, 2000.

15. CooperVision has, without authority or license from CIBA, made, used, offered to sell, sold and/or imported into the United States contact lenses that infringe the '999 patent in violation of 35 U.S.C. § 271(a).

16. CooperVision has been and still is infringing, contributing to the infringement and actively inducing others to infringe the '999 patent in violation of 35 U.S.C. §§ 271(b), (c), and (g).

17. CooperVision's infringement has been with full knowledge of CIBA's '999 patent and deliberate and willful.

18. By reason of CooperVision's infringement of the '999 patent, CIBA has been irreparably harmed. Unless and until CooperVision is enjoined by this Court, CIBA will continue to suffer irreparable damage and injury for which it has no adequate remedy at law.

12

## COUNT III
### (Infringement of the '461 Patent)

19.    As a cause of action and ground for relief, CIBA alleges patent infringement under 35 U.S.C. §§ 271 and 281, and incorporates herein by reference the allegations set forth in Paragraphs 1 through 6 of this Counterclaim.

20.    CIBA is the sole owner of all right, title and interest to United States Patent No. 5,789,461 ("the '461 patent"), entitled "Methods of Forming an Extended Wear Ophthalmic Lens Having a Hydrophilic Surface," which legally and duly issued to CIBA on August 4, 1998. The '461 patent was the subject of Reexamination Request No. 90/005,285, filed March 5, 1999. A Reexamination Certificate for the '461 patent was issued November 21, 2000.

21.    CooperVision has, without authority or license from CIBA, made, used, offered to sell, sold and/or imported into the United States contact lenses that infringe the '461 patent in violation of 35 U.S.C. § 271(a).

22.    CooperVision has been and still is infringing the '461 patent by reason of its importation of contact lens into the United States in violation of 35 U.S.C. § 271(g).

23.    CooperVision's infringement has been with full knowledge of CIBA's '461 patent and deliberate and willful.

24.    By reason of CooperVision's infringement of the '461 patent, CIBA has been irreparably harmed. Unless and until CooperVision is enjoined by this Court, CIBA will continue to suffer irreparable damage and injury for which it has no adequate remedy at law.

## COUNT IV
### (Infringement of the '811 Patent)

25.    As a cause of action and ground for relief, CIBA alleges patent infringement under 35 U.S.C. §§ 271 and 281, and incorporates herein by reference the allegations set forth in Paragraphs 1 through 6 of this Counterclaim.

26.    CIBA is the sole owner of all right, title and interest to United States Patent No. 5,849,811 ("the '811 patent"), entitled "Extended Wear Ophthalmic Lenses," which was legally and duly issued to CIBA on December 15, 1998. The '811 patent was the subject of Reexamination Request No. 90/005,286, filed March 5, 1999. A Reexamination Certificate for the '811 patent was issued November 14, 2000.

13

27. CooperVision has, without authority or license from CIBA, made, used, offered to sell, sold and/or imported into the United States contact lenses that infringe the '811 patent in violation of 35 U.S.C. § 271(a).

28. CooperVision has been and still is contributing to the infringement and actively inducing others to infringe the '811 patent in violation of 35 U.S.C. §§ 271(b) and (c).

29. CooperVision's infringement has been with full knowledge of CIBA's '811 patent and deliberate and willful.

30. By reason of CooperVision's infringement of the '811 patent, CIBA has been irreparably harmed. Unless and until CooperVision is enjoined by this Court, CIBA will continue to suffer irreparable damage and injury for which it has no adequate remedy at law.

## COUNT V

### (Infringement of the '631 Patent)

31. As a cause of action and ground for relief, CIBA alleges patent infringement under 35 U.S.C. §§ 271 and 281, and incorporates herein by reference the allegations set forth in Paragraphs 1 through 6 of this Counterclaim.

32. CIBA is the sole owner of all right, title and interest to United States Patent No. 5,965,631 ("the '631 patent"), entitled "Extended Wear Ophthalmic Lenses," which was legally and duly issued to CIBA on October 12, 1999.

33. CooperVision has, without authority or license from CIBA, made, used, offered to sell, sold and/or imported into the United States contact lenses that infringe the '631 patent in violation of 35 U.S.C. § 271(a).

34. CooperVision has been and still is contributing to the infringement and actively inducing others to infringe the '631 patent in violation of 35 U.S.C. §§ 271(b) and (c).

35. CooperVision's infringement has been with full knowledge of CIBA's '631 patent and deliberate and willful.

36. By reason of CooperVision's infringement of the '631 patent, CIBA has been irreparably harmed. Unless and until CooperVision is enjoined by this Court, CIBA will continue to suffer irreparable damage and injury for which it has no adequate remedy at law.

## COUNT VI
### (Infringement of the '894 Patent)

37.    As a cause of action and ground for relief, CIBA alleges patent infringement under 35 U.S.C. §§ 271 and 281, and incorporates herein by reference the allegations set forth in Paragraphs 1 through 6 of this Counterclaim.

38.    CIBA is the sole owner of all right, title and interest to United States Patent No. 6,951,894 ("the '894 patent"), entitled "Extended Wear Ophthalmic Lenses," which was legally and duly issued to CIBA on October 4, 2005.

39.    CooperVision has, without authority or license from CIBA, made, used, offered to sell, sold and/or imported into the United States contact lenses that infringe the '894 patent in violation of 35 U.S.C. § 271(a).

40.    CooperVision has been and still is infringing, contributing to the infringement and actively inducing others to infringe the '894 patent in violation of 35 U.S.C. §§ 271(b), (c), and (g).

41.    CooperVision's infringement has been with full knowledge of CIBA's '894 patent and deliberate and willful.

42.    By reason of CooperVision's infringement of the '894 patent, CIBA has been irreparably harmed.  Unless and until CooperVision is enjoined by this Court, CIBA will continue to suffer irreparable damage and injury for which it has no adequate remedy at law.

### JURY DEMAND

CIBA demands a jury trial on all issues so triable.

### PRAYER FOR RELIEF

**WHEREFORE,** CIBA respectfully requests the following relief:

A)    For a judgment in CIBA's favor on all claims for relief;

B)    For a judgment that CooperVision has infringed, contributed to the infringement, and/or actively induced others to infringe the patents-in-suit;

C)    For a judgment that the claims in the patents-in-suit are valid and enforceable;

15

D)  For a permanent injunction enjoining CooperVision, its officers, employees, agents, and all others acting in concert with it or participating with it from further infringing, contributing to the infringement and/or inducing infringement of the patents-in-suit;

E)  For CooperVision to be directed to provide an accounting to determine the damages suffered by CIBA as a result of CooperVision's infringing conduct, such damages including, but not limited to, CIBA's lost profits on sales of the infringing products;

F)  For a judgment that this case is exceptional pursuant to 35 U.S.C. § 285;

G)  For an award of damages adequate to compensate CIBA for CooperVision's infringement of the patents-in-suit pursuant to 35 U.S.C. § 284, which shall be trebled as a result of CooperVision's willful patent infringement, together with prejudgment interest and costs;

H)  For an assessment of costs, including reasonable attorney fees, pursuant to 35 U.S.C. § 285, with prejudgment interest; and

I)  For such other and further relief as this Court deems just and proper.

YOUNG CONAWAY STARGATT & TAYLOR LLP

*/s/ Karen L. Pascale*

August 27, 2007

Karen L. Pascale (No. 2903) [kpascale@ycst.com]
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone:  (3020 571-6600

Robert F. Altherr
Christopher B. Roth
BANNER & WITCOFF, LTD.
1001 G Street, N.W., 11th Floor
Washington, DC  20001
Telephone:  (202) 508-9100
Facsimile:  (202) 508-9299

16

John Iwanicki
BANNER & WITCOFF, LTD.
28 State Street
28th Floor
Boston, Massachusetts 02109
Telephone: (617) 720-9600
Facsimile: (617) 720-9601

Timothy C. Meece
Thomas K. Pratt
Shawn P. Gorman
BANNER & WITCOFF, LTD.
Ten South Wacker Drive
Suite 3000
Chicago, Illinois  60606-7407
Telephone:  312-463-5000
Facsimile:  312-463-5001

***Attorneys for Defendant,***
***CIBA Vision Corporation***

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COOPERVISION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-239-SLR |
| | ) | |
| CIBA VISION CORP., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

## FIRST AMENDED ANSWER AND COUNTERCLAIM TO COMPLAINT FOR DECLARATORY JUDGMENT

### Demand For Jury Trial

Defendant, CIBA VISION CORPORATION ("CIBA"), by and through its attorneys,

YOUNG CONAWAY STARGATT & TAYLOR LLP and BANNER & WITCOFF[.] LTD.,

and for its Answer to the Plaintiff, COOPERVISION, INC.'s ("CooperVision") Complaint,

alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1.    This action arises under the Untied States Patent Act, 35 U.S.C. § 101, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*

RESPONSE:  CIBA admits the allegations contained in paragraph 1 of the Complaint for

Declaratory Judgment.

2.    Plaintiff CooperVision is a Corporation organized and existing under the laws of the State of New York.  It has its principal place of business in Fairport, New York, and does business in the District of Delaware.

RESPONSE:  CIBA is without knowledge or information sufficient to form a belief as to the

truth of the averments in this paragraph.

3.    CooperVision is informed and believes and on that basis alleges that CIBA is a corporation organized and existing under the laws of the State of Delaware.

CooperVision is informed and believes and on that basis alleges that CIBA has its principal place of business in Duluth, Georgia, and does business in the District of Delaware.

RESPONSE:   CIBA admits that it is a corporation organized and existing under the laws of the

State of Delaware.   CIBA admits that it has its principal place of business in Duluth, Georgia,

and does business in the District of Delaware.   CIBA is without knowledge or information

sufficient to form a belief as to the truth of the other averments contained in this paragraph.

4.   This Court has subject matter jurisdiction under 28 U.S.C. §§ 2201, 2202, 1331 and 1338(a), and venue in this District is proper under 28 U.S.C. § 1391.

RESPONSE:   CIBA admits the allegations contained in paragraph 4 of the Complaint for

Declaratory Judgment.

## THE PATENTS-IN-SUIT

5.   United States Patent No. 5,760,100 ("the '100 patent"), entitled "Extended wear ophthalmic lens," was issued on June 2, 1998.   A Reexamination Certificate for the '100 patent was issued on November 14, 2000.   CooperVision is informed and believes and on that basis alleges that CIBA is the owner by assignment of all right, title and interest in and to this patent.   A true and correct copy of the '100 patent is attached hereto as Exhibit A.

RESPONSE:   CIBA admits the allegations contained in paragraph 5 of the Complaint for

Declaratory Judgment.

6.   United States Patent No. 5,776,999 ("the '999 patent"), entitled "Methods of using and screening extended wear ophthalmic lenses," was issued on July 7, 1998.   A Reexamination Certificate for the '999 patent was issued on November 21, 2000.   CooperVision is informed and believes and on that basis alleges that CIBA is the owner by assignment of all right, title and interest in and to this patent.   A true and correct copy of the '999 patent is attached hereto as Exhibit B.

RESPONSE:   CIBA admits the allegations contained in paragraph 6 of the Complaint for

Declaratory Judgment.

2

7.    United States Patent No. 5,789,461 ("the '461 patent"), entitled "Methods of forming an extended wear ophthalmic lens having a hydrophilic surface," was issued on August 4, 1998.  A Reexamination Certificate for the '461 patent was issued on November 21, 2000.  CooperVision is informed and believes and on that basis alleges that CIBA is the owner by assignment of all right, title and interest in and to this patent.  A true and correct copy of the '461 patent is attached hereto as Exhibit C.

RESPONSE:  CIBA admits the allegations contained in paragraph 7 of the Complaint for Declaratory Judgment.

8.    United States Patent No. 5,849,811 ("the '811 patent"), entitled "Extended wear ophthalmic lens," was issued on December 15, 1998.  A Reexamination Certificate for the '811 patent was issued on November 14, 2000.  CooperVision is informed and believes and on that basis alleges that CIBA is the owner by assignment of all right, title and interest in and to this patent.  A true and correct copy of the '811 patent is attached hereto as Exhibit D.

RESPONSE:  CIBA admits the allegations contained in paragraph 8 of the Complaint for Declaratory Judgment.

9.    United States Patent No. 5,965,631 ("the '631 patent"), entitled "Extended wear ophthalmic lens," was issued on October 12, 1999.  CooperVision is informed and believes and on that basis alleges that CIBA is the owner by assignment of all right, title and interest in and to this patent.  A true and correct copy of the '631 patent is attached hereto as Exhibit E.

RESPONSE:  CIBA admits the allegations contained in paragraph 9 of the Complaint for Declaratory Judgment.

10.    United States Patent No. 6,951,894 ("the '894 patent"), entitled "Extended wear ophthalmic lens," was issued on October 4, 2005.  CooperVision is informed and believes and on that basis alleges that CIBA is the owner by assignment of all right, title and interest in and to this patent.  A true and correct copy of the '894 patent is attached hereto as Exhibit F.

RESPONSE:  CIBA admits the allegations contained in paragraph 10 of the Complaint for Declaratory Judgment.

11.    Each of the foregoing patents lists a common set of inventors, the first of whom is Paul Clement Nicolson, and on their cover pages specify a common related

3

065274.1001

United States Application No. 08/301,166. Collectively, they are referred to in this Complaint as the "Nicolson Patents."

RESPONSE: CIBA admits the allegations contained in paragraph 11 of the Complaint for Declaratory Judgment.

## COMMON ALLEGATIONS

12. On December 6, 2005, CooperVision received approval from the United States Food and Drug Administration ("FDA") to market in commerce contact lenses using its material comfilcon A for certain indications pursuant to Application No. K052560. CooperVision's comfilcon A lenses use the Biofinity brand name. These approved lenses are referred to in this Complaint as the "Biofinity lenses."

RESPONSE: CIBA admits the allegations contained in paragraph 12 of the Complaint for Declaratory Judgment [CIBA is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph].

13. Shortly thereafter, CooperVision publicly announced the FDA approval and further announced that it would begin selling the Biofinity lenses in the United States during 2006. CooperVision has distributed Biofinity lenses in the United States.

RESPONSE: CIBA admits the allegations contained in paragraph 13 of the Complaint for Declaratory Judgment [CIBA admits that CooperVision has represented to the public that its Biofinity lenses will be made available to the public in July 2006. CIBA is without knowledge or information sufficient to form a belief as to the truth of the remaining averments in this paragraph].

14. Upon learning of the imminent release of the Biofinity lenses, CIBA made clear to CooperVision that CIBA believed the Biofinity lenses infringed the Nicolson Patents and that CIBA would asserts its patent rights against CooperVision upon commercial launch of the Biofinity line of lenses in the United States. CIBA has been aggressively asserting the Nicolson Patents and other patents in the industry.

RESPONSE:  CIBA denies the allegations contained in paragraph 14 of the Complaint for

Declaratory Judgment.

> 15.    CooperVision reasonably apprehends that it will imminently be sued by CIBA for infringement of the Nicolson Patents.   There is an actual and justiciable controversy between CooperVision and CIBA as to whether CooperVision's Biofinity lenses infringe the Nicolson patents.

RESPONSE:  [On information and belief,] CIBA admits that there is an actual and justiciable

controversy between CooperVision and CIBA as to whether CooperVision's Biofinity lenses

infringe the Nicolson patents.  CIBA is without knowledge or information sufficient to form a

belief as to the other averments contained in this paragraph including, but not limited to,

CooperVision's alleged apprehension of suit and whether any such alleged apprehension was

reasonable.


## CLAIMS FOR RELIEF

## COUNT I

**(Declaration of Non-infringement of any Valid and Enforceable Claim of the '100 patent)**

> 16.    CooperVision re-alleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 15, inclusive, as set forth above.

RESPONSE:  CIBA re-alleges and incorporates herein by reference each and every one of its

responses to paragraphs 1 through 15 of CooperVision's Complaint.

> 17.    The manufacture, use, sale, offer for sale, or importation of CooperVision's Biofinity lenses does not infringe any valid and enforceable claims of the '100 patent, either directly or under the doctrine of equivalents.

RESPONSE:  [On information and belief,] CIBA denies the allegations contained in paragraph

17 of the Complaint for Declaratory Judgment.

18.   CooperVision is not contributing to or inducing infringement of any valid and enforceable claims of the '100 patent by the manufacture, use, sale, offer for sale, or importation of CooperVision's Biofinity lenses.

RESPONSE:   [On information and belief,] CIBA denies the allegations contained in paragraph 18 of the Complaint for Declaratory Judgment.

19.   One or more claims of the '100 patent are invalid for failure to satisfy at least one of the requirements for patentability under 35 U.S.C. § 101, *et seq.*

RESPONSE:   CIBA denies the allegations contained in paragraph 19 of the Complaint for Declaratory Judgment.

20.   A judicial declaration that CooperVision's Biofinity lenses do not infringe any valid and enforceable claims of the '100 patent is necessary and appropriate at this time so that CooperVision can ascertain its rights and duties.

RESPONSE:   CIBA denies the allegations contained in paragraph 20 of the Complaint for Declaratory Judgment. [On information and belief, CIBA admits there is an actual and justiciable controversy between CooperVision and CIBA regarding the '100 patent.   CIBA denies the other averments contained in this paragraph. ]

## COUNT II
### (Declaration of Non-infringement of any Valid and Enforceable Claim of the '999 patent)

21.   CooperVision re-alleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 15 [sic], inclusive, as set forth above.

RESPONSE:   CIBA re-alleges and incorporates herein by reference each and every one of its responses to paragraphs 1 through 20 of CooperVision's Complaint.

22.   The manufacture, use, sale, offer for sale, or importation of CooperVision's Biofinity lenses does not infringe any valid and enforceable claims of the '999 patent, either directly or under the doctrine of equivalents.

DB02:6206716.1                                                                   065274.1001

RESPONSE:  [On information and belief,] CIBA denies the allegations contained in paragraph

22 of the Complaint for Declaratory Judgment.

    23.    CooperVision is not contributing to or inducing infringement of any valid and enforceable claims of the '999 patent by the manufacture, use, sale, offer for sale, or importation of CooperVision's Biofinity lenses.

RESPONSE:  [On information and belief,] CIBA denies the allegations contained in paragraph

23 of the Complaint for Declaratory Judgment.

    24.    One or more claims of the '999 patent are invalid for failure to satisfy at least one of the requirements for patentability under 35 U.S.C. § 101, *et seq.*

RESPONSE:  CIBA denies the allegations contained in paragraph 24 of the Complaint for

Declaratory Judgment.

    25.    A judicial declaration that CooperVision's Biofinity lenses do not infringe any valid and enforceable claims of the '999 patent is necessary and appropriate at this time so that CooperVision can ascertain its rights and duties.

RESPONSE:  CIBA denies the allegations contained in paragraph 25 of the Complaint for

Declaratory Judgment. [On information and belief, CIBA admits there is an actual and

justiciable controversy between CooperVision and CIBA regarding the '999 patent.  CIBA

denies the other averments contained in this paragraph.]


## COUNT III
### (Declaration of Non-infringement of any Valid and Enforceable Claim of the '461 patent)

    26.    CooperVision re-alleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 15 [sic], inclusive, as set forth above.

RESPONSE:  CIBA re-alleges and incorporates herein by reference each and every one of its

responses to paragraphs 1 through 25 of CooperVision's Complaint.

7

27. The manufacture, use, sale, offer of sale, or importation of CooperVision's Biofinity lenses does not infringe any valid and enforceable claim of the '461 patent, either directly or under the doctrine of equivalents.

RESPONSE:  [On information and belief,] CIBA denies the allegations contained in paragraph 27 of the Complaint for Declaratory Judgment.

28. CooperVision is not contributing to or inducing infringement of any valid and enforceable claims of the '461 patent by the manufacture, sue, sale, offer for sale, or importation of CooperVision's Biofinity lenses.

RESPONSE:  [On information and belief,] CIBA denies the allegations contained in paragraph 28 of the Complaint for Declaratory Judgment.

29. One or more claims of the '461 patent are invalid for failure to satisfy at least one of the requirements for patentability under 35 U.S.C. § 101, *et seq.*

RESPONSE:  CIBA denies the allegations contained in paragraph 29 of the Complaint for Declaratory Judgment.

30. A judicial declaration that CooperVision's Biofinity lenses do not infringe any valid and enforceable claims of the '461 patent is necessary and appropriate at this time so that CooperVision can ascertain its rights and duties.

RESPONSE:  CIBA denies the allegations contained in paragraph 30 of the Complaint for Declaratory Judgment. [On information and belief, CIBA admits there is an actual and justiciable controversy between CooperVision and CIBA regarding the '461 patent.  CIBA denies the other averments contained in this paragraph. ]

## COUNT IV
**(Declaration of Non-infringement of any Valid and Enforceable Claim of the '811 patent)**

31. CooperVision re-alleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 15 [sic], inclusive, as set forth above.

RESPONSE: CIBA re-alleges and incorporates herein by reference each and every one of its responses to paragraphs 1 through 30 of CooperVision's Complaint.

> 32. The manufacture, use, sale, offer for sale, or importation of CooperVision's Biofinity lenses does not infringe any valid and enforceable claims of the '811 patent, either directly or under the doctrine of equivalents.

RESPONSE: [On information and belief,] CIBA denies the allegations contained in paragraph 32 of the Complaint for Declaratory Judgment.

> 33. CooperVision is not contributing to or inducing infringement of any valid and enforceable claims of the '811 patent by the manufacture, use, sale, offer for sale, or importation of CooperVision's Biofinity lenses.

RESPONSE: [On information and belief,] CIBA denies the allegations contained in paragraph 33 of the Complaint for Declaratory Judgment.

> 34. One of more claims of the '811 patent are invalid for failure to satisfy at least one of the requirements for patentability under 35 U.S.C. § 101, *et seq.*

RESPONSE: CIBA denies the allegations contained in paragraph 34 of the Complaint for Declaratory Judgment.

> 35. A judicial declaration that CooperVision's Biofinity lenses do not infringe any valid and enforceable claims of the '811 patent is necessary and appropriate at this time so that CooperVision can ascertain its rights and duties.

RESPONSE: CIBA denies the allegations contained in paragraph 35 of the Complaint for Declaratory Judgment. [On information and belief, CIBA admits there is an actual and justiciable controversy between CooperVision and CIBA regarding the '811 patent. CIBA denies the other averments contained in this paragraph.]

065274.1001

<u>COUNT V</u>

**(Declaration of Non-infringement of any Valid and Enforceable Claim of the '631 patent)**

36.    CooperVision re-alleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 15 [sic] inclusive, as set forth above.

<u>RESPONSE:</u>  CIBA re-alleges and incorporates herein by reference each and every one of its

responses to paragraphs 1 through 35 of CooperVision's Complaint.

37.    The manufacture, use, sale, offer for sale, or importation of CooperVision's Biofinity lenses does not infringe any valid and enforceable claim of the '631 patent, either directly or under the doctrine of equivalents.

<u>RESPONSE:</u>  [On information and belief,] CIBA denies the allegations contained in paragraph

37 of the Complaint for Declaratory Judgment.

38.    CooperVision is not contributing to or inducing infringement of any valid and enforceable claim of the '631 patent by the manufacture, use, sale, offer for sale, or importation of CooperVision's Biofinity lenses.

<u>RESPONSE:</u>  [On information and belief,] CIBA denies the allegations contained in paragraph

38 of the Complaint for Declaratory Judgment.

39.    One or more claims of the '631 patent are invalid for failure to satisfy at least one of the requirements for patentability under 35 U.S.C. § 101, *et seq.*

<u>RESPONSE:</u>  CIBA denies the allegations contained in paragraph 39 of the Complaint for

Declaratory Judgment.

40.    A judicial declaration that CooperVision's Biofinity lenses do not infringe any valid and enforceable claims of the '631 patent is necessary and appropriate at this time so that CooperVision can ascertain its rights and duties.

<u>RESPONSE:</u>  <u>CIBA denies the allegations contained in paragraph 40 of the Complaint for</u>

<u>Declaratory Judgment.</u> [On information and belief, CIBA admits there is an actual and

justiciable controversy between CooperVision and CIBA regarding the '631 patent.  CIBA

denies the other averments contained in this paragraph.]

10

## COUNT VI

**(Declaration of Non-infringement of any Valid and Enforceable Claim of the '894 patent)**

41.    CooperVision re-alleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 15 [sic], inclusive, as set forth above.

RESPONSE:    CIBA re-alleges and incorporates herein by reference each and every one of its

responses to paragraphs 1 through 40 of CooperVision's Complaint.

42.    The manufacture, use, sale, offer for sale, or importation of CooperVision's Biofinity lenses does not infringe any valid and enforceable claim the '894 patent, either directly or under the doctrine of equivalents.

RESPONSE:    [On information and belief,] CIBA denies the allegations contained in paragraph

42 of the Complaint for Declaratory Judgment.

43.    CooperVision is not contributing to or inducing infringement of any valid and enforceable claim of the '894 patent by the manufacture, use, sale, offer for sale, or importation of CooperVision's Biofinity lenses.

RESPONSE:    [On information and belief,] CIBA denies the allegations contained in paragraph

43 of the Complaint for Declaratory Judgment.

44.    One or more claims of the '894 patent are invalid for failure to satisfy at least one of the requirements for patentability under 35 U.S.C. § 101, *et seq.*

RESPONSE:    CIBA denies the allegations contained in paragraph 44 of the Complaint for

Declaratory Judgment.

45.    A judicial declaration that CooperVision's Biofinity lenses do not infringe any valid and enforceable claims of the '894 patent is necessary and appropriate at this time so that CooperVision can ascertain its rights and duties.

RESPONSE:    CIBA denies the allegations contained in paragraph 45 of the Complaint for

Declaratory Judgment. [On information and belief, CIBA admits there is an actual and

11

justiciable controversy between CooperVision and CIBA regarding the '894 patent.  CIBA is

denies the other averments contained in this paragraph.]

## COUNTERCLAIM

CIBA, for its counterclaim against CooperVision, alleges as follows:

## THE PARTIES

1.    CIBA is a corporation organized and existing under the laws of the State of Delaware, has a principal place of business in Duluth, Georgia and does business in the District of Delaware.

2.    On information and belief, CooperVision is a corporation organized and existing under the laws of the State of New York, has its principal place of business in Fairport, New York and does business in the District of Delaware.

## JURISDICTION AND VENUE

3.    This Counterclaim arises under the patent laws of the United States, 35 U.S.C. § 1 et seq., and particularly 35 U.S.C. §§ 271 and 281.

4.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 2201, 2202, 1331, 1338(a).

5.    Venue is proper in this District under 28 U.S.C. §1391.

6.    By the Complaint, CooperVision has expressly alleged that it does not infringe the '100, '999, '461, '811, '631 or '894 patents and has thus submitted itself to the jurisdiction and venue of this Court.

## COUNT I
## (Infringement of the '100 Patent)

7.    As a cause of action and ground for relief, CIBA alleges patent infringement under 35 U.S.C. §§ 271 and 281, and incorporates herein by reference the allegations set forth in Paragraphs 1 through 6 of this Counterclaim.

8.    CIBA is the sole owner of all right, title and interest to United States Patent No. 5,760,100 ("the '100 patent"), entitled "Extended Wear Ophthalmic Lenses," which was legally and duly issued to CIBA on June 2, 1998.  The '100 patent was the subject of Reexamination Request No. 90/005,283, filed March 5, 1999.  A Reexamination Certificate for the '100 patent was issued on November 14, 2000.

9. CooperVision has, without authority or license from CIBA, made, used, offered to sell, sold and/or imported into the United States contact lenses that infringe the '100 patent in violation of 35 U.S.C. § 271(a).

10. CooperVision has been and still is contributing to the infringement and actively inducing others to infringe the '100 patent in violation of 35 U.S.C. §§ 271(b) and (c).

11. CooperVision's infringement has been with full knowledge of CIBA's '100 patent and deliberate and willful.

12. By reason of CooperVision's infringement of the '100 patent, CIBA has been irreparably harmed. Unless and until CooperVision is enjoined by this Court, CIBA will continue to suffer irreparable damage and injury for which it has no adequate remedy at law.

## COUNT II
### (Infringement of the '999 Patent)

13. As a cause of action and ground for relief, CIBA alleges patent infringement under 35 U.S.C. §§ 271 and 281, and incorporates herein by reference the allegations set forth in Paragraphs 1 through 6 of this Counterclaim.

14. CIBA is the sole owner of all right, title and interest to United States Patent No. 5,776,999 ("the '999 patent"), entitled "Methods of Using and Screening Extended Wear Ophthalmic Lenses," which was legally and duly issued to CIBA on July 7, 1998. The '999 patent was the subject of Reexamination Request No. 90/005,284, filed March 5, 1999. A Reexamination Certificate for the '999 patent was issued November 21, 2000.

15. CooperVision has, without authority or license from CIBA, made, used, offered to sell, sold and/or imported into the United States contact lenses that infringe the '999 patent in violation of 35 U.S.C. § 271(a).

16. CooperVision has been and still is infringing, contributing to the infringement and actively inducing others to infringe the '999 patent in violation of 35 U.S.C. §§ 271(b), (c), and (g).

17. CooperVision's infringement has been with full knowledge of CIBA's '999 patent and deliberate and willful.

18. By reason of CooperVision's infringement of the '999 patent, CIBA has been irreparably harmed. Unless and until CooperVision is enjoined by this Court, CIBA will continue to suffer irreparable damage and injury for which it has no adequate remedy at law.

## COUNT III
### (Infringement of the '461 Patent)

19.     As a cause of action and ground for relief, CIBA alleges patent infringement under 35 U.S.C. §§ 271 and 281, and incorporates herein by reference the allegations set forth in Paragraphs 1 through 6 of this Counterclaim.

20.     CIBA is the sole owner of all right, title and interest to United States Patent No. 5,789,461 ("the '461 patent"), entitled "Methods of Forming an Extended Wear Ophthalmic Lens Having a Hydrophilic Surface," which legally and duly issued to CIBA on August 4, 1998. The '461 patent was the subject of Reexamination Request No. 90/005,285, filed March 5, 1999. A Reexamination Certificate for the '461 patent was issued November 21, 2000.

21.     CooperVision has, without authority or license from CIBA, made, used, offered to sell, sold and/or imported into the United States contact lenses that infringe the '461 patent in violation of 35 U.S.C. § 271(a).

22.     CooperVision has been and still is infringing the '461 patent by reason of its importation of contact lens into the United States in violation of 35 U.S.C. § 271(g).

23.     CooperVision's infringement has been with full knowledge of CIBA's '461 patent and deliberate and willful.

24.     By reason of CooperVision's infringement of the '461 patent, CIBA has been irreparably harmed. Unless and until CooperVision is enjoined by this Court, CIBA will continue to suffer irreparable damage and injury for which it has no adequate remedy at law.

## COUNT IV
### (Infringement of the '811 Patent)

25.     As a cause of action and ground for relief, CIBA alleges patent infringement under 35 U.S.C. §§ 271 and 281, and incorporates herein by reference the allegations set forth in Paragraphs 1 through 6 of this Counterclaim.

26.     CIBA is the sole owner of all right, title and interest to United States Patent No. 5,849,811 ("the '811 patent"), entitled "Extended Wear Ophthalmic Lenses," which was legally and duly issued to CIBA on December 15, 1998. The '811 patent was the subject of Reexamination Request No. 90/005,286, filed March 5, 1999. A Reexamination Certificate for the '811 patent was issued November 14, 2000.

14

27. CooperVision has, without authority or license from CIBA, made, used, offered to sell, sold and/or imported into the United States contact lenses that infringe the '811 patent in violation of 35 U.S.C. § 271(a).

28. CooperVision has been and still is contributing to the infringement and actively inducing others to infringe the '811 patent in violation of 35 U.S.C. §§ 271(b) and (c).

29. CooperVision's infringement has been with full knowledge of CIBA's '811 patent and deliberate and willful.

30. By reason of CooperVision's infringement of the '811 patent, CIBA has been irreparably harmed. Unless and until CooperVision is enjoined by this Court, CIBA will continue to suffer irreparable damage and injury for which it has no adequate remedy at law.

## COUNT V
### (Infringement of the '631 Patent)

31. As a cause of action and ground for relief, CIBA alleges patent infringement under 35 U.S.C. §§ 271 and 281, and incorporates herein by reference the allegations set forth in Paragraphs 1 through 6 of this Counterclaim.

32. CIBA is the sole owner of all right, title and interest to United States Patent No. 5,965,631 ("the '631 patent"), entitled "Extended Wear Ophthalmic Lenses," which was legally and duly issued to CIBA on October 12, 1999.

33. CooperVision has, without authority or license from CIBA, made, used, offered to sell, sold and/or imported into the United States contact lenses that infringe the '631 patent in violation of 35 U.S.C. § 271(a).

34. CooperVision has been and still is contributing to the infringement and actively inducing others to infringe the '631 patent in violation of 35 U.S.C. §§ 271(b) and (c).

35. CooperVision's infringement has been with full knowledge of CIBA's '631 patent and deliberate and willful.

36. By reason of CooperVision's infringement of the '631 patent, CIBA has been irreparably harmed. Unless and until CooperVision is enjoined by this Court, CIBA will continue to suffer irreparable damage and injury for which it has no adequate remedy at law.

## COUNT VI
### (Infringement of the '894 Patent)

37.     As a cause of action and ground for relief, CIBA alleges patent infringement under 35 U.S.C. §§ 271 and 281, and incorporates herein by reference the allegations set forth in Paragraphs 1 through 6 of this Counterclaim.

38.     CIBA is the sole owner of all right, title and interest to United States Patent No. 6,951,894 ("the '894 patent"), entitled "Extended Wear Ophthalmic Lenses," which was legally and duly issued to CIBA on October 4, 2005.

39.     CooperVision has, without authority or license from CIBA, made, used, offered to sell, sold and/or imported into the United States contact lenses that infringe the '894 patent in violation of 35 U.S.C. § 271(a).

40.     CooperVision has been and still is infringing, contributing to the infringement and actively inducing others to infringe the '894 patent in violation of 35 U.S.C. §§ 271(b), (c), and (g).

41.     CooperVision's infringement has been with full knowledge of CIBA's '894 patent and deliberate and willful.

42.     By reason of CooperVision's infringement of the '894 patent, CIBA has been irreparably harmed.  Unless and until CooperVision is enjoined by this Court, CIBA will continue to suffer irreparable damage and injury for which it has no adequate remedy at law.

## JURY DEMAND

CIBA demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** CIBA respectfully requests the following relief:

A)     [For a judgment in its favor on all claims for relief;

B)     For CooperVision to be required to produce samples of its Biofinity contact lenses and, if any lenses are found by CIBA to infringe the Nicolson patents:

1)    For leave under Fed. R. Civ. P. 15(a) to amend CIBA's answer to assert counterclaim(s) for any Nicolson patents infringed by the Biofinity contact lenses;

2)    That CooperVision, its officers, agents, servants, employees and attorneys, and all those in active concert or participation with them who received actual notice of this order by personal service or otherwise, be enjoined and prohibited from making, using, selling, offering for sale, or importing into the United States, the patented inventions of any infringed claims in any asserted Nicolson patents, and from active inducement of the identified claims of the identified patents, for the full terms of the patents, the injunction extending CooperVision's Biofinity lenses and to those lenses no more than colorably different from the Biofinity lenses;

3)    For a declaration and judgment under 35 U.S.C. § 271 and Fed. R. Civ. P. 54 that CooperVision's Biofinity lenses infringe any asserted Nicolson patents;

4)    For CooperVision to be directed to provide an accounting to determine the damages suffered by CIBA as a result of CooperVision's infringing conduct, such damages including, but not limited to, CIBA's lost profits on sales of the infringing products;

5)    For CooperVision to be directed to pay CIBA the amount of damages that CIBA has sustained as a result of CooperVision's acts of patent infringement, and that such damages be trebled under 35 U.S.C. § 284;

6)    For CooperVision to be directed to pay CIBA an award of pre-judgment interest, post-judgment interest, and costs of suit;

17

C)    For a declaration that CooperVision's Biofinity contact lenses infringe the patents-in-suit;

D)    For a declaration that the claims in the patents-in-suit are valid and enforceable;

E)    For a declaration that this case is exceptional pursuant to 35 U.S.C. § 285 and that CIBA be awarded its attorneys' fees and costs; and

F)    For an award of such other and further relief as this Court deems just and proper.]

A)    For a judgment in CIBA's favor on all claims for relief;

B)    For a judgment that CooperVision has infringed, contributed to the infringement, and/or actively induced others to infringe the patents-in-suit;

C)    For a judgment that the claims in the patents-in-suit are valid and enforceable;

D)    For a permanent injunction enjoining CooperVision, its officers, employees, agents, and all others acting in concert with it or participating with it from further infringing, contributing to the infringement and/or inducing infringement of the patents-in-suit;

E)    For CooperVision to be directed to provide an accounting to determine the damages suffered by CIBA as a result of CooperVision's infringing conduct, such damages including, but not limited to, CIBA's lost profits on sales of the infringing products;

F)    For a judgment that this case is exceptional pursuant to 35 U.S.C. § 285;

G)    For an award of damages adequate to compensate CIBA for CooperVision's infringement of the patents-in-suit pursuant to 35 U.S.C. § 284, which shall be trebled as a result of CooperVision's willful patent infringement, together with prejudgment interest and costs;

H)    For an assessment of costs, including reasonable attorney fees, pursuant to 35 U.S.C. § 285, with prejudgment interest; and

18

I)   <u>For such other and further relief as this Court deems just and proper.</u>

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/s/ Karen L. Pascale*

August 27, 2007

Karen L. Pascale (No. 2903) [kpascale@ycst.com]
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone:  (3020 571-6600

Robert F. Altherr
Christopher B. Roth
BANNER & WITCOFF, LTD.
1001 G Street, N.W., 11th Floor
Washington, DC  20001
Telephone:  (202) 508-9100
Facsimile:  (202) 508-9299

John Iwanicki
BANNER & WITCOFF, LTD.
28 State Street
28th Floor
Boston, Massachusetts 02109
Telephone: (617) 720-9600
Facsimile: (617) 720-9601

Timothy C. Meece
Thomas K. Pratt
Shawn P. Gorman
BANNER & WITCOFF, LTD.
Ten South Wacker Drive
Suite 3000
Chicago, Illinois  60606-7407
Telephone:  312-463-5000
Facsimile:  312-463-5001

***Attorneys for Defendant,***
***CIBA Vision Corporation***

# EXHIBIT C

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              IN AND FOR THE DISTRICT OF DELAWARE

 3                        - - -

 4   COOPERVISION, INC.,          :    CIVIL ACTION

 5              Plaintiff          :

 6         vs.                     :    .

 7   CIBA VISION CORP.,            :

 8              Defendant          :    NO. 06-239 (SLR)

 9                        - - -

10                              Wilmington, Delaware
                                Thursday, June 14, 2007
11                              4:30 o'clock, p.m.

12                        - - -

13   BEFORE:  HONORABLE SUE L. ROBINSON, Chief Judge

14                        - - -

15   APPEARANCES:

16         MORRIS, NICHOLS, ARSHT & TUNNELL
           BY:  JACK B. BLUMENFELD, ESQ. AND
17              RODGER D. SMITH, II, ESQ.

18
                        -and-
19
           IRELL & MANELLA
20         BY:  JASON SHEASBY, ESQ.
                (Los Angeles, California)
21
                Counsel for Plaintiff
22

23

24                              Valerie J. Gunning
                                Official Court Reporter
25

                                  .
```

Page 2

```
 1   APPEARANCES (Continued):

 2
           YOUNG CONAWAY STARGATT & TAYLOR LLP
 3         BY:  KAREN L. PASCALE, ESQ.

 4
                        -and-
 5
           BANNER & WITCOFF, LTD.
 6         BY:  ROBERT F. ALTHERR, JR., ESQ. AND
 7              CHRISTOPHER B. ROTH, ESQ
                (Washington, D.C.)
 8
 9              Counsel for Defendant

10
                        - - -
11

12

13

14

15

16

17

18

19                              .

20

21

22

23

24

25
```

Page 3

 1                    P R O C E E D I N G S

 2

 3

 4         (Proceedings commenced in the courtroom,

 5   beginning at 4:30 p.m.)

 6

 7         MR. BLUMENFELD: Good afternoon, your Honor.

 8         THE COURT: Good afternoon. I know you both sent

 9   agendas, and as normal, we'll start with plaintiffs items

10   first and then go on to defendants.

11         MR. BLUMENFELD: Your Honor, on the CooperVision,

12   Jack Blumenfeld, my partner Rodger Smith and Jason Sheasby,

13   from Irell & Manella, and Mr. Sheasby is going to be doing

14   the speaking for CooperVision.

15         THE COURT: All right. Thank you very much.

16         MR. SHEASBY: Good afternoon, your Honor.

17         THE COURT: Good afternoon.

18         MR. SHEASBY: The first issue on the schedule

19   relates to contention interrogatories regarding infringement

20   that CIBA has refused to answer. The Court's scheduling

21   order in this matter indicates that it's the party who bears

22   the burden of proof on a subject who is to go first in

23   responding to a contention interrogatory.

24         We served contention interrogatories on

25   February 27th, 2007. We have yet to receive any

Page 4

 1   substantive response to our contention interrogatory

 2   regarding CIBA's infringement positions. CIBA has

 3   explained to us that the reason why they're not responding

 4   is because they have not counterclaimed in this action

 5   alleging infringement.

 6         The action as it stands now is a declaratory

 7   judgment for noninfringement invalidity. There is no

 8   counterclaim in the action. It's CIBA's position that they

 9   do not bear the burden of infringement in this matter and as

10   a result, they do not have to present contentions -- present

11   contentions in response to interrogatory. Of course, the

12   Federal Circuit is quite clear on this matter. The patentee

13   always bears the burden of infringement regardless of the

14   procedural posture of the case.

15         Indeed, I think the Federal Circuit has answered

16   this exact question in a 1990 case, Vivid technologies versus

17   American Science. What the Court said, it said consistently,

18   even when there's declaratory judgment action, it is the

19   patentee who always bears the burden. It's not just a

20   matter of procedure, though. It's also a matter of

21   practicality.

22         There are six patents at issue in this case.

23   There are over 190 claims. The process of winnowing down

24   what are the central issues in this case really requires

25   CIBA to make a decision. CIBA has to make a decision on

Page 5

1  whether they're going to allege that we infringe, and if they
2  are going to allege that we infringe, CIBA is a going to have
3  to identify what claims exist.
4         To prepare claim charts, as CIBA would have it,
5  for 190-plus claims is not really practical or reasonable.
6  That's not what's going to narrow the issues in the case.
7  And I think what you'll find as you turn to CIBA's letter
8  is that the disputes that they have to a large extent really
9  stem from the central dispute. They stem from the dispute
10  that there's no counterclaim in this case. Because there's
11  no counterclaim in this case, there are no damages. And
12  because there are no damages, there's no willfulness. And so
13  CooperVision has not produced documents relevant to damages,
14  relevant to willfulness. CooperVision has produced documents
15  relevant to infringement, which is the only issue in the
16  case.
17         The failure to provide infringement contention
18  responses actually is having a ripple effect on other
19  elements of the case and so, for example, on March 30th,
20  which was the day discovery was due in this case,
21  CooperVision provided infringement contention interrogatory
22  responses on the issues of invalidity. And what we did was
23  we've identified the articles, the references, that we
24  believe constitute 102, 103 prior art.
25         We then, we waited 30 days for CIBA to provide

Page 6

1  interrogatory responses to our contention interrogatories on
2  validity as to why they don't think those references are
3  invalidating. They explained to us, We are not going to give
4  you an answer to that question, and the reason why we are not
5  going to give you an answer is because your interrogatory
6  responses are insufficient. We asked you to map by claim
7  your prior art references to the claims in suit, but, of
8  course, there are 190 claims in the suit. The process of
9  mapping between prior art references and claims is
10  extraordinarily onerous.
11         What's going to moot this case along, what's
12  going to crystallize the issues, is ultimately CIBA making
13  this decision which for reasons that I'm not exactly sure
14  they have not made.
15         This suit has been pending since April of 2006.
16  In December of last year, we gave them a large number of our
17  lenses. By March 30th of this year, they've had over 100,000
18  pages of documents, which represent the core design documents
19  relating to this lens.
20         They have every piece of information necessary to
21  make a determination regarding infringement, and for reasons
22  that I don't exactly understand, they have declined to move
23  this case forward.
24         THE COURT: All right. Why don't you take a seat
25  and let me hear from CIBAvision counsel with respect to this

Page 7

1  issue.
2         MR. PASCALE: Thank you, your Honor. Good
3  afternoon. Karen Pascale. From Young Conaway, for the
4  defendant, CIBAvision, and I'd like to introduce my
5  co-counsel, Robert Altherr and Christopher Roth, both
6  from the Washington, D.C. office of Banner & Witcoff,
7  and Mr. Altherr will be speaking for CIBAvision.
8         THE COURT: All right. Thank you.
9         MR. ALTHERR: May it please the Court, your
10  Honor, before I directly address the issues that plaintiff's
11  counsel brought up, there are a couple background things that
12  you need to know about this suit.
13         First of all, there are six patents in suit.
14  It's called the Nicolson family of patents. Contrary to
15  what plaintiff's counsel said, there's not, I think he
16  said 180. There are actually 241 claims in those six
17  patents. Nine of the claims were multiple dependent claims
18  which, in effect, means you get functionally 288 claims in
19  all the patents.
20         The patents have commercial embodiment. It's
21  the Focus Night & Day product, which my client, CIBAvision,
22  commercialized. It was the first commercially successfully
23  extended-wear contact lens. It has claims that cover
24  ophthalmic lenses, which means pertaining to the eye,
25  extended-wear lenses. These claims go to various

Page 8

1  compositions and structure of lenses. It has claims
2  to methods of forming biocompatible lenses, methods of
3  using and screening lenses, and methods of extended-wear
4  lenses.
5         Because this -- these patents have been so
6  commercially successful, there has been a lot of litigation
7  involving these patents, and the Focused Night & Day product
8  as well as a newer product, which is also covered by the
9  patent, the '02 optics. Litigation on these patents began
10  in 1998. However, since late 1999, there has been continuous
11  litigation by my client that involved Bausch & Lomb, Johnson
12  & Johnson, Rembrandt Vision Technology, and now
13  CooperVision.
14         CooperVision has two cases against us, one which
15  they focused on in the patents, Night & Day, in Texas, one
16  which we have here in Delaware. The Johnson & Johnson case
17  is currently pending in Georgia and then the Rembrandt case
18  is also pending in Texas.
19         The Court in this case issued a scheduling order
20  pursuant to what the parties stipulated. All right. The
21  parties entered into a stipulation about a time schedule
22  and that we submitted to your Honor and you accepted,
23  issued a scheduling order. The parties submitted that
24  document production be substantially completed by March 30th
25  of this year, with contention interrogatories due no later

| Page 9 | Page 11 |

**Page 9**

1 than March 30th, and by those who bore the burden of proof
2 and then responsive contention interrogatories 30 days
3 later.
4     Now, it also had in there a date by which
5 we would amend pleadings or add parties, which was
6 August 13th, 2007, set four-and-a-half months after the
7 substantial completion of document production and
8 production of the contention interrogatories, responses,
9 because we knew that we'd need that amount of time to
10 be able to determine whether or not we were going to
11 file a counterclaim for infringement.
12     My client has never accused their product
13 of infringement. What we did was deny it based on
14 information and belief in the answer.
15     The contention interrogatories that are issued
16 here, this is a declaratory judgment action. CooperVision
17 filed it here. They allege that the patents are invalid,
18 they're not infringed, and that their BioInfinity lens does
19 not infringe any valid or enforceable patent, and they have
20 asked for a declaration to that effect.
21     Now, what they are asking us to do is
22 trying to shift the burden of going forward. We have --
23 in this case, since we don't have a counterclaim, we have
24 no claim for infringement in that, they have to come forward
25 with some evidence that there is infringement in this case

**Page 11**

1 try to compare all those limitations against a process
2 that we don't have the information for to determine what
3 the process is because they have not produced the documents
4 and they have not fully responded to our interrogatories
5 yet.
6     And, second, that it would require us to do the
7 burden of guessing what the composition in the polymeric
8 structure is for exactly the same reasons. Now, they have
9 produced lenses.
10     Finally, after much cajoling, they produced
11 lenses late in the year. We have those and we're trying to
12 test those now. But you need the documents to be able to
13 determine the process and to fully analyze what it is to
14 determine what the accused product is.
15     So we not only do not have the information to
16 be able to respond to it because they have refused to
17 provide discovery, we also have the issue, they had a
18 Rule 11 obligation when they brought this suit in the
19 first place, to have a good-faith belief as to why they
20 did not infringe. They have the information. They can
21 tell why they infringe or they don't infringe.
22     They should be able to tell us, at least tell
23 us what the issues are, narrow it down.
24     I know your Honor does not want to see a trial on
25 240 claims and that this has to be narrowed down, and the

| Page 10 | Page 12 |

**Page 10**

1 or we would move for a directed verdict and they would not
2 be entitled to their judgment for declaration of infringement
3 or declaration of invalidity if they don't offer any evidence
4 whatsoever.
5     All right. CooperVision is trying to get us to
6 decide either to go through some 240 of these patent claims
7 that I told you, all right, to decide what is infringed and
8 what is not infringed.
9     Well, one of the problems, and this gets to
10 Item Nos. 2 and 3 on our agenda, is that they have not
11 produced the documents and they have not responded to our
12 interrogatories as what the composition and the polymeric
13 structure of these lenses are or what the process is.
14 Now, I will get to those in a -- little later, because
15 I know you want to get back to contention
16 interrogatories.
17     But there are two real major, major issues
18 here. One is all they would have to do would be to
19 take the 56 independent claims, analyze those claims and
20 say, hey, there's a missing claim limitation here and we
21 don't make this claim limitation either based upon what
22 our process is or what our process is and therefore we
23 don't infringe. That would identify for us what is at
24 issue. They don't want to do that. They want us to go
25 through 240 claims, most of which have multiple limitations,

**Page 12**

1 only way we're going to be able to do that is if they can
2 come forward, say, This is what our process is, this is why
3 we don't infringe. Then we can respond back and take a look
4 at it. It's the second thing granted being that we'll get to
5 the other issues that they also produce the documents and
6 respond to interrogatories and that we have asked them about
7 their product and their process.
8     With respect to invalidity, you've got the
9 same issue, your Honor. They have alleged that all 280
10 claims are invalid. We asked them in our interrogatory,
11 all right, give us the prior art, tell us how the prior
12 art applies to the claims that you say are invalid and
13 give us a claim chart.
14     The first time they responded, they said there
15 were seven patents that anticipate the claims. They didn't
16 say which ones. They just left it as all of them.
17     Then they supplemented and they gave us a listing
18 of 50 different patent prior art references. They said,
19 in addition to that that, all the art cited in the prior
20 art had history, the prior art history in these patents
21 in suit has hundreds of other patents that have been
22 disclosed. They have not made any type of effort to
23 show how that prior art applies, whether it's a -- if it's
24 a 103 reference, what would be the motivation for combining
25 the references.

Page 13

1    In effect, on this particular issue, they not
2    only have the burden of going forward with the evidence, but
3    they also have the burden of persuasion. And they need --
4    they brought the suit. We didn't bring the suit. If they
5    are not willing to come forward with the contentions for what
6    it is that they contend and to apprise us of what's the base
7    of the complaint, then you ought to just go ahead and dismiss
8    the suit, your Honor.
9        That's my response with regard to their
10    Items No. 1 and 2, your Honor.
11        THE COURT: All right. Thank you very much.
12        Let's hear from plaintiff's counsel. And I do
13    have a question for you, I believe. Well, I would like you
14    specifically to respond to your Rule 11 obligation and the
15    fact that when you brought suit, you must have had some idea
16    of why you chose these patents, and are you saying that that
17    is the case, that you didn't narrow that to know what the
18    claims are of these patents you might be infringing?
19        MR. SHEASBY: No, your Honor. We performed a
20    Rule 11 analysis and concluded that there are no valid claims
21    of the six patents in suit that we believe infringe.
22        Let me step back and frame the issue this way.
23    There are different ways of arranging -- of structuring
24    contention interrogatories and Courts do them differently.
25    The way your Honor does it and the way that parties agreed to

Page 14

1    was that it's the party with the burden of proof who goes
2    forward -- who goes first with contention interrogatories.
3        Mr. Altherr has referred to the concept of burden
4    of persuasion. I think he might be mistaking a very
5    particular context.
6        In the summary judgment context letter, if we
7    were to move for summary judgment, even though we don't have
8    the burden of proof, we would have the burden of coming
9    forward with some evidence showing there is no material issue
10    of fact. That's in a very particular context in a summary
11    judgment context letter context.
12        In the context of the trial as a whole, we
13    have no burden, and what I mean by that is the following,
14    which is to say that in a trial, we can say nothing, and
15    if there was no counterclaim, we can say nothing, and the
16    judgment would be entered in our favor if they didn't present
17    any evidence.
18        THE COURT: Well, all right. We've got to get
19    this moving forward in some fashion and I find the positions
20    of the parties both understandable. However, in order to get
21    this moving forward, we have to do one of two things.
22        Number one, you either have to limit -- I mean,
23    we'll go forward on one patent. if the plaintiff doesn't
24    feel compelled to limit its declaratory judgment action in
25    any way, then we'll go forward on one patent. You can pick

Page 15

1    the patent and we will go forward on all the claims of the
2    patent.
3        The other way to go forward is to talk about what
4    information the plaintiff needs, since -- the defendant
5    needs, the patentee needs, in order to make the determination
6    you're asking it to make and to have a very focused discovery
7    process where certain information is provided, and then the
8    defendant would be obligated to come forward with its
9    infringement analysis.
10        But I, frankly, don't think it's fair for the
11    plaintiff to come in and say, gee, we don't infringe this and
12    to expect the patentee to come back with, yes, you do, and
13    here's why.
14        So those are the two options that I am going
15    to give the plaintiff, and if you want to talk about the
16    information you think you've given that should be sufficient,
17    then I'm happy to start that conversation.
18        MR. SHEASBY: Yes, your Honor.
19        We have never had a communication with CIBA in
20    which they have indicated that the technical documentation
21    that we've produced has been insufficient.
22        We produced to them over 100,000 pages, which is
23    the development history of this lens and the characterization
24    of this lens. We've produced something called the design
25    history file. The design history file is just what it says:

Page 16

1    It's a big binder. It's a big set of binders that says
2    design history on the front of it and it contains the entire
3    history of the development of this lens.
4        There are certainly disputes regarding the
5    production of documents relating to willfulness, marketing
6    documents relating to damages. But there has been no dispute
7    in which they have indicated that after having these
8    documents for 75 days, that there was a document that's
9    missing or a category of documents that are missing that is
10    not allowing them to make this determination. They've had
11    the lenses since December of last year. They've had the
12    lenses provided by us since December of last year. They have
13    indicated to us that, I think, they've had our lenses in
14    their possession even longer than that, because the lenses
15    can be obtained in Europe commercially.
16        It is very easy to say we cannot provide you with
17    contentions, we can't provide you with a counterclaim because
18    we don't have X, Y and Z documents. But what are those
19    documents? We don't know. They've never told us.
20        THE COURT: We will find out, because if that is
21    truly their reason for not coming forward, then they've got
22    to tell us today what it is they need to respond
23    appropriately.
24        MR. SHEASBY: And we will most certainly get it
25    to them.

Page 17

1    And the final point I would say is that I think
2 that Mr. Altherr has hit on a point, which is there are 54
3 independent claims in this suit. This is a preliminary
4 contention. This is very early in the case. They are not
5 going to be bound by what they say. If they can just give us
6 some guidance as to the claims they're going to proceed on,
7 we have some way to proceed.
8    At some point, the burden has to fall somewhere,
9 and we recognize that. But it seems to us that we know,
10 whether it's one 90 or 250 when you add in multiple dependent
11 claims, we know all those cases are not going to trial.
12 We know they have the information. For them to suggest
13 they are an innocent party and we're here just because
14 of some flight of fancy -- we're here because their
15 executives threatened our executives. That's why we
16 are here: Because we have a reasonable anticipation
17 of suit. They've conceded that there's a justiciable
18 controversy between the parties.
19    I will let Mr. Altherr identify the documents
20 that he believes are missing.
21    THE COURT: All right. Thank you very much.
22    MR. ALTHERR: May it please the Court, your
23 Honor, in this case, there have been -- there were two very
24 substantial meet-and-confers that took place on March 12th
25 and March 14th, two hour telephone conversations, in which I

Page 18

1 personally participated and I believe Mr. Sheasby
2 participated in at least one. Mr. Hananni from his firm
3 participated in the other. And we went over these things in
4 detail about specific interrogatories and the specific
5 production requests for which we did not receive adequate
6 responses.
7    And --
8    THE COURT: And rather than go through the
9 specifics, because I have to say that I am not as patient
10 as I used to be, what I would like you to tell me is what
11 kinds of information you have not -- you believe you have not
12 gotten that you believe is essential to your ability to
13 determining what, if any, claims of these six patents
14 arguably are infringed by plaintiff's product.
15    MR. ALTHERR: Your Honor, may I approach the
16 bench and hand you a letter?
17    THE COURT: Well, all right.
18    (Mr. Allther handed documents to the Court.)
19    MR. ALTHERR: Your Honor, this is the same
20 information that we asked for at these meet-and-confers and
21 requested to move this conference up two months. We
22 requested April 16th.
23    THE COURT: Now, you see --
24    MR. ALTHERR: All right.
25    THE COURT: You don't understand what I am

Page 19

1 trying to get to. I am trying to get a very practical
2 response.
3    This is why I don't do motions to compel, because
4 this kind of information -- what I want to know from you is
5 the kinds, the categories of documents or information that
6 you still need and you are not -- without all this legal
7 mumbo-jumbo.
8    MR. ALTHERR: This is their letter, not mine.
9 This is information they're telling us they're going to
10 provide us in the next four weeks. Interrogatory No. 4 is
11 the history of the development of the product chemical
12 composition and manufacturing process.
13    Interrogatory No. 5, which they refer to
14 underneath that, which they say that they will provide, your
15 Honor, they answered these interrogatories saying, You can
16 find the answer in accordance with 33(d). They never told us
17 what documents out of the thousands of documents provided an
18 answer to the interrogatory. They said they wouldn't provide
19 it to us. They're saying they are going to give us those
20 Bates numbers. They have not done it.
21    Interrogatory No. 5. We request the chemical
22 composition and polymeric structure in each stage of the
23 manufacturing process.
24    Interrogatory No. 6 requests the step-by-step
25 process used to manufactured the BioAffinity lenses.

Page 20

1    Interrogatory No. 7, it requests the tests and
2 analysis used to determine composition and/or polymeric
3 structure. They say they're going to tell us where it's at
4 in these documents, but they have not done it. They say
5 33(d) is the answer.
6    No. 8 is when they first learned of the patents
7 and the steps they took to avoid infringement.
8    No. 10 is the identification of U.S. foreign
9 patent applications that set forth the composition of
10 CooperVision extended-wear lenses and CooperVision's
11 process by which they are made. They have not provided
12 us that.
13    Number 13 is persons who helped develop the
14 compositions to manufacture.
15    No. 16 is --
16    THE COURT: This is not helpful to me because
17 this letter does not actually tell me, and I'm not following
18 because you are just -- so tell me, without looking at the
19 interrogatories, if you can, are you saying that the although
20 you've gotten a hundred thousand pages of documents, there's
21 no way, without your going through a hundred thousand pages
22 of documents, that you can determine whether the information
23 you require has been provided or not?
24    MR. ALTHERR: That's right, your Honor. There is
25 not adequate information. We don't have it with regard to

Page 21

1 the processes and what processes they follow or regarding the
2 polymeric steps.
3          Now, there may be one document that's hidden
4 in there someplace that would have some of that information,
5 but they have not told us where to find the needle in the
6 haystack, and I've had lots of young lawyers looking at
7 that stuff, going through it, doing computer searches
8 and going through with all of the most advanced tools that
9 we have for being able to organize these documents. We
10 can't find it.
11          They said that they would provide us with
12 the numbers and they didn't. We asked them months ago
13 for this stuff. And the problem is, we're getting close
14 to our cutoff date to be able to file our counterclaim
15 and we're not going to have time if they continue to keep
16 delaying and delaying and delaying about providing this
17 information.
18          Additionally, there are certain categories
19 that they say on the second page that they have only
20 partially provided, which one of those in particular relates
21 to the documents relating to the research and development,
22 the manufacturing, and the development of the patents, and
23 they said that they're going to continue to roll out
24 documents over the next three to four weeks.
25          We need those documents. We need to identify

Page 22

1 them so we can look through, find out -- we cannot tell what
2 their process is by looking at a lens. You could analyze the
3 lens to a certain amount to perform tests on it, but you
4 can't necessarily tell what all the polymeric structure is
5 unless you know how it was created and unless you get some
6 indication of the tests that had been done to be able to
7 determine what all the polymeric structure is as well as the
8 composition.
9          It's kind of like trade secrets in chemistry.
10 It's hard to crack the nut a lot of times. You can't do
11 it unless you've got the guidebook that they used to create
12 it.
13          THE COURT: Well, I have a general idea of what
14 you think you don't have. But, all right. So let's hear
15 from plaintiff's counsel, Mr. Sheasby.
16          MR. SHEASBY: Your Honor, let me clarify that.
17 There are no technical documents as far as we know left to
18 produce, and what I mean by that is, of course, you always
19 find documents, but the court databases relating to these
20 lenses have already been produced.
21          THE COURT: And is it hard for anyone to identify
22 the, quote unquote, "core" database?
23          MR. SHEASBY: No, it's not, your Honor. I will
24 do it right now. I did a search -- I did a search on
25 Concordance, when I looked for design history file. CDE

Page 23

1 0092999 through CDE 0093955. There is never any
2 correspondence from CIBA for this entire time saying where is
3 your design history file, we can't find this document, we
4 can't find that document. I'd like to speak to the issue of
5 the supplementation interrogatories because it's of
6 particular concern to CooperVision.
7          On May 2nd of this year, we sent a letter to
8 CIBA, saying, let's provide a joint date by which we'll
9 supplement our interrogatories to those Bates ranges. The
10 reason why we had to do that is because the interrogatories
11 were answered before the document production had occurred.
12 CIBA had relied on 33(d) for a lot of responses to their
13 interrogatories for which they hadn't provided us with Bates
14 ranges and we relied on 33(d) as well. We heard silence from
15 CIBA from May 2nd until June 11th.
16          On June 11 CIBA, out of the blue, sent us what
17 they purport to be their Bates ranges that apply to their
18 interrogatory responses and it said things such as the
19 following: We have interrogatory response saying what's your
20 date of conception, reduction to practice. They listed
21 56,000 pages of documents.
22          We have committed to providing them a list of
23 documents within the next two weeks. At that point, we don't
24 know what else we can do. There are no documents that we're
25 holding back. They have not listed categories of technical

Page 24

1 documents that they think are missing and we're going to
2 provide them the road map that they've been requesting.
3          At that point, it's on their shoulders. We don't
4 know why they delay meet-and-confers with us. We don't know
5 why it takes between May 2nd and June 11th to have a
6 communication regarding when simultaneous supplementation
7 will occur.
8          And I also want to step back because he said/she
9 said is not really productive and it does not move this case
10 forward.
11          What I will say is this: If there is a category
12 of technical documents that they don't think they can find,
13 they should tell us. Within the next two weeks, they're
14 going to have their listing of documents relating to these
15 categories. At that point they will have all the tools they
16 need. Frankly, they've had these tools for the last 75 days,
17 if not longer.
18          What I would propose is they have -- in two weeks
19 we're going to get them the list. They could have two more
20 weeks and then what I would ask is that you order them to
21 provide responses to our contention interrogatories on
22 infringement.
23          At that point, what I think will happen, which
24 I hope will happen, there will be identification of what
25 the core claims are in this case. With that in place,

Page 25

1 everything else falls into place. We can then provide
2 responsive interrogatory responses saying why we don't
3 think we infringe those claims and why their bases are
4 incorrect. We can then supplement our invalidity contentions
5 so that they can map claims to prior art references and then,
6 we hope that with that step in place, they will be able to
7 respond to their -- our contention interrogatories involving
8 validity as well.
9        Everything depends on this narrowing of claims
10 and for them to say, Well, we can't identify the claims
11 because we don't have the documents, but we never told you
12 what the documents are that are missing, is not very
13 productive.
14        Simply saying, having disputes about categories
15 of documents doesn't really reflect the issue, because one of
16 our concerns is that they have these extraordinarily
17 overbroad requests.
18        So, for example, one of their requests asks us to
19 provide -- detail every single test we've ever performed on
20 the BioInfinity lens. Well, agreeing to an interrogatory of
21 that scope makes us very uncomfortable, but that does not
22 mean we delayed producing the tests we could find. We've
23 produced what we could find, as this Court has instructed us
24 to do so.
25        Like I said again, I think the step at this

Page 26

1 point is, let's put them to the test. In two weeks they'll
2 get what they want. We are not withholding any technical
3 documents and then at that point, they need to begin to
4 litigate this case.
5        THE COURT: All right. Thank you.
6        Let's hear from defendant's counsel, Mr.
7 Altherr.
8        MR. ALTHERR: Well, your Honor, if it was such
9 an easy matter to decide what this process was, why didn't
10 they just give us a written explanation as to what the
11 process steps are. They didn't do it and they did not
12 identify the documents. Okay. We don't know what their
13 process is.
14        THE COURT: Well, all right. We're moving
15 forward, so --
16        MR. ALTHERR: That point aside, your Honor --
17 sorry, your Honor.
18        It is, going back to one of your earlier points,
19 though, a point of fairness on this, they brought this
20 lawsuit. They had to have good-faith contention as to why
21 they brought it.
22        As counsel on our side has already said, they
23 did an analysis of why there -- why they said there was not
24 infringement. They should be able to give us the results of
25 that so we can see what claims were at issue.

Page 27

1        All right. It's ridiculous to have us, force us
2 to go through 280 claims. They brought the lawsuit. What
3 you had mentioned at first, your Honor, was entirely fair,
4 from my perspective. You required them to respond to us as
5 to what they contend is not infringed or limit it to one
6 patent. That's fine. That's something we could handle.
7 We -- I'm sorry. We still need to get, you know -- if
8 it's the process patents, we need the process. If
9 it's the composition patents, we still need their
10 composition.
11        The documents that they say that are so clear
12 and easy for them, obviously, if they've worked in them for
13 years and they have their people who worked those every day,
14 they can find them.
15        THE COURT: Well, let me say, I have never
16 had a declaratory judgment action where this issue has come
17 up because I've never had a patent owner who hasn't
18 automatically in his answer say, well, gosh, yes, you do
19 infringe. And for this case to be so old and for the patent
20 owner, despite lots and lots of litigation, to still be at
21 ground zero with apparently no idea as to what this product
22 is all about in a competitive market strikes me as more than
23 unusual.
24        So what I'm going to do, we're going to take this
25 one step at a time. By June 28th, everyone needs to

Page 28

1 supplement, and that means that you've got to identify the
2 documents you have produced, and you have to identify what
3 production goes with what request so that both parties can
4 determine what relevant -- what relevance the document
5 has. And I think on that date, because I will be out of the
6 office -- well, maybe I will give you two weeks after that to
7 make sure you've done what you need to do. I think we're
8 going to get together again.
9        And it seems to me that unless, Mr. Altherr,
10 you've got some case law out there that addresses this
11 situation that allows the patentee to sit on its hands from
12 the get-go and not respond to charges of or claims of
13 noninfringement, that it would still be your burden, the
14 patentee's burden, to say, we do believe you infringe and
15 this is why.
16        So I mean unless you've got some case law that
17 addresses that issue, so long as you have the information, it
18 seems to me as though it still is your burden.
19        MR. ALTHERR: Your Honor, can I take just one
20 minute to confer with my counsel?
21        THE COURT: Sure.
22        (Pause while counsel conferred.)
23        MR. ALTHERR: Your Honor, this is some old case
24 law, but it is out of the District of Delaware. It's
25 Scoville Manufacturing versus Sunbeam Corporation, 61 Federal

Page 29

1 Rules decision, 598. It's a Judge Latchum decision.
2 And in that one, the defendant patent owner felt
3 it -- to compel contention interrogatories. And the Court
4 said that they were entitled to be apprised of what the basis
5 was for the complaint that they were facing.
6 And particularly, they were required -- the
7 Court held that the ultimate burden of proof at trial is
8 not a limitation upon the boundaries of discoverable
9 material.
10 THE COURT: Well, with all due respect, I
11 applaud you for your research abilities, but a case that
12 old from a judge who does not conduct -- who never
13 conducted his cases as I conduct mine and never had
14 the volume is not compelling.
15 So without something more from the Federal
16 Circuit side of things, I am hard pressed to think that
17 it's appropriate for us to start with the competing product,
18 saying I don't infringe Claims 1 through 3. I mean --
19 MR. ALTHERR: Your Honor, if I may, and I'm not
20 absolutely certain, because I would have to double-check the
21 case, but I believe the Federal Circuit case that plaintiff's
22 counsel cited, and he can correct me if I'm wrong, merely
23 talked to who has the ultimate burden. I don't believe it
24 addressed who has the burden of production with respect to
25 producing discovery.

Page 30

1 THE COURT: But, you see, you're swimming
2 upstream here because in my cases I make the patentee go
3 forward because they have the ultimate burden.
4 So what I am saying is, unless you've got
5 compelling reason for me to change my standard practice,
6 then I am not going to.
7 Now, I understand if you don't have the
8 information you need because you didn't conduct a Rule 11
9 investigation to get here in the first place, I'm certainly
10 going to accommodate you in that and I'm going to give you
11 the time to do the research. But that is my standard
12 practice and I'm going to continue to follow through on
13 that.
14 So the question is: After the supplementation,
15 I want to make sure that that has gone correctly before we
16 move to the next step, which is responding to the contention
17 interrogatories.
18 Now, so we either need to have a conference on
19 the 28th or 29th, before I leave for two weeks, or it has to
20 wait yet another two weeks, until I get back in town.
21 So maybe we need to have a conversation on the
22 28th or the 29th to make sure you have the information you
23 need.
24 MR. ALTHERR: All right, your Honor. I would ask
25 two other questions, if I may.

Page 31

1 Then since they have the burden on invalidity,
2 are they going to have to produce the first contention
3 interrogatories on invalidity?
4 THE COURT: They will, but usually it is not
5 until we narrow down the scope of the claims. So that's what
6 we need to do.
7 Usually, it's done through infringement, because
8 it's the patentee who wants to enforce its patents or not.
9 Right? So that's usually how we narrow things.
10 MR. SHEASBY: Your Honor --
11 THE COURT: Yes?
12 MR. SHEASBY: I don't mean to interrupt, but I
13 actually I think have a proposal which may not delay your
14 time. I think there's going to be a sequestraton period in
15 which CIBA is going to have to mull over whether they think
16 they have what they need. What I would suggest is I think
17 the 28t might be pushing it a little bit. It might be easier
18 to them, I think, to push it up to that level. Maybe the two
19 weeks, additional two weeks, will allow both parties to
20 crystallize their issues, and I hope within that time CIBA
21 would consider revising their listing of documents so we
22 don't get 56,000 pages when we're just looking for dates of
23 conception and reduction to practice, so I think that two
24 weeks would be healthy.
25 THE COURT: And may I ask, as long as we're

Page 32

1 talking about fairness, all this other litigation that's
2 going on, are they all dealing with the same six patents? I
3 mean, generally, I don't go forward with six patents even if
4 you narrow it down.
5 So the question is: Are there other ways, and
6 maybe we should have this discussion before we adjourn,
7 because I think all the other issues kind of follow from this
8 general discussion we're having. Is there any reason to go
9 forward with six in the first instance?
10 MR. SHEASBY: Let me clarify that.
11 THE COURT: All right.
12 MR. SHEASBY: I think Mr. Altherr said there have
13 been lots of suits involving their lenses, and, in fact,
14 there have, but not all those suits involve the same
15 patents.
16 So there have been two previous -- two other
17 litigations involving the Nicolson patents: One involving
18 Bausch & Lomb, which never went to trial, because Bausch &
19 Lomb lost another unrelated patent litigation to CIBA, and
20 there was a global settlement, so that was never resolved.
21 And there's now pending in Florida a litigation with Johnson
22 & Johnson involving these same patents. It's at claim
23 construction phase this summer.
24 So CIBA's lenses have been sued, but there have
25 only been two other suits in the United States involving

Page 33

1 these patents, and that is one, I put a marker down, that's
2 one other issue I would like to discuss before we do
3 adjourn.
4      But I think there's going to have to be a
5 limitation. I agree with you. There's no practical way
6 that a jury is going to be able to get their hands around a
7 hundred claims -- 150 claims. There's going to have to be
8 some rational limitation. I've see it done in different
9 ways. Sometimes parties have been very reasonable and it has
10 just been very natural. This, unfortunately, does not seem
11 to be one of those cases right now.
12      The other ways I've seen it done, is the Court
13 says, you know what? Pick your 20 claims or pick your 15
14 claims and that's what we're going to proceed on. At some
15 point there has to be a rationalization.
16    THE COURT: Well, this is my question, though:
17 If, in fact, we're leaving it to the patent owner -- why
18 don't you all just go back to your tables so this isn't quite
19 so adversarial.
20      If my decision is consistent with plaintiff's
21 request, that it is the patent owner who has the burden
22 of identifying which claims of these six patents arguably
23 are infringed, even though they didn't come forward in the
24 first place, and accuse the plaintiff of infringing, then
25 the question is: Is there a rational way for us to limit

Page 34

1 that search in the first instance as opposed to making
2 the plaintiff, the defendant, the patent owner, go through
3 the six claims and the 280, or however you want to count
4 them.
5      I mean, is it possible for us to say today,
6 yes, it is the patent owner's burden, but you pick the two
7 patents and the three patents to go through? I mean, I don't
8 know.
9    MR. SHEASBY: I have an idea. One thing that
10 Judge Jordan did in a case I was previously in is he only
11 made people do independent claims in the first round,
12 anything in contention responses, and so charting only the
13 independent claims for validity, infringement purposes. That
14 way it allows people to feel out what the -- what the sort of
15 the boundaries of the dispute are.
16    THE COURT: But in this case, that's still six
17 patents and that's still, what, 56 independent claims.
18    MR. SHEASBY: Yes.
19    THE COURT: I'm not confident that is
20 particularly helpful.
21    MR. ALTHERR: Your Honor, the additional issue
22 we have here, too, I indicated when I gave you a description
23 of patent, these patents cover different things. Some of
24 them cover manufacture, some of them cover methods of
25 screenings, some of them cover methods of use, some of them

Page 35

1 cover different chemical compositions. And so it may be
2 that, based upon what they've presented, that all these
3 patents -- additionally, they did assert that all of them
4 were invalid.
5    THE COURT: And at this point we can't have an
6 open discussion about whether we're talking about the kinds
7 of claims, the method claims, the process claims, the
8 composition claims? I mean --
9    MR. SHEASBY: We actually welcome that
10 discussion, because this case needs to proceed and it's going
11 to proceed by people crystallizing the issues. And so we are
12 happy to meet and confer with them to come up with a rational
13 way of limiting the patents or limiting the claims that are
14 going to be in issue.
15      One of the problems is at the end of the day,
16 it's going to be on them, because one of the things that may
17 ultimately happen is they do 15 claims now or 10 claims now.
18 But if six months from now they're going to come back and say
19 we still want to go to trial on 120, that's going to be a
20 problem and so it may not be something we can solve here
21 right now. It may be something where we have to meet and
22 confer.
23    THE COURT: I will tell you what I'm going to
24 do. I'm going to order the supplementation by June 28th and
25 then over the next two weeks I'm going to order you all to

Page 36

1 face and face meet and confer and talk about limiting the
2 claims, the scope of this case in some way, whether it's by
3 patent, whether it's by a technology, whether it's by
4 independent claim. However it is, you all have to come up
5 with a way. Otherwise, I will just arbitrarily come up
6 with a way and then we ill go forward with contention
7 interrogatories.
8    MR. ALTHERR: Your Honor, with all due respect,
9 we will not be able to do that until after we've completed
10 expert discovery. Expert discovery is the next phase after
11 fact discovery.
12    THE COURT: No. I'm telling you, you have to
13 do it. Contention interrogatories are always -- this is a
14 starting place. I'm trying to help you here. If you don't
15 want my help, then I will let you go forward with six
16 patents.
17    MR. ALTHERR: Well, your Honor, obviously, we
18 would not go forward to the jury with 280 claims. We might
19 very well go forward with all six patents. I have been in
20 other cases where that has been done, but we would elect very
21 carefully about which claims we had and it really depends
22 upon what we will cover as we go down through discovery and
23 let the experts decide.
24    THE COURT: Well, then you get to do contention
25 interrogatories on all the patents and all the claims if you

## Page 37

1  are not going to work with me here.

2       What other issues are there, then?

3       MR. SHEASBY: Your Honor, I know we're running

4  out of time. I think there's one other issue that's

5  sui generis that I would like to discuss.

6       As Mr. Altherr alluded to, there have been two

7  other litigations involving the Nicolson patent family, and

8  in particular, one we're focused on is the Bausch & Lomb

9  litigation which, unfortunately, never got to trial. CIBA

10  has produced documents from that litigation but they only

11  produced their documents so that they pulled out the Bausch &

12  Lomb documents from the production.

13      The reason why this is problematic for us is

14  because the Bausch & Lomb lens that was the subject of

15  that litigation is 102(g)(2) prior art to the patents.

16  And so what we want, what we really do need is unfortunately

17  not just CIBA's information, but the Bausch & Lomb

18  production.

19      CIBA has told us, we're not giving you the Bausch

20  & Lomb production because it was generated by a protective

21  order and we're not going to violate a protective order.

22      What I would suggest is something very simple and

23  something useful. If CIBA were to produce all responsive

24  documents, including Bausch & Lomb documents, but also order

25  CIBA to provide true notice to Bausch & Lomb so that Bausch &

## Page 38

1  Lomb would know what was going on, it would then have the

2  opportunity to object if they didn't want the documents to be

3  produced or to explain to your Honor why the documents were

4  not relevant. But the problem is that when I look at

5  CIBA's production, it's almost like I'm looking at half a

6  conversation. I'm hearing one side of a conversation. But

7  unlike a lot of infringement suits where the infringer's

8  documents aren't relevant, in this case, because they

9  implicate prior art, they're critically relevant.

10      Now, I've made this proposal to CIBA and CIBA

11  has not responded. I don't know if they are opposed to

12  it or not, but it seems to me it would be very productive.

13      Let me anticipate a question. We actually tried

14  to go about this by getting documents from Bausch & Lomb.

15  Bausch & Lomb either doesn't have the documents anymore or is

16  not really interested in doing it through a subpoena

17  process.

18      They've given us approximately 17,000 pages,

19  which is nothing -- which does not match to anything that

20  was in the litigation. I don't know if this is because

21  they're a licensee or if it's because they're a competitor

22  and they are not willing to help us. But it turns out

23  that CIBA has the documents we want and it seems like

24  this Court is in the best position to decide whether

25  we're entitled to those documents as opposed to a judge

## Page 39

1  who is randomly assigned to enforce a subpoena in Rochester

2  where Bausch & Lomb is located. And so I wanted to make

3  that proposal to the Court as well.

4      THE COURT: All right. Let's hear from

5  defendant's counsel.

6      MR. ALTHERR: Your Honor, these documents are

7  subject to the protective order. It was in the other case by

8  the court. We told plaintiff's counsel, if you get Bausch &

9  Lomb to agree and say that they could have them, we'll give

10  you the documents. Get it cleared with the Court. Get it

11  cleared with Bausch & Lomb. I don't care. All right.

12      But we can't very well -- and Bausch & Lomb has

13  some rights in these documents. They're very important to

14  them. CooperVision is a competitor of Bausch & Lomb. I

15  think Bausch & Lomb does have the right to be heard on this

16  issue. And like I said, we're just -- we don't want to put

17  ourselves in the position of violating the protective order

18  that has been entered in a case in which we were a party, and

19  that's exactly what he's asking us to do.

20      THE COURT: Well, I mean, what always happens is

21  to do as was suggested, is that I order them produced, and

22  if I need to do a short written order, I will, and allow

23  Bausch & Lomb the opportunity to object because of concerns,

24  and if they object appropriately, then it could be that the

25  documents will not be produced.

## Page 40

1      So if I need to issue an order to that effect, I

2  will. I'm not sure I have the information I need to issue an

3  order. I suppose someone will give that to me.

4      MR. SHEASBY: I will, your Honor. And I just

5  want to clarify, we're very sensitive to the competitor

6  issue. CooperVision would not ask for any of its inside

7  counsel or inside employees that have any access to these

8  documents whatsoever. It will only be outside counsel. We

9  agreed to an absolute prosecution. No litigation counsel for

10  CooperVision is involved in prosecution of these material

11  issues relating to these patents and so we would do whatever

12  was necessary to address Bausch & Lomb's competition

13  concerns.

14      MR. ALTHERR: Speaking of which, though, your

15  Honor, I did not want to bring this up because I didn't want

16  to burden you with it, but there is no protective order

17  entered in this case. The parties have been agreeing to keep

18  things confidential to outside counsel.

19      There are some definite differences between the

20  parties over restrictions on counsel's ability to represent

21  other clients at later dates, something like three years

22  after this litigation that they would be barred from until

23  such a date and there are some other issues and I really had

24  not planned to go into it, but that is an issue. There is

25  not a protective order entered in this case yet.

Page 41

1    THE COURT: Well, that needs to be addressed, and
2    if you all can't work through that, then you need to give me,
3    each of you needs to give me what you believe should be the
4    appropriate protective order and I will simply pick the
5    version that I think, or parts of each that I think is the
6    appropriate one.
7        So certainly I don't believe that the Bausch &
8    Lomb documents should be produced without a protective order
9    in place in this case as well.
10    MR. SHEASBY: We understand, your Honor.
11        Your Honor, we had actually made a proposal to
12    CIBA on May 21st. And I hate to do this, but if the Court
13    maybe could ask CIBA to set a date certain by which we can
14    meet and confer on the protective ordder issue, it would move
15    the case forward, because we don't appear to be able to get
16    their attention regarding this.
17    THE COURT: I was going to say by June 28th, you
18    either have agreed or you submit to me your best efforts. If
19    you don't send a stipulated protective order to me as soon as
20    I have selected the version of the protective order that
21    should be in place, at that point, and at that point only,
22    when I order the Bausch & Lomb documents in defendant's
23    possession to be produced by a date certain to allow Bausch &
24    Lomb the opportunity to object. In order to put an order
25    like that in place, I will need -- maybe you all can give me

Page 42

1    a proposed order because I'm not exactly sure.
2    MR. SHEASBY: Absolutely, your Honor.
3    THE COURT: What other issues are there?
4        I think what I'm going to do is, I guess,
5    schedule another discovery conference in July. And I don't
6    have a 4:30 available until Wednesday, July 25th, at 4:30.
7        By that time, you all need to have determined
8    that you have the information you need, and if you have not
9    managed to reach some compromise on -- well, the discovery
10    conference should only go forward if the defendant or if
11    either of you believe you have not gotten the information you
12    need to take this to the next step.
13        If you have no discovery disputes, then call it
14    off, and it seems to me that without a discovery dispute,
15    that we need to put in place -- we'll assume that there will
16    be discovery disputes and we resolve them, and then you'd
17    better start working on things, because it seems to me we
18    need to move forward fairly rapidly after that, which means
19    that by August 15th, the defendant needs to come forward with
20    its contention interrogatories of infringement. Three weeks
21    after that, which is September 5th, the plaintiff needs to
22    come forward with its validity, its responses to the
23    infringement and its validity contentions, and then three
24    weeks after that, the defendant will respond with its
25    nonvalidity contention responses.

Page 43

1        So that's August 15th, September 5th and
2    September 20th, and if that messes up your schedule, then
3    we will have to talk about a schedule at some other time.
4    MR. ALTHERR: Your Honor, may I just address that
5    issue?
6        The next date that will come up on the schedule
7    is the amendment and deadline for adding additional parties,
8    which is August 13th, which will be two days before our
9    contention interrogatories are due. Would it be possible to
10    at least move that date?
11    THE COURT: I think that makes sense.
12        Move it out to October 1, which is a Monday.
13    MR. ALTHERR: That's fine. Thank you.
14    THE COURT: All right. Are there other issues
15    that we should address?
16    MR. SHEASBY: Your Honor, I just want to flag an
17    issue for the Court, which is that discovery, fact discovery,
18    closes in this case in November. I have a sneaking suspicion
19    in October CIBA is going to be filing a counterclaim and
20    suddenly damages and willfulness are all going to be part of
21    this case.
22        Subsequent to filing that counterclaim, we're
23    going to get a notice from CIBA saying we need to extend it
24    out because our damages and willfulness can't fit into the
25    current schedule. I don't think we should have a discussion

Page 44

1    about this now because this is merits-based.
2        Saying we were recalcitrant and we didn't have
3    the documents they wanted, I can see how the Court would say,
4    CooperVision, you need to take responsibility for your -- I'm
5    pushing on the schedule. If we operate in good faith, we're
6    going to have a lot of concerns about not getting certainty
7    in a prompt manner.
8    THE COURT: I have to say it has been so long
9    since I actually tried damages and willfulness in connection
10    with liability because I simply don't have the time to roll
11    that in, that I suspect that if there are counterclaims, that
12    there will be bifurcation.
13    MR. SHEASBY: I understand, your Honor. Thank
14    you.
15    THE COURT: Anything further from defendant's
16    counsel that we should address this afternoon?
17    MR. ALTHERR: No. Thank you, your Honor.
18    THE COURT: All right. Thank you very much,
19    counsel. You all can leave while I turn off my computer.
20        (Counsel respond, "Thank you, your Honor.")
21        (Court recessed at 5:30 p.m.)
22        - - -
23
24
25

**'02** [1]    8:9

**-and** [1]    1:18    2:4

**0092999** [1]    23:1

**0093955** [1]    23:1

**06-239** [1]    1:8

**1** [3]    13:10    29:18
43:12

**10** [1]    20:8    35:17

**100,000** [2]    6:17
15:22

**102** [2]    5:24    37:15

**103** [2]    12:24

**11** [5]    11:18    13:14
13:20    23:16    30:8

**11th** [2]    23:15    24:5

**120** [1]    35:19

**12th** [1]    17:24

**13** [1]    20:13

**13th** [2]    9:6    43:8

**14** [1]    1:10

**14th** [1]    17:25

**15** [2]    33:13    35:17

**150** [1]    33:7

**15th** [2]    42:19    43:1

**16** [1]    20:15

**16th** [1]    18:22

**17,000** [1]    38:18

**180** [1]    7:16

**190** [2]    4:23    6:8

**190-plus** [1]    5:5

**1990** 4:16

**1998** [1] 8:10

**1999** [1] 8:10

**2** [3]    10:10    13:10
37:15

**20** [1]    33:13

**2006** [1] 6:15

**2007** [3] 1:10    3:25
9:6

**20th** [1] 43:2

**21st** [1] 41:12

**240** [3]    10:6    10:25
11:25

**241** [1]    7:16

**250** [1]    17:10

**25th** [1] 42:6

**27th** [1] 3:25

**280** [4]    12:9    27:2
34:3    36:18

**288** [1]    7:18

**28t** [1]    31:17

**28th** [5]    27:25    30:19
30:22    35:24    41:17

**29th** [2] 30:19    30:22

**2nd** [3]    23:7    21:5
24:5

**3** [2]    10:10    29:18

**30** [7]    1:11    3:5
5:25    9:2    42:6
42:6    44:21

**30th** [4] 5:19    6:17
8:24    9:1

**33** [4]    19:16    20:5
23:12    23:14

**4** [5]    1:11    3:5
19:10    42:6    42:6

**5** [3]    19:13    19:21
44:21

**50** [1]    12:18

**54** [1]    17:2

**56** [2]    10:19    34:17

**56,000** [2]    23:21
31:22

**598** [1]    29:1

**5th** [2]    42:21    43:1

**6** [1]    19:24

**61** [1]    28:25

**7** [1]    20:1

**75** [2]    16:8    24:16

**8** [1]    20:6

**90** [1]    17:10

**abilities** [1]    29:11

**ability** [2]    18:12
40:20

**able** [13] 9:10    11:12
11:16    11:22    12:1
21:9    21:14    22:6
25:6    26:24    33:6
36:9    41:15

**absolute** [1]    40:9

**absolutely** [2]    29:20
42:2

**accepted** [1]    8:22

**access** [1]    40:7

**accommodate** [1]
30:10

**accordance** [1] 19:16

**accuse** [1]    33:24

**accused** [2]    9:12
11:14

**action** [8]    1:4
4:4    4:6    4:8
4:18    9:16    14:24
27:16

**add** [2] 9:5    17:10

**adding** [1]    43:7

**addition** [1]    12:19

**additional** [3]    31:19
34:21    43:7

**additionally** [2]
21:18    35:3

**address** [5]    7:10
40:12    43:4    43:15
44:16

**addressed** [2]    29:24
41:1

**addresses** [2]    28:10
28:17

**adequate** [2]    18:5
20:25

**adjourn** [1]    32:6
33:3

**advanced** [1]    21:8

**adversarial** [1] 33:19

**afternoon** [6]    3:7
3:8    3:11    3:17

**7:3**    44:16

**again** [2]    25:25
28:8

**against** [2]    8:14
11:1

**agenda** [1]    10:10

**agendas** [1]    3:9

**ago** [1]    21:12

**agree** [2] 33:5    39:9

**agreed** [3]    13:25
40:9    41:18

**agreeing** [2]    25:20
40:17

**ahead** [1]    13:7

**allege** [3]    5:1
5:2    9:17

**alleged** [1]    12:9

**alleging** [1]    4:5

**allow** [3]    31:19
39:22    41:23

**allowing** [1]    16:10

**allows** [2]    28:11
34:14

**Allther** [1]    18:18

**alluded** [1]    37:6

**almost** [1]    38:5

**along** [1]    6:11

**Altherr** [31]    2:6
7:5    7:7    7:9
14:3    17:2    17:19
17:22    18:15    18:19
18:24    19:8    20:24
26:7    26:8    26:16
28:9    28:19    28:23
29:19    30:24    32:12
34:21    36:8    36:17
37:6    39:6    40:14
43:4    43:13    44:17

**always** [5]    4:13
4:19    22:18    36:13
39:20

**amend** [1]    9:5

**amendment** [1] 43:7

**American** [1]    4:17

**amount** [2]    9:9
22:3

**analysis** [4]    13:20
15:9    20:2    26:23

**analyze** [3]    10:19
11:13    22:2

**Angeles** [1]    1:20

**answer** [8]    3:20
6:4    6:5    9:14
19:16    19:18    20:5
27:18

**answered** [2]    4:15
19:15    23:11

**anticipate** [2]    12:15
38:13

**anticipation** [1] 17:16

**appear** [1]    41:15

**APPEARANCES** [2]
1:15    2:1

**applaud** [1]    29:11

**applications** [1]
20:9

**applies** [2]    12:12
12:23

**apply** [1]    23:17

**apprise** [1]    13:6

**apprised** [1]    29:4

**approach** [1]    18:15

**appropriate** [3]    29:17
41:4    41:6

**appropriately** [2]
16:23    39:24

**April** [1]    6:15
18:22

**arbitrarily** [1]    36:5

**arguably** [1]    18:14
33:22

**arranging** [1]    13:23

**ARSHT** [1]    1:16

**art** [13]    5:24    6:7
6:9    12:11    12:12
12:18    12:19    12:20
12:20    12:23    25:5
37:15    38:9

**articles** [1]    5:23

**aside** [1] 26:16

**asks** [1]    25:18

**assert** [1]    35:3

**assigned** [1]    39:1

**assume** [2]    42:15

**attention** [1]    41:16

**August** [4]    9:6
42:19    43:1    43:8

**automatically** [1]
27:18

**available** [1]    42:6

**avoid** [1]    20:7

**B** [2]    1:16    2:7

**background** [1] 7:11

**Banner** [2]    2:6
7:6

**barred** [1]    40:22

**base** [1]    13:6

**based** [3]    9:13
10:21    35:2

**bases** [1]    25:3

**basis** [1] 29:4

**Bates** [4]    19:20
23:9    23:13    23:17

**Bausch** [24]    8:11
32:18    32:18    37:8
37:11    37:14    37:17
37:19    37:24    37:25
37:25    38:14    38:15
39:2    39:8    39:11
39:12    39:14    39:15
39:23    40:12    41:7
41:22    41:23

**bear** [1]    4:9

**bears** [3] 3:21    4:13
4:19

**began** [1]    8:9

**begin** [1]    26:3

**beginning** [1]    3:5

**belief** [2]    9:14
11:19

**believes** [1]    17:20

**bench** [1]    18:16

**best** [2] 38:24    41:18

**better** [2]    42:17

**between** [4]    6:9
17:18    24:5    40:19

**bifurcation** [1] 44:12

**big** [2]    16:1    16:1

**binder** [1]    16:1

**binders** [1]    16:1

**BioAffinity** [1] 19:25

**biocompatible** [1]
8:2

**BioInfinity** [2] 9:18
25:20

**bit** [1]    31:17

**blue** [1]    23:16

**Blumenfeld** [4] 1:16
3:7    3:11    3:12

**bore** [1]    9:1

**bound** [1]    17:5

**boundaries** [2]    29:8
34:15

**bring** [2] 13:4    40:15

**brought** [7]    7:11
11:18    13:4    13:15
26:19    26:21    27:2

**burden** [26]    3:22
4:9    4:13    4:19
9:1    9:22    11:7
13:2    13:3    14:1
14:3    14:8    14:8
14:13    17:8    28:13
28:14    28:18    29:7
29:23    29:24    30:3
31:1    33:21    34:6
40:16

**C** [1]    3:2

**cajoling** [1]    11:10

**California** [1]    1:20

**cannot** [2]    16:16
22:1

**care** [1]    39:11

**carefully** [1]    36:21

**case** [43] 4:14    4:16
4:22    4:24    5:6
5:10    5:11    5:16
5:19    5:20    6:11
6:23    8:16    8:17
8:19    9:23    9:25
13:17    17:4    17:23
24:9    24:25    26:4
27:19    28:10    28:16
28:23    29:11    29:21
29:21    34:10    34:16
35:10    36:2    38:8
39:7    39:18    40:17
40:25    41:9    41:15
43:18    43:21

**cases** [6] 8:14    17:11
29:13    30:2    33:11
36:20

**categories** [5]    19:5
21:18    23:25    24:15

25:14

category [2]    :16:9
24:11

CDE [2] 22:25    23:1

central [2]    4:24
5:9

certain [6]    15:7
21:18    22:3    29:20
41:13    41:23

certainly [4]    16:4
16:24    30:9    41:7

certainty [1]    44:6

change [1]    30:5

characterization [1]
15:23

charges [1]    28:12

chart [1] 12:13

charting [1]    34:12

charts [1]    5:4

chemical [3]    19:11
19:21    35:1

chemistry [1]    22:9

Chief [1]    1:13

chose [1]    13:16

Christopher [2] 2:7
7:5

CIBA [29]    1:7
3:20    4:2    4:25
4:25    5:2    5:4
5:25    6:12    15:19
23:2    23:8    23:12
23:15    23:16    31:15
31:20    32:19    37:9
37:19    37:23    37:25
38:10    38:10    38:23
41:12    41:13    43:19
43:23

CIBA's [6]    4:2
4:8    5:7    32:24
37:17    38:5

CIBAvision [4] 6:25
7:4    7:14    7:21

Circuit [4]    4:12
4:15    29:16    29:21

cited [2] 12:19    29:22

CIVIL [1]    1:4

claim [8]    5:4
6:6    9:24    10:20
10:21    12:13    32:22
36:4

claims [58]    4:23
5:3    5:5    6:7
6:8    6:9    7:16
7:17    7:17    7:18
7:23    7:25    8:1
10:6    10:19    10:19
10:25    11:25    12:10
12:12    12:15    13:18
13:20    15:1    17:3
17:6    17:11    18:13
24:25    25:3    25:5
25:9    25:10    26:25
27:2    28:12    29:18
31:5    33:7    33:7
33:13    33:14    33:22
34:3    34:11    34:13
34:17    35:7    35:7
35:7    35:8    35:13

conduct [1]    29:12
29:13    30:8

conducted [1]    29:13

confer [5]    28:20
35:12    35:22    36:1
41:14

conference [4]    18:21
30:18    42:5    42:10

conferred [1]    28:22

confident [1]    34:19

confidential [1]
40:18

connection [1]    44:9

consider [1]    31:21

consistent [1]    33:20

consistently [1]
4:17

constitute [1]    5:24

construction [1]
32:23

contact [1]    7:23

contains [1]    16:2

contend [2]    13:6
27:5

contention [28]    3:19
3:23    3:24    4:1
5:17    5:21    6:1
8:25    9:2    9:8
9:15    10:15    13:24
14:2    17:4    24:21
25:7    26:20    29:3
30:16    31:2    34:12
36:6    36:13    36:24
42:20    42:25    43:9

contentions [6]    4:10
4:11    13:5    16:17
25:4    42:23

context [6]    14:5
14:6    14:10    14:11
14:11    14:12

continue [3]    21:15
21:23    30:12

Continued [1]    2:1

continuous [1]    8:10

Contrary [1]    7:14

controversy [1] 17:18

conversation [4]
15:17    30:21    38:6
38:6

conversations [1]
17:25

CooperVision [16]
1:4    3:11    3:14
5:13    5:14    5:21
8:13    8:14    9:16
10:5    20:10    23:6
39:14    40:6    40:10
44:4

CooperVision's [1]
20:10

core [3]    6:18    22:22
24:25

CORP [1]    1:7

Corporation [1] 28:25

correct [1]    29:22

correctly [1]    30:15

clarify [3]    22:16

CIBA [2]    1:7

conduct [1]    29:12

correspondence [1]
23:2

counsel [21]    1:21
2:9    6:25    7:11
7:15    13:12    22:15
26:6    26:22    28:20
28:22    29:22    39:5
39:8    40:7    40:8
40:9    40:18    44:16
44:19    44:20

counsel's [1]    40:20

count [1]    34:3

counterclaim [10]
4:8    5:10    5:11
9:11    9:23    14:15
16:17    21:14    43:19
43:22

counterclaimed [1]
4:4

counterclaims [1]
44:11

couple [1]    7:11

course [3]    4:11
6:8    22:18

court [63]    1:1
1:24    3:8    3:15
3:17    4:17    6:24
7:8    7:9    8:19
13:11    14:18    16:20
17:21    17:22    18:8
18:17    18:18    18:23
18:25    20:16    22:13
22:19    22:21    25:23
26:5    26:14    27:15
28:21    29:3    29:7
29:10    30:1    31:4
31:11    31:25    32:11
33:13    33:16    34:16
34:19    35:5    35:23
36:12    36:24    38:24
39:3    39:4    39:8
39:10    39:20    41:1
41:12    41:17    42:3
43:11    43:14    43:17
44:3    44:8    44:15
44:18    44:21

Court's [1]    3:20

courtroom [1]    3:4

Courts [1]    13:24

cover [7]    7:23
34:23    34:24    34:24
34:25    35:1    36:22

covered [1]    8:8

crack [1]    22:10

create [1]    22:11

created [1]    22:5

critically [1]    38:6

crystallize [2]    6:12
31:20

crystallizing [1]
35:11

current [1]    43:25

cutoff [1]    21:14

d [6]    1:17    3:2
19:16    20:5    23:12
23:14

D.C [2]    2:7    7:6

damages [7]    5:11

5:12    5:13    16:6
43:20    43:24    44:9

database [1]    22:22

databases [1]    22:19

date [10] 9:4    21:14
23:8    23:20    28:5
40:23    41:13    41:23
43:6    43:10

dates [2] 31:22    40:21

days [5] 5:25    9:2
16:8    24:16    43:8

deadline [1]    43:7

dealing [1]    32:2

December [3]    6:16
16:11    16:12

decide [1]    16:6
10:7    26:9    36:23
38:24

decision [6]    4:25
4:25    6:13    29:1
29:1    33:20

declaration [3] 9:20
10:2    10:3

declaratory [5] 4:6
4:18    9:16    14:24
27:16

declined [1]    6:22

defendant [10]    1:8
2:9    7:4    15:4
15:8    29:2    34:2
42:10    42:19    42:24

defendant's [4] 26:6
39:5    41:22    44:15

defendants [1]    3:10

definite [1]    40:19

Delaware [4]    1:2
1:10    8:16    28:24

delay [2]    24:4
31:13

delayed [1]    25:22

delaying [1]    21:16
21:16    21:16

deny [1] 9:13

dependent [1]    7:17
17:10

description [1] 34:22

design [6]    6:18
15:24    15:25    16:2
22:25    23:3

despite [1]    27:20

detail [1]    18:4
25:19

determination [3]
6:21    15:5    16:10

determine [8]    9:10
11:2    11:11    11:14
20:2    20:22    22:7
28:4

determined [1] 42:7

determining [1] 18:13

develop [1]    20:13

development [5]
15:23    16:3    19:11
21:21    21:22

differences [1] 40:19

35:17    35:17    36:2
36:18    36:21    36:25

client [3]    7:21
8:11    9:12

clients [1]    40:21

close [1] 21:13

closes [1]    43:18

co-counsel [1]    7:5

combining [1]    12:24

coming [2]    14:8
16:21

commenced [1] 3:4

commercial [1] 7:20

commercialized [1]
7:22

commercially [3]
7:22    8:6    16:15

committed [1] 23:22

communication [2]
15:19    24:6

compare [1]    11:1

compel [2]    19:3
29:3

compelled [1]    14:24

compelling [2] 29:14
30:5

competing [1]    29:17

competition [1] 40:12

competitive [1] 27:22

competitor [3]    38:21
39:14    40:5

complaint [2]    13:7
29:5

completed [2]    8:24
36:9

completion [1] 9:7

composition [10]
10:12    11:7    19:12
19:22    20:10    20:9
22:8    27:9    27:10
35:8

compositions [3]
8:1    20:14    35:1

compromise [1]
42:9

computer [2]    21:7
44:19

Conaway [2]    2:2
7:3

conceded [1]    17:17

concept [1]    14:3

conception [2] 23:20
31:23

concern [1]    23:6

concerns [4]    25:16
39:23    40:13    44:6

concluded [1]    13:20

Concordance [1]
22:25

**different** [5]    12:18    **E** [2]    3:2    3:2    **facing** [1]    29:5    **four** [2]    19:10    21:24    **helpful** [2]    20:16
13:23    33:8    34:23    **early** [1] 17:4    **fact** [6]    13:15    14:10    **four-and-a-half** [1]    34:20
35:1    **easy** [3]    16:16    26:9    32:13    33:17    36:11    9:6    **hey** [1]    10:20
**differently** [1]    13:24    27:12    43:17    **frame** [1]    13:22    **hidden** [1]    21:3
**directed** [1]    10:1    **effect** [5]    5:18    **failure** [1]    5:17    **frankly** [2]    15:10    **history** [10]    12:20
**directly** [1]    7:10    7:18    9:20    13:1    **fair** [2]    15:10    27:3    24:16    12:20    15:23    15:25
**disclosed** [1]    12:22    40:1    **fairly** [2]    42:18    **front** [1] 16:2    15:25    16:2    16:3
**discoverable** [1]    **effort** [1]    12:22    **fairness** [2]    26:19    **fully** [2] 11:4    11:13    19:11    22:25    23:3
29:8    **efforts** [1]    41:18    32:1    **functionally** [1]    **hit** [1]    17:2
**discovery** [15]    5:20    **either** [7]    10:6    **faith** [1] 44:5    7:18    **holding** [1]    23:25
11:17    15:6    29:25    10:21    14:22    30:18    **fall** [1]    17:8    **g** [2]    3:2    37:15    **Honor** [45]    3:7
36:10    36:10    36:11    38:15    41:18    42:11    **falls** [1]    25:1    **gee** [1]    15:11    3:11    3:16    7:2
36:22    42:5    42:9    **elect** [1] 36:20    **family** [2]    7:14    **general** [2]    22:13    7:10    8:22    11:24
42:13    42:14    42:16    **elements** [1]    5:19    37:7    32:8    12:9    13:8    13:10
43:17    43:17    **embodiment** [1]    **fancy** [1]    17:14    **generally** [1]    32:3    13:19    13:25    15:18
**discuss** [2]    33:2    7:20    **far** [1]    22:17    **generated** [1]    37:20    17:23    18:15    18:19
37:5    **employees** [1]    40:7    **fashion** [1]    14:19    **generis** [1]    37:5    19:15    20:24    22:16
**discussion** [5]    32:6    **end** [1]    35:15.    **favor** [1]    14:16    **Georgia** [1]    8:17    22:23    26:8    26:16
32:8    35:6    35:10    **enforce** [2]    31:8    **February** [1]    3:25    **get-go** [1]    28:12    26:17    27:3    28:19
43:25    39:1    **Federal** [5]    4:12    **given** [2]    15:16    28:23    29:19    30:24
**dismiss** [1]    13:7    **enforceable** [1] 9:19    4:15    28:25    29:15    38:18    31:10    34:21    36:8
**dispute** [5]    5:9    **entered** [1]    8:21    29:21    **giving** [1]    37:19    36:17    37:3    38:3
5:9    16:6    34:15    14:16    39:18    40:17    **felt** [1]    29:2    **global** [1]    32:20    39:6    40:4    40:15
42:14    40:25    **file** [6]    9:11    15:25    **goes** [3]    14:1    14:2    41:10    41:11    42:2
**disputes** [5]    5:8    **entire** [2]    16:2    15:25    21:14    22:25    28:3    43:4    43:16    44:13
16:4    25:14    42:13    23:2    23:3    **gone** [1] 30:15    44:17    44:20
42:16    **entirely** [1]    27:3    **filed** [1] 9:17    **good** [6] 3:7    3:8    **HONORABLE** [1]
**District** [3]    1:1    **entitled** [3]    10:2    **filing** [2]    43:19    3:16    3:17    7:2    1:13
1:2    28:24    29:4    38:25    43:22    44:5    **hope** [3] 24:24    25:6
**document** [8]    8:24    **ESQ** [6]    1:16    1:17    **final** [1] 17:1    **good-faith** [2]    11:19    31:20
9:7    16:8    21:3    1:20    2:3    2:6    **Finally** [1]    11:10    26:20    **hour** [1] 17:25
23:3    23:4    23:11    2:7    **fine** [2]    27:6    43:13    **gosh** [1] 27:18    **hundred** [3]    20:20
28:4    **essential** [1]    18:12    **firm** [1]    18:2    **granted** [1]    12:4    20:21    33:7
**documentation** [1]    **Europe** [1]    16:15    **first** [16] 3:10    3:18    **ground** [1]    27:21    **hundreds** [1]    12:21
15:20    **evidence** [5]    9:25    3:22    7:13    7:22    **guess** [1]    42:4    **idea** [4] 13:15    22:13
**documents** [62] 5:13    10:3    13:2    14:9    11:19    12:14    14:2    **guessing** [1]    11:7    27:21    34:9
5:14    6:18    6:18    14:17    20:6    27:3    30:9    **guidance** [1]    17:6    **identification** [2]
10:11    11:3    11:12    **exact** [1]4:16    31:2    32:9    33:24    **guidebook** [1]    22:11    20:8    24:24
12:5    16:5    16:6    **exactly** [5]    6:13    34:1    34:11    **Gunning** [1]    1:24    **identified** [1]    5:23
16:8    16:9    16:18    6:22    11:8    39:19    **fit** [1]    22:10    **half** [1]    38:5    **identify** [9]    5:3
16:19    17:19    18:18    42:1    **flag** [1]    43:16    **Hananni** [1]    18:2    10:23    11:19    21:25
19:5    19:17    19:17    **example** [2]    5:19    **flight** [1]    17:14    **hand** [1] 18:16    22:21    25:10    26:12
20:4    20:20    20:22    25:18    **Florida** [1]    32:21    **handed** [1]    18:18    28:1    28:2
21:9    21:21    21:24    **executives** [2]    17:15    **Focus** [1]    7:21    **handle** [1]    27:6    **identifying** [1] 33:22
21:25    22:17    22:19    17:15    **focused** [4]    8:7    **hands** [2]    28:11    **II** [1]    1:17
23:21    23:23    23:24    **exist** [1] 5:3    8:15    15:6    37:8    33:6    **ill** [1]    36:6
24:1    24:12    24:14    **expect** [2]    15:12    **follow** [2]    21:1    **happy** [2]    15:17    **implicate** [1]    38:9
25:11    25:12    25:15    **expert** [2]    36:10    30:12    32:7    35:12    **important** [1]    39:13
26:3    26:12    27:11    36:10    **following** [3]    14:13    **hard** [3] 22:10    22:21    **INC** [1]    1:4
28:2    31:21    37:10    **experts** [1]    36:23    20:17    23:19    29:16    **including** [1]    37:24
37:11    37:12    37:24    **explain** [1]    38:3    **force** [1] 27:1    **hate** [1]    41:12    **incorrect** [1]    25:4
37:24    38:2    38:3    **explained** [2]    4:3    **foreign** [1]    20:8    **haystack** [1]    21:6    **Indeed** [1]    4:15
38:8    38:14    38:15    6:3    **forming** [1]    8:2    **healthy** [1]    31:24    **independent** [6]
38:23    38:25    39:6    **explanation** [1] 26:10    **forth** [1] 20:9    **hear** [5] 6:25    13:12    10:19    17:3    34:11
39:10    39:13    39:25    **extend** [1]    38:15    **forward** [31]    6:23    22:14    26:6    39:4    34:13    34:17    36:4
40:8    41:8    41:22    **extended-wear** [4]    9:22    9:24    12:2    **heard** [2]    23:14    **indicated** [4]    15:20
    44:3    7:23    7:25    8:3    13:2    13:5    14:2    39:15    16:7    16:13    34:22
**doesn't** [3]    14:23    20:10    14:9    14:19    14:21    **hearing** [1]    38:6    **indicates** [1]    3:21
25:15    38:15    **extent** [1]    5:8    14:23    14:25    15:1    **held** [1] 29:7    **indication** [1]    22:6
**done** [8] 19:20    20:4    **extraordinarily** [1]    15:3    15:8    16:3    **help** [3] 36:14    36:15    **information** [25]
22:6    28:7    31:7    6:10    25:16    24:10    26:15    30:3    38:22    6:20    9:14    11:2
33:8    33:12    36:20    **eye** [1]    7:24    32:3    32:9    33:23    **helped** [1]    20:13    11:15    11:20    15:4
**double-check** [1]    **F** [1]    2:6    36:6    36:15    36:19    15:7    15:16    17:12
29:20    **face** [2] 36:1    36:1    36:19    41:15    42:10    18:11    18:20    19:4
**down** [7]    4:23    42:18    42:19    42:22    19:5    19:9    20:22
11:23    11:25    31:5    20:25    21:4    21:17
32:4    33:1    36:22    28:17    30:8    30:22
**due** [5]    5:20    8:25
29:10    36:8    43:9

**infringe** [14]        5:1
5:2    9:19    10:23
11:20   11:21   11:21
12:3    13:21   15:11
25:3    27:19   28:14
29:18

**infringed** [6]        9:18
10:7    10:8    18:14
27:5    33:23

**infringement** [23]
3:19    4:2    4:5
4:9    4:13    5:15
5:17    5:21    6:21
9:11    9:13    9:24
9:25    10:2    15:4
20:7    24:22   26:24
31:7    34:13   38:7
42:20   42:23

**infringer's** [1]   38:7

**infringing** [2]   13:18
33:24

**innocent** [1]      17:13

**inside** [2]        40:6
40:7

**instance** [2]      32:9
34:1

**instructed** [1]    25:23

**insufficient** [2] 6:6
·15:21

**interested** [1]    38:16

**interrogatories** [30]
3:19    3:24    6:1
8:25    9:2    9:8
9:15    10:12   10:16
11:4    12:6    13:24
14:2    18:4    19:15
20:19   23:5    23:9
23:10   23:13   24:21
25:7    29:3    30:17
31:3    36:7    36:13
36:25   42:20   43:9

**interrogatory** [17]
3:23    4:1    4:11
5:21    6:1    6:5
12:10   19:10   19:13
19:18   19:21   19:24
20:1    23:18   23:19
25:2    25:20

**interrupt** [1]      31:12

**introduce** [1]     7:4

**invalid** [4]        9:17
12:10   12:12   35:4

**invalidating** [1]
6:3

**invalidity** [7]     4:7
5:22    10:3    12:8
25:4    31:1    31:3

**investigation** [1]
30:9

**involve** [1]       32:14

**involved** [2]      8:11
40:10

**involving** [8]     8:7
25:7    32:13   32:17
32:17   32:22   32:25
37:7

**Irell** [1]   1:19    3:13

**issue** [27]         3:18
4:22    5:15    7:1
10:24   11:17   12:19
13:1    13:22   14:9
23:4    25:15   26:25
27:16   28:17   33:2
34:21   35:14·  37:4
39:16   40:1    40:6
40:6    40:24   41:14
43:5    43:17

**issued** [3]         8:19
8:23    9:15

**issues** [16]        4:24
5:6    5:22    6:12
7:10    10:17   11:23
12:5    31:20   32:7
35:11   37:2    40:11
40:23   42:3    43:14

**Item** [1]  10:10

**items** [2]          3:9
13:10

**J** [1]    1:24

**Jack** [2] 1:16   3:12

**Jason** [2]          1:16
3:12

**Johnson** [6]      8:11
8:12    8:16    8:16
32:21   32:22

**joint** [1] 23:8

**Jordan** [1]       34:10

**JR** [1]   2:6

**judge** [5]          1:13
29:1    29:12   34:10
38:25

**judgment** [10]    4:7
4:18    9:16    10:2
14:6    14:7    14:11
14:16   14:24   27:16

**July** [2] 42:5   42:6

**June** [7] 1:10   23:15
23:16   24:5    27:25
35:24   41:17

**jury** [2] 33:6   36:18

**justiciable** [1]
**Karen** [2]          2:3
7:3

**keep** [2] 21:15   40:17

**kind** [3] 19:4    22:9
32:7

**kinds** [3]          18:11
19:5    35:6

**knew** [1]          9:9

**L** [2]     1:13    2:3

**large** [2] 5:8   6:16

**last** [4] 6:16   16:11
16:12   24:16

**Latchum** [1]      29:1

**late** [2] 8:10   11:11

**law** [3] 28:10   28:16
28:24

**lawsuit** [2]      26:20
27:2

**lawyers** [1]      21:6

**learned** [1]      20:6

**least** [3] 11:22   18:2

**43:10**

**leave** [1] 30:19   44:19

**leaving** [1]      33:17

**left** [2] 12:16   22:17

**legal** [1] 19:6

**lens** [10] 6:19    7:23
9:18    15:23   15:24
16:3    22:2    22:3
25:20   37:14

**lenses** [19]        6:17
7:24    7:25    8:1
8:2    8:3    8:4
10:13   11:9    11:11
16:11   16:12   16:13
16:14   19:25   20:10
22:20   32:13   32:24

**letter** [7] 5:7    14:6
14:11   18:16   19:8
20:17   23:7

**level** [1] 31:18

**liability** [1]      44:10

**licensee** [1]      38:21

**limit** [4] 14:22   14:24
27:5    33:25

**limitation** [5]   10:20
10:21   29:8    33:5
33:8

**limitations** [2] 10:25
11:1

**limiting** [3]      35:13
35:13   36:1

**list** [2] 23:22   24:19

**listed** [2]        23:20
23:25

**listing** [2]      12:17
24:14   31:21

**litigate** [1]      26:4

**litigation** [13]  8:6
8:9    8:11    27:20
32:1    32:19   32:21
37:9    37:10   37:15
38:20   40:9    40:22

**litigations** [2] 32:17
37:7

**LLP** [1] 2:2

**located** [1]      39:2

**Lomb** [23]         8:11
32:18   32:19   37:8
37:12   37:14   37:17
37:20   37:24   37:25
38:1    38:14   38:15
39:2    39:9    39:11
39:12   39:14   39:15
39:23   41:8    41:22
41:24

**Lomb's** [1]      40:12

**longer** [2]        16:14
24:17

**look** [2] 12:3    22:1
38:4

**looked** [1]       22:25

**looking** [5]      20:18
21:6    22:2    31:22
38:5

**Los** [1]  1:20

**lost** [1]  32:19

**lots** [4]  21:6    27:20
27:20   32:13

**LTD** [1] 2:6

**major** [2]        10:17
10:17

**makes** [2]        25:21
43:11

**managed** [1]      42:9

**Manella** [2]       1:19
3:13

**manner** [1]       44:7

**manufacture** [2]
20:14   34:24

**manufactured** [1]
19:25

**manufacturing** [4]
19:12   19:23   21:22
28:25

**map** [3] 6:6    24:2
25:5

**mapping** [1]      6:9

**March** [6]        5:19
6:17    8:24    9:1
17:24   17:25

**marker** [1]        33:1

**market** [1]        27:22

**marketing** [1]    16:5

**match** [1]        38:19

**material** [3]     14:9
29:9    40:10

**matter** [6]        3:21
4:9    4:12    4:20
4:20    26:9

**may** [17] 7:9    17:22
18:15   21:3    23:7
23:15   24:5    29:19
30:25   31:13   31:25
35:1    35:16   35:20
35:21   41:12   43:4

**mean** [12]          14:13
14:22   22:18   25:22
28:16   29:18   31:12
32:3    34:5    34:7
35:8    39:20

**means** [4]          7:18
7:24    28:1    42:18

**meet** [4] 35:12   35:21
36:1    41:14

**meet-and-confers** [1]
17:24   18:20   24:4

**mentioned** [1]    27:3

**merely** [1]        29:22

**merits-based** [1]
44:1

**messes** [1]       43:2

**method** [1]       35:7

**methods** [5]      8:2
8:2    8:3    34:24
34:25

**might** [5]         13:18
14:4    31:17   33:17
36:18

**mine** [2] 19:8    29:13

**minute** [1]       28:20

**missing** [6]      10:20
16:9    16:9    17:20

**lots** [4]  21:6    27:20

**24:1    25:12**

**mistaking** [1]    14:4

**Monday** [1]       43:12

**months** [2]        9:6
18:21   21:12   35:18

**moot** [1] 6:11

**MORRIS** [1]      1:16

**most** [3] 10:25   16:24
21:8

**motions** [1]      19:3

**motivation** [1]  12:24

**move** [10]          6:22
10:1    14:7    18:21
24:9    30:16   41:14
42:18   43:10   43:12

**moving** [3]        14:19
14:21   26:14

**mull** [1] 31:15

**multiple** [1]      7:17
10:25   17:10

**mumbo-jumbo** [1]
19:7

**must** [1] 13:15

**N** [1]      3:2

**narrow** [6]        5:6
11:23   13:17   31:5
31:9    32:4

**narrowed** [1]     11:25

**narrowing** [1]   25:9

**natural** [1]      33:10

**necessarily** [1]  22:4

**necessary** [2]    6:20
40:12

**need** [33]          7:12
9:9    11:12   13:3
16:22   19:6    21:25
21:25   24:6    26:3
27:7    27:8    27:9
28:7    30:8    30:18
30:21   30:23   31:6
31:16   31:16   39:22
40:1    40:2    41:2
41:25   42:7    42:8
42:12   42:15   42:18
43:23   44:4

**needle** [1]        21:5

**needs** [9]          15:4
15:5    15:5    27:25
35:10   41:1    41:3
42:19   42:21

**never** [13]        9:12
15:19   16:19   19:16
23:1    25:11   27:15
27:17   29:12   29:13
32:18   32:20   37:9

**newer** [1]        8:8

**next** [9] 19:10   21:24
23:23   24:13   30:16
35:25   36:10   42:12
43:6

**NICHOLS** [1]    1:16

**Nicolson** [3]     7:14
32:17   37:7

**Night** [3]         7:21
8:7    8:15

**Nine** [1] 7:17

noninfringement [2]
4:7       28:13
nonvalidity [1] 42:25
normal [1]          3:9
Nos [1]  10:10
nothing [3]         14:14
14:15    38:19
notice [2]          37:25
43:23
November [1]  43:18
now [20] 4:6       8:12
9:4       9:21      10:14
11:8     11:12    18:23
21:3     22:24    30:7
30:18    32:21    33:11
35:17    35:15    35:18
35:21    38:10    44:1
number [2]         6:16
14:22    20:13
numbers [2]        19:20
21:12
nut [1]   22:10
O [1]       3:2
o'clock [1]          1:11
object [4]           38:2
39:23    39:24    41:24
obligated [1]      15:8
obligation [2]    11:18
13:14
obtained [1]      16:15
obviously [2]     27:12
36:17
occur [1]            24:7
occurred [1]      23:11
October [3]        43:12
43:19
off [2]    42:14    44:19
offer [1] 10:3
office [2]            7:6
28:6
Official [1]        1:24
old [3]   27:19    28:23
29:12
one [30] 8:14      8:15
10:9     10:18    14:21
14:22    14:23    14:25
17:10    18:2      21:3
21:20    25:15    25:18
26:18    27:5      27:25
28:19    29:2      32:17
33:1     33:2      33:11
34:9     35:15    35:16
37:4     37:8      38:6
41:6
onerous [1]        6:10
ones [1] 12:16
open [1] 35:6
operate [1]        44:5
ophthalmic [1]  7:24
opportunity [3] 38:2
39:23    41:24
opposed [1]      34:1
38:11    38:25
optics [1]           8:9
options [1]        15:14

ordder [1]          41:14
order [27]          3:21
8:19     8:23      14:20
15:5     24:20    35:24
35:25    37:21    37:21
37:24    39:7      39:17
39:21    39:22    40:1
40:3     40:16    40:25
41:4     41:8      41:19
41:20    41:22    41:24
41:24    42:1
organize [1]       21:9
Otherwise [1]    36:5
ought [1]           13:7
ourselves [1]     39:17
outside [1]        40:8
40:18
overbroad [1]   25:17
25:19
owner [6]           27:17
27:20    29:2      33:17
33:21    34:2
owner's [1]        34:6
P [1]        3:2
p.m [3]   1:11      3:5
44:21
page [1] 21:19
pages [7]           6:18
15:22    20:20    20:21
23:21    31:22    38:18
part [1] 43:20
partially [1]      21:20
participated [3] 18:1
18:2     18:3
particular [6]     13:1
14:5     14:10    21:20
23:6     37:8
particularly [2] 29:6
34:20
parties [13]       8:20
8:21     8:23      9:5
13:25    14:20    17:18
28:3     31:19    33:9
40:17    40:20    43:7
partner [1]        3:12
parts [1] 41:5
party [4] 3:21      14:1
17:13    39:18
Pascale [3]        2:3
7:2      7:3
patent [21]        8:9
9:19     10:6      12:18
14:23    14:25    15:1
15:2     20:9      27:6
27:17    27:19    29:2
32:19    33:17    33:21
34:2     34:6      34:23
36:3     37:7
patentee [7]       4:12
4:19     15:5      15:12
28:11    30:2      31:8
patentee's [1]    28:14
patents [41]       4:22
7:13     7:14      7:17
7:19     7:20      8:5
8:7      8:9       8:15
9:17     12:15    12:20
12:21    13:16    13:18

13:21    18:13    20:6
21:22    27:8      27:9
31:8     32:2      32:3
32:15    32:17    32:22
33:1     33:24    34:7
34:7     34:17    34:23
35:3     35:13    36:16
36:19    36:25    37:15
40:11
patient [1]        18:9
Pause [1]          28:22
pending [4]        6:15
8:17     8:18      32:21
people [4]          27:13
34:11    34:14    35:11
perform [1]        22:3
performed [2]    13:19
25:19
period [1]          31:14
personally [1]    18:1
persons [1]       20:13
perspective [1] 27:4
persuasion [2]  13:3
14:4
pertaining [1]    7:24
phase [2]           32:23
36:10
pick [5]  14:25    33:13
33:13    34:6      41:4
piece [1] 6:20
place [12]          11:19
17:24    24:25    25:1
25:6     30:9      33:24
36:14    41:9      41:21
41:25    42:15
plaintiff [9]       1:5
1:21     14:23    15:4
15:11    15:15    33:24
34:2     42:21
plaintiff's [8]    7:10
7:15     13:12    18:14
22:15    29:21    33:20
39:8
plaintiffs [1]     3:9
planned [1]       40:24
pleadings [1]     9:5
point [15]          17:1
17:2     17:8      23:23
24:3     24:15    24:23
26:1     26:3      26:16
26:19    33:15    35:5
41:21    41:21
points [1]          26:18
polymeric [7]   10:12
11:7     19:22    20:2
21:2     22:4      22:7
position [3]        4:8
38:24    39:17
positions [2]     4:2
14:19
possession [2] 16:14
41:23
possible [2]       34:5
43:9
posture [1]        4:14
practical [3]      5:6

19:1      33:5
practicality [1] 4:21
practice [4]        23:20
30:5     30:12    31:23
preliminary [1] 17:3
prepare [1]        5:4
present [3]         4:10
4:10     14:16
presented [1]    35:2
pressed [1]        29:16
previous [1]      32:16
previously [1]   34:10
problem [3]      21:13
35:20    38:4
problematic [1] 37:13
problems [2]     10:9
35:15
procedural [1]  4:14
procedure [1]   4:20
proceed [5]       17:6
17:7     33:14    35:10
35:11
Proceedings [1] 3:4
process [23]       4:23
6:8      10:13    10:22
10:22    11:1      11:3
11:13    12:2      12:7
15:7     19:12    19:23
19:25    20:11    22:2
26:9     26:11    26:13
27:8     27:8      35:7
38:17
processes [2]     21:1
21:1
produce [4]        12:5
22:18    31:2      37:23
produced [19]    5:13
5:14     10:11    11:3
11:9     11:10    11:12
15:22    15:24    22:20
25:23    28:2      37:10
37:11    38:3      39:21
39:25    41:8      41:23
producing [2]    25:22
29:25
product [10]       7:21
8:7      8:8       9:12
11:14    12:7      18:14
19:11    27:21    29:17
production [12] 8:24
9:7      9:8       16:5
18:5     23:11    28:3
29:24    37:12    37:18
37:20    38:5
productive [3]   24:9
25:13    38:12
prompt [1]        44:7
proof [5]           3:22
9:1      14:1      14:8
29:7
proposal [1]      31:13
38:10    39:3      41:11
propose [1]       24:18
proposed [1]     42:1
prosecution [2] 40:9
40:10

protective [1]    37:20
37:21    39:7      39:17
40:16    40:25    41:4
41:8     41:14    41:19
41:20
provide [15]       5:17
5:25     11:17    16:16
16:17    19:10    19:14
19:18    21:11    23:8
24:2     24:21    25:1
25:19    37:25
provided [8]      5:21
15:7     16:12    19:17
20:11    20:23    21:20
23:13
providing [2]    21:16
23:22
pulled [1]          37:11
purport [1]        23:17
purposes [1]     34:13
pursuant [1]     8:20
push [1] 31:18
pushing [1]       31:17
44:5
put [5]   26:1      33:1
39:16    41:24    42:15
questions [1]     30:25
quite [2] 4:12     33:18
quote [1]           22:22
R [1]        3:2
randomly [1]    39:1
ranges [3]         23:9
23:14    23:17
rapidly [1]        42:18
rather [1]           18:8
rational [2]        33:8
33:25    35:12
rationalization [1]
33:15
reach [1]           42:9
real [1]  10:17
really [9]           4:24
5:5      5:8       24:9
25:15    36:21    37:16
38:16    40:23
reason [7]          4:3
6:4      16:21    23:10
30:5     32:8      37:13
reasonable [3]  5:5
17:16    33:9
reasons [2]       6:13
6:21     11:8
recalcitrant [1] 44:2
receive [2]        3:25
18:5
recessed [1]      44:21
recognize [1]    17:9
reduction [2]    23:20
31:23
refer [1] 19:13
reference [1]     12:24
references [7]   5:23
6:2      6:7       6:9
12:18    12:25    25:5
referred [1]       14:3

reflect [1]         25:15
refused [2]         3:20
  11:16
regard [2]         13:9
  20:25
regarding [7]       3:19
  4:2    6:21    16:4
  21:1   24:6    41:16
regardless [1]      4:13
relates [3]         3:19
  21:20
relating [7]        6:19
  16:5   16:6    21:21
  22:19  24:14   40:11
relevance [1]       28:4
relevant [7]        5:13
  5:14   5:15    28:4
  38:4   38:8    38:9
relied [2]          23:12
  23:14
Rembrandt [2]       8:12
  8:17
Reporter [1]        1:24
represent [2]       6:18
  40:20
request [3]         19:21
  28:3   33:21
requested [2]       18:21
  18:22
requesting [1]      24:2
requests [5]        18:5
  19:24  20:1    25:17
  25:18
require [2]         11:6
  20:23
required [2]        27:4
  29:6
requires [1]        4:24
research [3]        21:21
  29:11  30:11
resolve [1]         42:16
resolved [1]        32:20
respect [5]         6:25
  12:8   29:10   29:24
  36:8
respond [3]         11:16
  12:3   12:6    13:14
  16:22  25:7    27:4
  28:12  42:24   44:20
responded [4]       10:11
  11:4   12:14   38:13
responding [3]      3:23
  4:3    30:16
response [5]        4:1
  4:11   13:9    19:2
  23:19
responses [13]      5:18
  5:22   6:1     6:6
  9:8    18:6    23:12
  23:18  24:21   25:2
  34:12  42:22   42:25
responsibility [1]
  44:4
responsive [3]      9:2
  25:2   37:23
restrictions [1]    40:20

result [1]          4:10
results [1]         26:24
revising [1]        31:21
ridiculous [1]      27:1
right [28]          3:15
  6:24   7:8     8:20
  10:5   10:7    12:11
  13:11  14:18   17:21
  18:17  18:24   20:24
  22:14  22:24*  26:5
  26:14  27:1    30:24
  31:9   32:11   33:11
  35:21  39:4    39:11
  39:15  43:14   44:18
rights [1]          39:13
ripple [1]          5:18
road [1]   24:2
Robert [2]          2:6
  7:5
ROBINSON [1]
  1:13
Rochester [1]       39:1
Rodger [1]          1:17
  3:12
roll [2]   21:23   44:10
Roth [2]  2:7     7:5
round [1]           34:11
Rule [4]  11:18   13:14
  13:20  30:8
Rules [1]           29:1
running [1]         37:3
S [1]     3:2
said/she [1]        24:8
says [3]  15:25*  16:1
  33:13
schedule [8]        3:18
  8:21   42:5    43:2
  43:3   43:6    43:25
  44:5
scheduling [3]      3:20
  8:19   8:23
Science [1]         4:17
scope [3]           25:21
  31:5   36:2
Scoville [1]        28:25
screening [1]       8:3
screenings [1]      34:25
search [3]          22:24
  22:24  34:1
searches [1]        21:7
seat [1]  6:24
second [3]          11:6
  12:4   21:19
secrets [1]         22:9
see [6]   11:24   18:23
  26:25  30:1    33:8
  44:3
seem [1]  33:10
selected [1]        41:20
send [2]  41:19
sense [1]           43:11
sensitive [1]       40:5
sent [3]  3:8     23:7
  23:16

September [2]       42:21
  43:1   43:2
sequestraton [1]
  31:14
served [1]          3:24
set [4]   9:6     16:1
  20:9   41:13
settlement [1]      32:20
seven [1]           12:15
Sheasby [25]        1:20
  3:12   3:13    3:16
  3:18   13:19   15:18
  16:24  18:1    22:15
  22:16  22:23   31:10
  31:12  32:10   32:12
  34:9   34:18   35:9
  37:3   40:4    41:10
  42:2   43:16   44:13
shift [1] 9:22
short [1] 39:22
shoulders [1]       24:3
show [1] 12:23
showing [1]         14:9
side [3]  26:22   29:16
  38:6
silence [1]         23:14
simple [1]          37:22
simply [3]          25:14
  41:4   44:10
simultaneous [1]
  24:6
single [1]          25:19
sit [1]   28:11
situation [3]       28:11
six [14]  4:22    7:13
  7:16   13:21   18:13
  32:2   32:3    32:9
  33:22  34:3    34:16
  35:18  36:15   36:19
SLR [1]  1:8
Smith [2]          1:17
  3:12
sneaking [1]        43:18
solve [1]35:20
someone [1]         40:3
someplace [1]       21:4
Sometimes [1]       33:9
somewhere [1]       17:8
soon [1] 41:19
sorry [2]26:17   27:7
sort [1]  34:14
speak [1]           23:4
speaking [3]        3:14
  7:7    40:14
specific [2]        18:4
  18:4
specifically [1] 13:14
specifics [1]       18:9
stage [1] 19:22
standard [2]        30:5
  30:11
stands [1]          4:6
STARGATT [1]
  2:2

start [4]  3:9      15:17
  29:17  42:17
starting [1]        36:14
States [1]          1:1
  32:25
stem [2]  5:9      5:9
step [7]  13:22    24:8
  25:6   25:25   27:25
  30:16  42:12
step-by-step [1]
  19:24
steps [3] 20:7     21:2
  26:11
still [9]  19:6     27:7
  27:9   27:20   28:13
  28:18  34:16   34:17
  35:19
stipulated [2]      8:20
  41:19
stipulation [1]     8:21
strikes [1]         27:22
structure [7]       8:1
  10:13  11:8    19:22
  20:3   22:4    22:7
structuring [1]     13:23
stuff [2] 21:7     21:13
subject [3]         3:22
  37:14  39:7
submit [1]          41:18
submitted [2]       8:22
  8:23
subpoena [2]        38:16
  39:1
Subsequent [1] 43:22
substantial [2]     9:7
  17:24
substantially [1]
  8:24
substantive [1]     4:1
successful [1]      8:6
successfully [1]
  7:22
such [3]  23:18    26:8
  40:23
suddenly [1]        43:20
SUE [1]  1:13
sued [1] 32:24
sufficient [1]      15:16
suggest [3]         17:12
  31:16  37:22
suggested [1]       39:21
sui [1]   37:5
suit [14] 6:7      6:8
  6:15   7:12    7:13
  11:18  12:21   13:4
  13:4   13:8    13:15
  13:21  17:3    17:17
suits [4] 32:13    32:14
  32:25  38:7
summary [3]         14:6
  14:7   14:10
summer [1]          32:23
Sunbeam [1]         28:25
supplement [3] 23:9
  25:4   28:1

supplementation [4]
  23:5   24:6    30:14
  35:24
supplemented [1]
  12:17
suppose [1]         40:3
suspect [1]         44:11
suspicion [1]       43:18
swimming [1]        30:1
tables [1]          33:18
takes [1] 24:5
TAYLOR [1]          2:2
technical [5]       15:20
  22:17  23:25   24:12
  26:2
technologies [1]
  4:16
technology [2]      8:12
  36:3
telephone [1]       17:25
telling [1]         19:9
  36:12
test [3]  11:12    25:19
  26:1
tests [4] 20:1     22:3
  22:6   25:22
Texas [1]           8:15
  8:18
Thank [11]          3:15
  7:2    7:8     13:11
  17:21  26:5    43:13
  44:13  44:17   44:18
  44:20
therefore [1]       10:22
they've [12]        6:17
  16:10  16:11   16:13
  16:19  16:21   17:17
  24:2   24:16   27:12
  35:2   38:18
thousand [1]        20:20
  20:21
thousands [1]       19:17
threatened [1]      17:15
three [5] 21:24    34:7
  40:21  42:20   42:23
through [17]        10:6
  10:25  18:8    20:21
  21:7   21:8    22:1
  23:1   27:2    29:18
  30:12  31:7    34:2
  34:7   36:22   38:16
  41:2
Thursday [1]        1:10
times [3]           22:10
today [2]           16:22
  34:5
together [1]        28:8
too [1]   34:22
took [2]  17:24    20:7
tools [3] 21:8     24:15
  24:16
town [1] 30:20
trade [1] 22:9
trial [8] 11:24    14:12
  14:14  19:2    29:7

32:18    35:19    37:9
tried [2] 38:13    44:9
true [1]  37:25
truly [1]  16:21
try [1]   11:1
trying [6]        9:22
  10:5    11:11    19:1
  19:1    36:14
TUNNELL [1] 1:16
turn [2]  5:7    44:19
turns [1] 38:22
two [26] 8:14    10:17
  14:21   15:14   17:23
  17:25   18:21   23:23
  24:13   24:18   24:19
  26:1    28:6    30:19
  30:20   30:25   31:18
  31:19   31:23   32:16
  32:16   32:25   34:6
  35:25   37:6    43:8
type [1]  12:22
U.S [1]   20:8
ultimate [3]      29:7
  29:23   30:3
ultimately [2]    6:12
  35:17
uncomfortable [1]
  25:21
underneath [1]  19:14
understand [5]  6:22
  18:25   30:7    41:10
  44:13
understandable [1]
  14:20
unfair [1]        31:17
unfortunately [3]
  33:10   37:9    37:16
United [2]        1:1
  32:25
unless [6]        22:5
  22:5    22:11   28:9
  28:16   30:4
unlike [1]        38:7
unquote [1]       22:22
unrelated [1]   32:19
unusual [1]       27:23
up [10]   7:11    18:21
  27:17   31:18   35:12
  36:4    36:5    40:15
  43:2    43:6
upstream [1]      30:2
used [4]  18:10   19:25
  20:2    22:11
useful [1]        37:23
using [1]         8:3
usually [3]       31:4
  31:7    31:9
Valerie [1]       1:24
valid [2] 9:19    13:20
validity [5]      6:2
  25:8    34:13   42:22
  42:23
various [1]       7:25
verdict [1]       10:1
version [2]       41:5

41:20
versus [2]        4:16
  28:25
violate [1]       37:21
violating [1]     39:17
Vision [2]        1:7
  8:12
Vivid [1]         4:16
volume [1]        29:14
vs [1]    1:6
wait [1]  30:20
waited [1]        5:25
wants [1]         31:8
Washington [2] 2:7
  7:6
ways [4] 13:23    32:5
  33:9    33:12
Wednesday [1] 42:6
weeks [16]        19:10
  21:24   23:23   24:13
  24:18   24:20   26:1
  28:6    30:19   30:20
  31:19   31:19   31:24
  35:25   42:20   42:24
welcome [1]       35:9
whatsoever [2] 10:4
  40:8
whole [1]         14:12
willfulness [6] 5:12
  5:14    16:5    43:20
  43:24   44:9
willing [2]       13:5
  38:22
Wilmington [1] 1:10
winnowing [1] 4:23
Witcoff [2]       2:6
  7:6
withholding [1] 26:2
within [3]        23:23
  24:13   31:20
without [6]       19:6
  20:18   20:21   29:15
  41:8    42:14
worked [2]        27:12
  27:13
written [2]       26:10
  39:22
wrong [1]         29:22
X [1]     16:18
Y [1]     16:18
year [7]  6:16    6:17
  8:25    11:11   16:11
  16:12   23:7
years [2] 27:13   40:21
yet [4]   3:25    11:5
  30:20   40:25
young [3]         2:2
  7:3     21:6
Z [1]     16:18
zero [1]  27:21

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

COOPERVISION, INC.

       Plaintiff

v.

CIBA VISION CORP.

       Defendant.

C.A. No. 06-239-SLR

## RULE 7.1.1 STATEMENT

Pursuant to 7.1.1 of the Local Rules of the United States District Court for the District of Delaware, I hereby certify that counsel for CIBA Vision Corp. ("CIBA") has made a reasonable effort to reach agreement with counsel for CooperVision, Inc. ("CooperVision") on the matters set forth in CIBA Vision Corp.'s Motion for Leave to File Amended Answer and Counterclaims, and that the parties have not been able to reach agreement.

Specifically, a blackline version of CIBA's proposed Amended Answer and Counterclaims was provided to counsel for CooperVision on August 22, 2007, but CooperVision's counsel has indicated that while they "do not understand why CIBA has delayed making its counterclaims for so many months," they will nonetheless be unable to state whether CooperVision would consent to the filing until after the Labor Day holiday.  CooperVision's counsel has also indicated that CooperVision's position on the proposed amendment will likely be negatively impacted by the number of claims CIBA is contending are infringed (as detailed in CIBA's August 15, 2007 First Supplemental Response to CooperVision's Interrogatory No. 7, in which CIBA set forth its patent infringement contentions),

065274.1001

YOUNG CONAWAY STARGATT & TAYLOR LLP

*/s/ Karen L. Pascale*

Date: August 27, 2007

Karen L. Pascale (No. 2903) [kpascale@ycst.com]
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone:  302-571-6600
*Attorneys for Defendant, CIBA Vision Corporation*

DB02:6205581.1

065274.1001

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

COOPERVISION, INC.

        Plaintiff

v.

CIBA VISION CORP.

        Defendant.

C.A. No. 06-239-SLR

## ORDER

At Wilmington this _____ day of _____, 2007;

IT IS ORDERED that:

1.    CIBA's Motion for Leave to File an Amended Answer and Counterclaims (D.I. ____) (the "Motion") is GRANTED.

2.    CIBA's "First Amended Answer and Counterclaim to Complaint for Declaratory Judgment," attached to the Motion as Exhibit A, shall be docketed by the Clerk forthwith and served by CIBA consistent with the Federal Rules of Civil Procedure and the Local Rules of this Court.

_____
UNITED STATES DISTRICT JUDGE