IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COOPERVISION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-239 (SLR) |
| | ) | |
| CIBA VISION CORP., | ) | |
| | ) | |
| Defendant. | ) | |

**COOPERVISION INC.'S RESPONSE TO
JOHNSON & JOHNSON VISION CARE, INC.'S OBJECTIONS
TO THE PRODUCTION OF DOCUMENTS BY CIBA VISION INC.**

The patents in suit have been the subject of several prior and ongoing litigations. CooperVision requested production of documents in those cases.[1] On July 25, 2007, the Court ordered that all documents from those litigations be produced. Johnson & Johnson Vision Care, Inc., a company currently being sued by CIBA on the same patents in suit here, has filed objections based primarily on relevance and confidentiality. As described below, the relevance objection is not well taken, particularly now that CooperVision has narrowly tailored its request to call for only a subset of what the Court has ordered CIBA to produce. Similarly, the confidentiality objection has been obviated by the Protective Order entered by this Court. CooperVision needs these documents for this case to move forward. CIBA should be ordered to comply with the Court's July 25 Order.

**I. THE DISCOVERY SOUGHT BY COOPERVISION IS RELEVANT TO THIS LITIGATION**

In ongoing litigation in Florida, CIBA is asserting the same patents (the "Nicolson patents") against silicon hydrogel contact lens products that are similar in many ways to those at issue in this case. *See Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*, Case Nos.

---

[1] CooperVision does not seek documents relating solely to Johnson & Johnson's packaging patent, U.S. Patent No. 4,691,820.

3:03-cv-800-J-32TEM, 3:05-cv-135-J-32TEM and 3:06-cv-301-J-32TEM (M.D. Fla.) (collectively, the "Florida Litigation"). There are numerous overlapping issues between the two cases, including the scope and interpretation of the patents; the validity of the patents; and the state of silicon hydrogel technology.

CIBA and Johnson & Johnson have recognized the significance of prior litigation involving the Nicolson patents. The transcript of the Markman hearing in the Florida litigation shows that both parties relied extensively on the briefing, hearing and decision on claim construction in *CIBA Vision Corp. v. Bausch & Lomb, Inc.*, Case No. 2:99-cv-00034-RWS (N.D. Ga.) (the "Georgia Litigation"), debating what was decided and whether the decisions were correct. *See* Ex. A. The Florida Court observed that the "context of the dispute [is] something that should be considered," including what the "accused product did or didn't do" and whether the Georgia Court's decisions were the result of a "fair fight" or the result of argument on only "one side of the equation" on a particular issue. Ex. A at 13-17.

As recognized by the Florida Court, context matters. Discovery needs to provide a reasonable window into the context of other litigations involving the Nicolson patents. Johnson & Johnson's objections, if sustained, would eliminate such context from the scope of permissible discovery, leaving CooperVision and the Court with only "one side of the equation" – an incomplete and potentially inaccurate picture of the other proceedings. And if CIBA selectively invokes evidence, contentions and holdings from other proceedings in this case, as it has done in Florida, CooperVision needs to have access to this evidence in order to fully respond and explain contrary positions and interpretations.

At a minimum, CIBA should provide Johnson & Johnson's court-filed documents, discovery responses and expert reports discussing CIBA's contentions, and Johnson & Johnson's

responses thereto. This narrow subset of documents will provide a basic understanding of the scope and substance of the Florida litigation.[2] Documents related to CooperVision's infringement contentions are particularly important for CooperVision because they will reveal whether CIBA's interpretations of the scope of its patent are the same in Florida as they are in Delaware. *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (judicial estoppel is even more appropriate where the incompatible statements are made in two different cases, since "inconsistent positions in different suits are much harder to justify" than inconsistent pleadings within one suit). This requires the full context of CIBA's contentions, including the documents in which they appear, and Johnson & Johnson's responses – in other words, *both* sides of the equation. Such information is clearly relevant and "reasonably calculated to lead to the discovery of admissible evidence," as set forth in Fed. R. Civ. P. 26(b)(1).

## II. JOHNSON & JOHNSON'S ALLEGATIONS OF COMPETITIVE HARM DISREGARD THIS COURT'S PROTECTIVE ORDER AND ARE INSUFFICIENT TO PREVENT DISCLOSURE UNDER THE FEDERAL RULES

Johnson & Johnson objects that the disclosure of its documents will subject it to competitive harm, but completely disregards this Court's Protective Order, which obviates those concerns. For example, the Protective Order provides that "[t]hird parties who produce information in this action may avail themselves of this Order," and requires that such materials be treated "in conformance with this Order." Thus, third party confidential information can be "(i) used only for the purposes set forth herein, and (ii) disclosed only to authorized persons."

---

[2] Indeed, Johnson & Johnson appears to acknowledge the relevancy of these documents by agreeing to review them to determine whether it can "narrow the scope of its confidentiality designations in order to make any relevant information available to CooperVision." Such a review would be unnecessary if the documents were irrelevant.

3

Johnson & Johnson has not attempted to explain how the Protective Order could conceivably be inadequate.

It is well-settled that a party seeking protection from disclosure under Federal Rule of Civil Procedure 26(c) must do more than make "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," *Medtronic Ave., Inc. v. Advanced Cardiovascular Sys., Inc.*, 2004 WL 115594 at *2 (D. Del. 2004) (Robinson, J.). In *Medtronic*, the party seeking to prevent disclosure failed to show "that it would suffer a particularized injury from disclosure of the manufacturing process information under the protective order currently in place between the parties." *Id* at *3. Instead, it merely alleged that it would be "placed at a competitive disadvantage by disclosure to its competitor." *Id.* This Court held that such a showing was insufficient under the Federal Rules, and distinguished precedent now relied on by Johnson & Johnson:

> [w]hile the court has previously recognized that disclosure to a competitor is likely more harmful than disclosure to a noncompetitor, disclosure to limited persons as in the instant case is not the same as disclosure to [moving party] Medtronic personnel. The court, therefore, concludes that Medtronic's interests will not be in jeopardy by providing the redacted information to Medtronic's legal counsel and independent experts.

*Id.* at 3 (distinguishing *United States v. United States Fruit Co.*, 410 F.2d 553, 556 (5th Cir. 1969)).

The parallels between *Medtronic* and this case are striking. In both cases, the party seeking to prevent disclosure made broad allegations of competitive harm unsubstantiated by specific examples or reasoning. In both cases, the party relied on precedent making the non-controversial observation that disclosure to a competitor is more harmful than disclosure to a noncompetitor. *See Medtronic*, 2004 WL 115594 at *2 (distinguishing *United States Fruit*, 410

4

F.2d at 556). And, in both cases, the party equated disclosure to legal counsel and independent experts with disclosure to its competitor. Here, as in *Medtronic*, the Court should deny the request to prevent the disclosure of relevant evidence, in accordance with the Supreme Court's observation that "orders forbidding any disclosure of trade secrets or confidential information are rare." *Fed. Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 362 n.24 (1979).

The cases cited by Johnson & Johnson are inapposite. Both *Mannington Mills* and *American Standard* involved the issue of whether a plaintiff could obtain confidential sales, profitability and marketing information in the custody of a *non-party* competitor. The *Mannington Mills* decision turned largely on the substantial burden that would have been imposed on the *non-party* competitor in collecting and producing the documents at issue, given that the same or similar information was available from the *party* opponent. Here, the *non-party* competitor, Johnson & Johnson, faces no burden whatsoever in collecting or producing these documents; indeed, Johnson & Johnson is not required to do anything at all. CooperVision seeks production of the documents directly from CIBA. Further, the sales information at issue in *Mannington Mills* and *American Standard* was solely sought as tangential evidence of commercial success to help rebut an obviousness assertion. In contrast, the documents at issue here are far more immediately relevant, as they reflect prior litigation positions by the same party asserting the same patents against the same types of products.

### III. CIBA REFUSES TO PRODUCE EVEN DOCUMENTS THAT JOHNSON & JOHNSON HAS AGREED MAY BE PRODUCED

CIBA has refused to produce even those *documents Johnson & Johnson has agreed may be produced.* Specifically, Johnson & Johnson does "not object to the production of materials containing or describing its invalidity and unenforceability contentions." Nevertheless, CIBA refuses to produce the prior litigation documents to CooperVision in any reasonable

5

manner. CIBA instead insists that CooperVision must travel to three law firm offices across the country to inspect and photocopy such documents, even when they are in *electronic* form. This apparently includes the Johnson & Johnson documents, even though Johnson & Johnson has agreed that some of them could be produced immediately, and even though Johnson & Johnson has indicated that at least some of its documents were *produced electronically*. CIBA's position that CooperVision must travel to law firm offices across the country and make photocopies of documents that could be easily sent to the offices of CooperVision's counsel – as other documents have been for purposes of production in this case – should not be countenanced by this Court.

### IV.  CONCLUSION

CooperVision requests that the Court enforce its July 25, 2007 Order, and order CIBA to produce to CooperVision copies of the documents from its cases against Johnson & Johnson immediately.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Karen Jacobs Louden
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347

*Of Counsel*:

Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
klouden@mnat.com

Morgan Chu
David I. Gindler
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010

*Attorneys for Plaintiff
CooperVision, Inc.*

August 28, 2007

## CERTIFICATE OF SERVICE

I, Karen Jacobs Louden, hereby certify that on August 28, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

>Karen L. Pascale, Esquire
>YOUNG, CONAWAY, STARGATT & TAYLOR LLP
>
>David E. Moore, Esquire
>POTTER ANDERSON & CORROON LLP

I also certify that copies were caused to be served on August 28, 2007 upon the following in the manner indicated:

### BY ELECTRONIC MAIL and HAND DELIVERY

Karen L. Pascale, Esquire
YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

David E. Moore, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza – 6th Floor
1313 North Market Street
Wilmington, DE  19801

### BY ELECTRONIC MAIL and FEDERAL EXPRESS

John P. Iwanicki, Esquire
BANNER & WITCOFF, LTD.
28 State Street
Boston, MA  02109

Harry J. Roper, Esquire
Timony J. Barron, Esquire
Daniel J. Schwartz, Esquire
JENNER & BLOCK LLP
330 North Wabach Avenue
Chicago, IL  60611

>*/s/ Karen Jacobs Louden*
>Karen Jacobs Louden (#2881)
>klouden@mnat.com

# EXHIBIT A

1

**COPY**

```
                IN THE UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
                       JACKSONVILLE DIVISION


JOHNSON & JOHNSON                    Jacksonville, Florida
VISION CARE, INC.,

        Plaintiff and,               Case No. 3:05-cv-135-J-32TEM
        Counterclaim Defendant,               3:06-cv-301-J-32TEM
        and Consol. Defendant
        and Counterclaimant,

vs.                                  July 25, 2007

CIBA VISION CORPORATION,             10:00 a.m.

        Defendant and                Courtroom No. 10B
        Counterclaim Plaintiff
        and Consol. Plaintiff
        and Counterclaim
        Defendant.


                         MARKMAN HEARING
            BEFORE THE HONORABLE TIMOTHY J. CORRIGAN
                  UNITED STATES DISTRICT JUDGE
```

APPEARANCES

PLAINTIFF'S COUNSEL:

    **JAMES W. MIDDLETON, ESQ.**
    Rogers Towers, P.A.
    1301 Riverplace Boulevard, Suite 1500
    Jacksonville, Florida 32207

    **HARRY J. ROPER, ESQ.**
    **SHEHLA F. SYED, ESQ.**
    **DANIEL J. SCHWARTZ, ESQ.**
    **TIMOTHY J. BARRON, ESQ.**
    Jenner & Block
    One IBM Plaza
    330 North Wabash Ave
    Chicago, Illinois 60611

DEFENSE COUNSEL:

    **THOMAS P. STEINDLER, ESQ.**
    **CHARLES R. WORK, ESQ.**
    **COREY A. SALSBERG, ESQ.**
    **DANIEL BUCCA, ESQ.**
    **JOAN GRIFFIN, ESQ.**
    **JOEL M. FREED, ESQ.**
    **RAPHAEL V. LUPO, ESQ.**
    McDermott, Will & Emery
    600 13th Street, N.W., Suite 1200
    Washington, DC 20005-3096

    **RUTLEDGE R. LILES, ESQ.**
    Liles, Gavin, Costantino & George
    One Enterprise Center
    225 Water Street, Suite 1500
    Jacksonville, Florida 32202

COURT REPORTER:

    Shannon M. Bishop, RMR, CRR


(Proceedings reported by microprocessor stenography;
transcript produced by computer.)

```
 1                    P R O C E E D I N G S

 2   July 25, 2007                                    10:00 a.m.

 3                              - - -

 4            COURT SECURITY OFFICER:  All rise.  The United

 5   States District Court in and for the Middle District of

 6   Florida is now in session.  Honorable Timothy J. Corrigan

 7   presiding.  Please be seated.

 8            THE COURT:  Good morning.  Johnson & Johnson

 9   Vision Care, Inc., versus CIBA Vision Corporation.  The

10   cases are numbered 3:05-cv-135 and 3:06-cv-301.

11            Starting with Johnson & Johnson, Mr. Middleton, if

12   you'll do the honors and introduce your table, please.

13            MR. MIDDLETON:  Good morning, Your Honor.

14            THE COURT:  Good morning.

15            MR. MIDDLETON:  James Middleton, of Rogers Towers.

16   And seated at the front counsel table with me is Harry

17   Roper, Aaron Barlow, and Tim Barron, of Jenner & Block.  And

18   at the back table with me is Alex Rozenblat.  And then there

19   are various Johnson & Johnson people out there.

20            THE COURT:  Okay.  Thank you, sir.

21            Mr. Liles, on behalf of CIBA, would you do the

22   same, please?

23            MR. LILES:  Be honored to, Your Honor.  I'm

24   Rutledge Liles, Liles, Gavin, Costantino & George.  Behind

25   me are Tom Steindler, Dan Bucca, and Joan Griffin, all for
```

1 these patents -- when they're making decisions about
2 research and development programs, about spending tens and
3 hundreds of millions of dollars of going in particular
4 directions and doing research.  So it --
5          THE COURT:  Were you the lawyer up there?  You
6 were the lawyer up there for them?
7          MR. STEINDLER:  Which one?  I'm sorry?
8          THE COURT:  Were you the lawyer for CIBA up in
9 Georgia?
10         MR. STEINDLER:  I was not.
11         THE COURT:  You were not?  Okay.  One of the
12 things I noticed -- of course, I don't have -- I know y'all
13 filed the Markman hearing in that case.  I didn't read it.
14 I'm sure it's fascinating.
15         But one of the things that wasn't clear to me was
16 whether it was a fair fight or not.  In other words, did
17 Bausch & Lomb -- it seemed like there were a lot of the
18 terms that Bausch & Lomb didn't ask for construction of, and
19 so the court simply adopted your construction.
20         If that's so, how does that play out, when
21 somebody actually does oppose it on the other side in a
22 Markman hearing in this court?  Am I still supposed to give
23 deference to Judge Story, knowing that he only heard one
24 side of the equation?
25         MR. STEINDLER:  There's two answers to that.

1  First of all, while Johnson & Johnson says that most of the
2  issues were uncontested, that's not true.  Five out of the
3  20 terms that Judge Story construed were simply identified.
4  So a quarter of them were.
5          And the separate response to that is that the
6  court -- the judge has an independent duty, an obligation,
7  to properly construe these claim terms, regardless of what
8  the parties have to say about it.
9          The federal circuit has likened claim construction
10 to statutory interpretation.  The short answer here is that
11 this judge, even if -- doesn't just adopt willy-nilly a
12 construction.  He has a legal obligation to construe the
13 patents.
14         THE COURT:  That sounds good.
15         MR. STEINDLER:  Well...
16         THE COURT:  But, really, is that what goes on?  I
17 mean, do I -- you're saying that in theory I could just sit
18 down with these -- with this patent and the specifications
19 and I could just write out my own construction of all these
20 claims, and I don't really need y'all, and so -- and, then,
21 that's my obligation?  Is that what you're saying?
22         MR. STEINDLER:  The Supreme Court has said that
23 claim construction is a question of law to be decided by the
24 court.  And as in all legal issues, the parties are here to
25 make their arguments.  They're here to advance whatever

```
 1  positions that they can advance.  But you have an
 2  independent legal duty to construe these claims.
 3          THE COURT:  But our system, does it not,
 4  Mr. Steindler, depends upon adversarial testing of those
 5  positions so that I can make an informed decision?  And if I
 6  don't have anybody on the other side -- if I have somebody
 7  smart, like you, telling me, Here's the way this ought to be
 8  construed and here's all these technical terms and here's
 9  what the specifications say and so forth, and I don't have
10  anybody on the other side telling me the opposite, it's
11  going to be kind of hard for me to independently come to the
12  opposite conclusion, isn't it?
13          MR. STEINDLER:  Well, I think two things.
14          THE COURT:  Have you ever seen that, by the way?
15          MR. STEINDLER:  Have I ever seen judges in a
16  second court --
17          THE COURT:  No, sir.  Have you ever seen a judge
18  in a Markman hearing, when the claim is not contested, say,
19  I know that's what you say, and I know nobody's saying the
20  opposite, but here's what I think?  Have you seen that
21  before?
22          MR. STEINDLER:  I have seen judges say, The
23  parties say A -- the one party says A, the other party says
24  B, and I'm going to say Z.
25          THE COURT:  Yeah.  That's different, isn't it?
```

```
 1            MR. STEINDLER:  That is different.  Yes, I concur.
 2            THE COURT:  Okay.
 3            MR. STEINDLER:  I think the fundamental point here
 4   is nobody's contesting -- I don't -- I don't contend that
 5   the Georgia court decision is stare decisis or -- or is
 6   mandatory.  What the cases have said --
 7            THE COURT:  What I was looking for, and I finally
 8   found it -- in Judge Story's order, he cites the law.  The
 9   court also notes that as to several of the disputed claims,
10   defendant has offered no construction arguing
11   indefiniteness, which we also have here, by the way, which
12   I'll be asking Mr. Roper about, why we're talking about
13   indefiniteness in a Markman hearing.
14            And so he goes on to say that you don't talk about
15   indefiniteness in a Markman hearing.  And for this reason,
16   In instances where defendant has offered no construction and
17   argued that the claims are indefinite, the court adopts
18   plaintiff's construction.
19            Now, are you saying that that was an independent
20   determination by Judge Story, or was he simply rejecting an
21   indefiniteness contention and saying, Well, since there's
22   nobody saying something else, I'm going to adopt the
23   plaintiff's construction?
24            MR. STEINDLER:  I wasn't there.  I can't get into
25   Judge Story's head.  The only -- I can only say this, he has
```

1 a legal duty to do an independent evaluation. Whether he
2 did or not is a separate question.
3     And as I say, again, that is with respect to a --
4 a finite number of the clinical terms that were -- that were
5 addressed, a small number, four or five clinical terms, that
6 Bausch & Lomb had contended were indefinite. On those,
7 there was no position advanced by Bausch & Lomb.
8     In any event --
9     THE COURT: And the other question I had for you
10 is -- I suppose, as a matter of pure law, the claim, as you
11 say, ought to be construed the same no matter who's doing it
12 or no matter where they're doing it.
13     But is there no place in patent law to understand
14 that context may be different? That is, that in the CIBA
15 case with Bausch & Lomb, I have no idea what the -- what the
16 accused product did or didn't do. But isn't the context of
17 the dispute something that should be considered as well?
18     In other words, Johnson & Johnson may have reasons
19 to seek constructions in this case that Bausch & Lomb had no
20 reason to seek in the other case.
21     MR. STEINDLER: Two answers. The first is that
22 the federal circuit has said en banc, many years ago, that
23 in claim construction the accused device is not to be
24 considered. And that was in *SRI International versus*
25 *Matsushita Electric*, an en banc decision from 1985, 775 --