## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

COOPERVISION, INC.,                    )
                                       )
      Plaintiff,                )
                                       )
   v.                                  )     C.A. No. 06-239-SLR
                                       )
CIBA VISION CORP.,                     )
                                       )
      Defendant.                )

### CIBA VISION'S MOTION TO MODIFY THE COURT'S SEPTEMBER 5, 2007 ORAL ORDER REGARDING ELECTION OF PATENTS FOR TRIAL

Defendant CIBA Vision Corporation ("CIBA") hereby respectfully moves this Court to modify its September 5, 2007 Order, directing plaintiff CooperVision, Inc. ("CooperVision") to elect two (2) of the six patents presently in suit in this matter on which to proceed to trial in a first phase of this litigation. In particular, CIBA requests that this Court allow CIBA to choose one of the two patents that will be tried first.

## I.    SUMMARY OF ARGUMENT

The central issue in this suit is whether the accused Biofinity *contact lens* sold by CooperVision infringes CIBA's patents. The two patents selected by CooperVision on which to initially proceed, however, have no contact lens claims, but instead merely claim *methods* of forming, using and screening lenses, and therefore implicate issues that are only ancillary to the central issue in the suit. CIBA's choice, i.e., U.S. Patent No. 5,760,100, has contact lens claims and would replace one of the two method patents identified in "Plaintiff CooperVision Inc.'s Election of Patents" filed September 12, 2007 (D.I. 70), i.e., either U.S. Patent No. 5,789,461 or U.S. Patent No. 5,776,999, as CooperVision may elect. An earlier resolution of this case will be

facilitated if this motion is granted so that contact lens claims are also litigated, instead of only method claims, as part of the first trial.

## II.     PROCEDURAL BACKGROUND AND RELEVANT FACTS

This is a declaratory judgment action involving six (6) separate patents.  Four of the patents include claims directed to extended wear ophthalmic lenses, i.e., soft contact lenses, formed using certain polymeric materials and having certain physical features.  The other two patents describe and *only* claim methods of forming, using and screening such contact lenses. The six patents involve complex polymer chemistry and together include a total of over 200 patent claims.

This Court recognized the practical difficulties and increased risk of jury confusion that would result were all six patents tried in a single proceeding.  Therefore, during the September 5, 2007 teleconference, the Court directed CooperVision, by September 12, 2007, to select two of the six patents in suit on which to proceed.  *See* D.I. 67, transcript of September 5, 2007 telephone conference, at 21-22 (attached hereto as Exhibit 1).  The Court indicated that the case would be stayed as to the remaining four patents until after trial on the two elected patents was concluded.  (Ex. 1 at 24, 25-26.)

CooperVision filed its Election of Patents in this Court on September 12, 2007, selecting U.S. Patent Nos. 5,789,461 (the '461 patent) and 5,776,999 (the '999 patent) as the two patents on which to proceed (D.I. 70) (Exhibit 2).  The '461 patent, entitled "Methods of forming an Extended Wear Ophthalmic Lens Having a Hydrophilic Surface," describes and claims a method for forming a biocompatible lens.  The '999 patent is entitled "Methods of Using and Screening Extended Wear Ophthalmic Lenses" and includes claims to a method of using a contact lens and a method of screening an ophthalmic lens.

2

Both the '461 patent and the '999 patent include method claims only, i.e., claims to methods of forming or methods of using and screening contact lenses. Neither patent includes any claim to the contact lens itself.

CIBA has asked CooperVision to reconsider its election and to substitute U.S. Patent No. 5,760,100, which includes contact lens claims, for one of the '461 patent and the '999 patent. CooperVision refused CIBA's request, and indicated its intention to oppose this Motion.

## III.    ARGUMENT

### A.    The Central Dispute Between the Parties Concerns Contact Lenses, Not Related Methodology

The primary dispute between the parties in this action concerns CooperVision's Biofinity contact lenses, which are at the heart of the present controversy. CooperVision manufactures the Biofinity lenses outside the United States and imports the lenses into the United States for distribution and sale in the U.S. through eye care practitioners. CIBA's proposed infringement claims against CooperVision are based on CooperVision's importation and sale of the Biofinity lenses in the United States and thus principally concern the contact lenses themselves as opposed to the methods by which the contact lenses are formed. [1]

The '461 patent and the '999 patent selected by CooperVision describe and claim methodology that is employed by CooperVision outside the United States in manufacturing the Biofinity lenses that CooperVision imports into and sells within the United States. However, neither of these patents includes any claims to the contact lens itself.

---

[1]    CIBA notes that its "Motion for Leave to File an Amended Answer and Counterclaims" (D.I. 61, filed August 27, 2007), through which CIBA would affirmatively assert infringement claims against CooperVision, is still pending.

**B.     Early Resolution of This Case Will Be Facilitated By Litigating Contact Lens Product Claims in the First Trial**

CIBA respectfully submits that early resolution of this case will be facilitated if contact lens claims are litigated as part of the first trial. U.S. Patent No. 5,760,100 (the '100 patent), which CIBA has suggested should be substituted for one of the '461 patent and the '999 patent selected by CooperVision, includes claims to an ophthalmic lens formed from certain polymeric materials and having certain properties. If CIBA succeeds in the first trial in proving that CooperVision's Biofinity lenses infringe the '100 patent, there may be no need to try the remaining patents.

On the other hand, with CooperVision's proposal, one or more additional trials will be required, even if CooperVision wins on the selected method patents. This is because trial on the method claims alone will only resolve whether CooperVision is using CIBA's patented methods. It will not resolve the more fundamental question, which is at the heart of the dispute between the parties, of whether CooperVision's Biofinity contact lenses sold within the United States, by whatever method made, infringe valid claims of CIBA's patents in suit.

**IV.     CONCLUSION**

The interests of judicial economy and efficiency, as well as the conservation of the parties' resources, are best served if contact lens claims are litigated as part of the first trial in this matter. This approach presents the best opportunity to finally resolve the dispute between the parties without the need for further trials, which is not possible with CooperVision's current proposal. Accordingly, CIBA respectfully requests that this Court modify the September 5, 2007 Order to permit CIBA to elect U.S. Patent No. 5,760,100 as one of the two patents to be litigated during the initial trial proceedings in this action.

DB02:6205297.1                                                                                              065274.1001

Finally, as will be explained more fully in CIBA's forthcoming reply in support of its motion to amend (due September 24, 2007), CIBA respectfully suggests that the most sensible order of events to get this case "on track" for the remainder of discovery and proceed smoothly towards an October 2008 jury trial is to (a) permit CIBA to file its amended pleading, which includes affirmative allegations of infringement against CooperVision on the six patents-in-suit; (b) finalize the parties' election of two patents, to include CIBA's choice of U.S. Patent No. 5,760,100 (containing contact lens claims), together with a patent of CooperVision's choosing (i.e., either the '461 or the '999 patent); and (3) stay the remainder of the parties' claims with respect to the other four patents-in-suit.[2]

YOUNG CONAWAY STARGATT & TAYLOR LLP

*/s/ Karen L. Pascale*

September 20, 2007

Karen L. Pascale (No. 2903) [kpascale@ycst.com]
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: 302-571-6600

Robert F. Altherr
BANNER & WITCOFF, LTD.
1001 G Street, N.W., 11th Floor
Washington, DC 20001
Telephone: 202-508-9100
Facsimile: 202-508-9299

---

[2]    If these three events are accomplished, the only case management issue remaining for the Court to resolve at this time will be whether to bifurcate issues of damages and willfulness for trial purposes only (which CIBA prefers), or whether to stay all discovery on damages and willfulness until after the first trial (which is CooperVision's request). As will be set forth in greater detail in CIBA's reply in support of its motion to amend, CIBA is in general agreement with CooperVision's proposed outline of the remainder of the pretrial schedule (see D.I. 74, CooperVision Inc.'s Opposition to CIBA Vision Corp.'s Motion for Leave to File an Amended Answer and Counterclaims, at 4), and believes that discovery on damages and willfulness can be completed within that time frame.

Timothy C. Meece
Thomas K. Pratt
Shawn P. Gorman
BANNER & WITCOFF, LTD.
Ten South Wacker Drive
Suite 3000
Chicago, Illinois 60606-7407
Telephone: 312-463-5000
Facsimile: 312-463-5001

John P. Iwanicki
BANNER & WITCOFF, LTD.
28 State Street
28th Floor
Boston, MA 02109
Phone: 617-720-9600
Facsimile: 617-720-9601

***Attorneys for Defendant,***
***CIBA Vision Corporation***

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on September 20, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Jack B. Blumenfeld    jbbefiling@mnat.com
> Rodger Dallery Smith, II    rdsefiling@mnat.com
> Adam Hoffman    ahoffman@irell.com
> Amir A. Naini    anaini@irell.com
> Ben Yorks    byorks@irell.com
> David I. Gindler    dgindler@irell.com
> Jason G. Sheasby    jsheasby@irell.com
> Morgan Chu    mchu@irell.com
> Stephen W. Larson    slarson@irell.com

I further certify that on September 20, 2007, I caused a copy of the foregoing document to be served on certain of the above-listed counsel and on certain non-registered participants, as listed below in the manner indicated:

### By Hand Delivery and E-Mail

Jack B. Blumenfeld [jblumenfeld@mnat.com]
Rodger D. Smith II [rsmith@mnat.com]
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200

### By E-Mail

Morgan Chu [mchu@irell.com]
David I. Gindler [dgindler@irell.com]
Jason G. Sheasby [JSheasby@irell.com]
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067
(310) 277-1010

/s/ Karen L. Pascale
_____
Karen L. Pascale (No. 2903)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
Email:  kpascale@ycst.com

# EXHIBIT 1

1                     IN THE UNITED STATES DISTRICT COURT

2                     IN AND FOR THE DISTRICT OF DELAWARE

3                              - - -

4    COOPERVISION, INC.,              :        CIVIL ACTION
                                      :
5              Plaintiff             :
                                      :
6         vs.                        :
                                      :
7    CIBAVISION CORP.,                :
                                      :
8              Defendant             :        NO. 06-239 (SLR)

9                              - - -

10                                  Wilmington, Delaware
                                    Wednesday, September 5, 2007
11                                  4:45 o'clock, p.m.
                                    *** Telephone conference
12                              - - -

13
     BEFORE:   HONORABLE SUE L. ROBINSON, U.S.D.C.J.
14
                               - - -
15
     APPEARANCES:
16
               MORRIS, NICHOLS, ARSHT & TUNNELL
17             BY:   JACK B. BLUMENFELD, ESQ.

18
                       -and-
19

20             IRELL & MANELLA
               BY:   DAVID L. GINDLER, ESQ.
21                   (Los Angeles, California)

22
                    Counsel for Plaintiff
23

24                                  Valerie J. Gunning
                                    Official Court Reporter
25

2

```
 1   APPEARANCES (Continued):

 2
             YOUNG CONAWAY STARGATT & TAYLOR LLP
 3           BY:   KAREN L. PASCALE, ESQ.

 4
                       -and-
 5

 6           BANNER & WITCOFF, LTD.
             BY:   ROBERT F. ALTHERR, JR., ESQ. and
 7                 CHRISTOPHER B. ROTH, ESQ
                   (Washington, D.C.)
 8

 9                 Counsel for Defendant

10
                       - - -
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1            P R O C E E D I N G S

2

3            (REPORTER'S NOTE:  The following telephone

4    conference was held in chambers, beginning at 4:45 p.m.)

5

6            THE COURT:  Good afternoon, counsel.  This is

7    Judge Robinson.  Valerie is here as our Court Reporter.  It

8    would be helpful if you identified yourselves when you

9    spoke.

10           I know I've got some papers about issues that you

11   all want to talk about.  I think I will let plaintiff's

12   counsel get us started and then we'll see how far we can get

13   through the issues.

14           MR. BLUMENFELD:  Thank you, Judge.  It's Jack

15   Blumenfeld, for CooperVision.

16           There really aren't a lot of papers.  There are

17   an emergency e-mail and a response.  But in our view, the

18   reason we asked for this is because the case has gotten a

19   little mired down in an untenable procedural posture and we

20   were hoping maybe we could get a little help in getting

21   unstuck and fixing things.

22           But just to fill you in on the immediate

23   emergency, the last time we talked to you, we had a

24   conference on June 14th, and one of the things that your

25   Honor did that day was set August 15th, September 5th, and I

1   believe September 20th, but some time later in September, as

2   a schedule for the parties to provide contentions and then

3   responses, and when we were before you, we raised limiting

4   the number of claims.

5                There are six patents in this case.  And your

6   Honor said during the course of that conference that you were

7   going to order us to meet and confer to talk about limiting

8   claims, that we had to find a way.

9                You said, and I'm quoting the transcript at

10  Page 36, I'm telling you you have to do it.  And after that

11  conference, in July, we tried, at least on our side we tried

12  and didn't have any -- any success.

13               On August 15th, when it was Ciba's turn,

14  after -- after two months after the conference to give

15  us their infringement contentions, they came forward and

16  they asserted 146 claims, and 47, I believe 47 independent

17  claims and 99 dependent claims.  And that left us in a

18  situation where we had three weeks, including over a

19  holiday weekend, to do noninfringement, invalidity

20  contentions for 146 claims.

21               So I raised that with Ciba's counsel, after we

22  got their claims limiting the number of claims and/or giving

23  us some more time to deal with that, and the response I got

24  was, as to the number of claims, The judge told us we didn't

25  have to talk to you, so we won't.  And as to additional time,

5

1 | absolutely not.

2 | Another issue that came up at the same time was

3 | that we have a November 1st fact discovery cutoff, which is

4 | now less than two months away, and I wanted to discuss

5 | extending the schedule with 146 claims now in the case, and I

6 | got a very similar no, we don't want to discuss extending the

7 | schedule. We're prepared to go forward on these 146 claims,

8 | finish up by November 1st.

9 | A related issue was that we're still trying to

10 | get third-party documents that we've been trying to get since

11 | the end of last year. Your Honor issued an order in July

12 | that Ciba produce to us certain third-party documents. That

13 | came up at the June 14th hearing also and Ciba's counsel said

14 | it wasn't going to be a problem. There was a procedure put

15 | in place for third-party objections. And one of the things

16 | we wanted was from previous litigation, or wanted from

17 | ongoing litigation, was to get Bausch & Lomb's and Johnson

18 | and Johnson's invalidity contentions so we could see them and

19 | would not have to start over.

20 | And there was a fair amount of back and forth,

21 | and finally Ciba told us on August 8th, the documents will be

22 | available for inspection and copying in one week at three

23 | separate locations in D.C and in Texas, so come on August

24 | 15th to all three locations and see them.

25 | We said, Well, can you put them in one location?

1   They said, No.  We said, Do you have them electronicaly?  Can

2   you give them to us electronicaly?  We don't know what we

3   have.  Can you ship us copies?  No.

4            And, you know, on August 20th, or August 18th,

5   we finally said, Would you please just send us copies?

6   And the bottom line is, we still don't have Bausch & Lomb and

7   Johnson and Johnson's contentions.  They have not been sent

8   to us.

9            And so where we are, in our view at least,

10  is this is not any way to litigate a case, let alone a

11  six-patent case, to be confronted with 146 claims with

12  two months left, to not be in a position to even discuss

13  limiting the claims, to not be in a discussion to even

14  discuss getting an extension, and to not have all the

15  documents that we need and also not to discuss adjusting

16  the overall schedule.

17           And I guess what we would like the Court to

18  do is to order Ciba seriously now that we have 146 claims,

19  to sit down with us and discuss finding a way to limit

20  them.

21           We would like a reasonable period of time to have

22  responses to whatever number of claims are going to be in the

23  case, or if we need to get your Honor involved in that, to

24  get your Honor involved in that.

25           We would like an order that they just send us the

7

1   third-party documents and that we have them now and don't

2   have to continue going through this, you have to come inspect

3   them and you have to come to three locations.

4           And I think what we really need, if we can get

5   through those things, is a conference with the Court to

6   discuss the overall case and a schedule in getting it on

7   track, because it's really hard to imagine how, with 146

8   claims asserted on August 15th, or any number approaching

9   that, it's realistic to think we're going to complete

10  discovery in this case in less than two months, by November

11  1st.  It just doesn't seem like a case that matches the

12  schedule that was set quite a while ago.

13          So those are our issues to try to get the number

14  of claims limited, to get a reasonable amount of time,

15  to get the documents and to get a realistic schedule in

16  place.

17          THE COURT:  All right.  Let's hear from

18  CooperVision, or Ciba.

19          MR. ALTHERR:  Your Honor, this is Robert Altherr,

20  from Banner & Witcoff, on behalf of Ciba.

21          This case was filed by CooperVision nearly

22  16 months ago, and they still have not put their cards on

23  the table as to why they brought the case in the first

24  place.

25          They are the ones that alleged six patents

1   were invalid and not in infringed, implicating more than
2   250 patent claims in this case.

3          Now, as counsel indicated, at the last discovery
4   conference, you said, even though that we were not the
5   plaintiff, we were the patentee, we would have to come
6   forward first and say what patent claims were at issue here.

7          And what we did was, at great effort and great
8   expense, went through, prepared detailed infringement claim
9   construction, or claim charts, and reduced the number of
10  claims at issue, eliminated more than a hundred out of the
11  250 claims that the plaintiffs had put in issue in this
12  case.

13         The plaintiffs have known since June 14th that
14  they were going to have to respond and that there's very
15  little time left in the present schedule, and that they knew
16  that this was going to come up.

17         Now, when he says that we refused to discuss at
18  all limiting the claims, that's not correct, your Honor.
19  What we said was we would be more than willing to meet with
20  you once you come forward and you give us some idea of what
21  your contentions are as to why you say these claims are not
22  infringed and are not invalid.  Then we can get -- we can
23  work together and whittle this down to something which is
24  manageable.

25         But they have not put anything on the table

9

1   to tell us why they even brought this suit in the first

2   place.

3              With regard to their allegation that they lack

4   the information because they have not gotten a contention --

5   contentions of Johnson & Johnson and Bausch & Lomb, that

6   is a contrived excuse to delay response, as ordered by

7   the Court.

8              Invalidity contentions rarely have any

9   confidential information in them at all.  It's based

10  on prior art, which is in the public domain and the

11  patents in suit, the file histories, which is publicly

12  available.

13             CooperVision has had the invalidity contentions,

14  the unenforceability contentions, and the noninfringement

15  contentions from Johnson & Johnson and from Bausch & Lomb's

16  litigation since last February.  And, in particular, I can

17  tell you that we provided them in-mid February, defended

18  Bausch & Lomb's supplemental response to No. 1, Interrogatory

19  No. 1, to request fully and completely state the basis for

20  and/or contentions relating to any and all defenses or

21  counterclaims, and it continues, including but not limited to

22  patent invalidity, noninfringement and unenforceability.

23  Identify all documents supporting each such defense or

24  counterclaim.

25             That was a 44-page answer at that time.

1   We also gave them defendant Bausch & Lomb's

2   second supplemental response to that same interrogatory,

3   which was a further 87 pages.

4   We gave them defendant Bausch & Lomb's motion for

5   summary judgment of invalidity, pursuant to 35 U.S.C. 112,

6   Paragraph 1, which was the motion and supporting exhibits,

7   which was 532 pages.

8   We gave them Bausch & Lomb's reply brief in

9   support of that motion for invalidity, which is another

10   additional 133 pages.

11   We gave them Bausch & Lomb's notice pursuant to

12   35 U.S.C. 282.  33 pages long, it sets forth all the prior

13   art in which they're relying on for anticipation and for

14   obviousness.  All of this was provided last February.

15   We provided copies of Bausch & Lomb's proposed

16   findings of fact and conclusions of law, 249 pages, back

17   last February.

18   We gave CibaVision the preliminary expert

19   report of Dr. William Daley pursuant to 26(a)(2)(B),

20   a section of which is entitled, "Validity Analysis of the

21   Patents in Suit."

22   And we gave them a supporting declaration of

23   Gary D. Friends, who worked for Bausch & Lomb, who related

24   some prior art that they were relying on for their 102(g)

25   purposes.  That is for Bausch & Lomb.

1          For Johnson & Johnson, we provided them in

2     February Johnson & Johnson's responses to Ciba's first

3     set of interrogatories, Interrogatory No. 3, which was

4     included in that, their response.

5          It says, Describe with particularity the basis

6     for your contention that neither J&J nor silicone-filled

7     contact lenses infringe any claim.  J&J's response, it

8     says J&J's specific response to Ciba's infringement

9     contentions are set forth in the claim charts attached

10    hereto as Exhibit B.

11         Gave them those claim charts.  Those claim charts

12    had Ciba's infringement contentions, and then a column next

13    to it, Johnson & Johnson's contentions in opposition to those

14    contentions of Ciba.

15         Interrogatory No. 4 said, Describe with

16    particularity the basis of your contention that all the

17    claims of the '100 patent are invalid because of a failure to

18    meet one or more of the conditions of patentability.

19         There were those two interrogatories for each of

20    the patents in suit with J&J.  That's Interrogatories Nos. 3

21    through 12.  All right.  Provided answers to all those

22    contention interrogatories.

23         We also gave them J&J's second response to Ciba's

24    second set of interrogatories.  Interrogatory No. 22 said,

25    Describe with particularity the basis for your contention

1  that the Nicholson patents are unenforceable due to

2  inequitable conduct.

3         Number 33, identify all prior art in the prior

4  art that Johnson & Johnson intends to rely on to support

5  its contentions the Nicholson patents are invalid and

6  unenforceable and the persons most knowledgeable.

7         They've had all of that information since

8  February.  Additionally, we gave them Johnson and Johnson's

9  memorandum in opposition to Ciba's motion for a TRO, and

10  there's a section in that memorandum which is entitled, There

11  are substantial questions as to the validity, enforceability

12  of the asserted patents.

13         They have had the information they need to answer

14  these contention interrogatories for months and months.  They

15  should have had it before they even filed suit in the first

16  place and have a Rule 11(b) basis for bringing suit.

17         But to say that they can't answer these

18  interrogatories because we've held information back is just

19  not correct, your Honor.

20         Now, as far as the delay in this case, we knew,

21  the parties knew that they were at impasse on these

22  contention interrogatories last March.  We, Ciba, requested

23  of CooperVision that we move up the discovery conference.

24  Instead of having it in mid-June, we requested to have it in

25  April, and CooperVision flat out refused.  They said no,

13

1    we're not going to do it again.  We're going to have it in

2    June, when the Court set it.

3            So that's why this -- additionally, CooperVision

4    has been trying to delay the suit.  Our belief is because

5    they have another offensive suit against Ciba in the Eastern

6    District of Texas, which they're trying to push on and

7    push as fast as they can to rush to a judgment.  It's got

8    a trial date next year while they drag their feet in

9    this case.

10           We have tried to get depositions in this case.

11   There's not one single deposition that has been conducted

12   in this case yet.  We've given them a number of dates.  We

13   requested that CooperVision provide us with witnesses in

14   response to our 30(b)(6) deposition notice, which we served

15   on August 1st and would the deposition be on the 28th, and

16   they still have not responded with any dates or any witnesses

17   at all since -- to try to get this case moving.

18           We filed -- your Honor, you gave us until, I

19   believe it was October 1st, to file a -- an amended pleadings

20   and counterclaims in that.  And it was -- CooperVision's

21   counsel at the discovery conference said, Well, we're going

22   to get something in October and it's going to really compress

23   this.

24           We rushed, we tried to get this thing filed

25   back in August, and asked the other side.  The other

1   side won't even (inaudible) us to file our answer and

2   counterclaims that's currently pending before you as a

3   motion to leave.

4       We want to move this case forward.  The other

5   side is seeking a strategic advantage by trying to delay

6   it, and they're using this case with the third-party

7   confidentiality as an excuse, and it really is not.

8       Turning to the issue of third party-confidential

9   documents, from these two cases, the Bausch & Lomb case

10  was represented -- CibaVision was represented by Sidley &

11  Austin.  They are located in Dallas, Texas.  They put their

12  documents in archives.  There's over 100 boxes of documents

13  down there.

14      The J&J case, CibaVision is represented by

15  McDermott, Will & Emery.  They're located here in Washington,

16  D.C.  They have a number of boxes.  I don't think they have

17  quite as many as they have down in Dallas.  And then they do

18  have some electronics documents.

19      But the problem is you can't just turn around and

20  just produce electronic documents that contain other people's

21  confidential information in them because electronicaly, those

22  documents have not been Bates-numbered.  They have not been

23  marked with legends.  You have no control over them.

24      What we told CooperVision is, first of all, if

25  they wanted all the documents, all they've got to do is pay

1  for it.  If they're willing to pay for it, we'll have them

2  copied, marked, sent off.  They said, no, no, no, they don't

3  want that.

4         All right.  Then we said, come and look at the

5  documents.  Pick out what it is that you want in that, and

6  said we're going to have to get them marked and have to get

7  the legend put on them.  That's going to cost money and

8  you're going to have to pay for it.

9         They refused.  We offered to make all these

10  documents available for them, and they basically --

11  basically, what it is, they want our client to foot

12  the bill to have to go through, try to pick out and guess

13  and choose what it is that they want and send it to them.

14  And then we get into another discovery fight because they are

15  going to say we didn't send them everything they said we

16  should have.

17         We offered to make them available.  We're still

18  willing to make them available.  They can come and look, pick

19  whatever it is they want and we'll get it marked, give it to

20  them.  This is other people's confidential.  It's got to be

21  controlled.  We have to know who has access to it and if the

22  documents appear someplace else, we need those Bates numbers

23  on them and we know they were the ones that CooperVision

24  disclosed or someone else did.

25         Speaking of which, we still have the third

1    parties.  Three of the third parties have filed objections to

2    the production of the documents with the Court.  Those

3    objections are pending before you, your Honor.

4              THE COURT:  All right.  Let's start with that.

5              Mr. Blumenfeld, which documents are you truly

6    interested in here?  I mean, this, to some extent, is not the

7    most important part of the case, so tell me what particularly

8    you're interested in.

9              MR. BLUMENFELD:  Yes.  And it is a little

10   difficult, Judge, because one of the problems here is that

11   we don't -- we did get objections from Bausch & Lomb and from

12   Johnson & Johnson and they're before you.

13             I think with Bausch & Lomb, we've worked them

14   out, and Bausch & Lomb says, you know, you can have copies of

15   everything that was related to the trial.  That case actually

16   went to trial and settled after the trial.

17             And so as to that, there shouldn't be any issue,

18   and I would think that that would be pretty easy for us to

19   get, and I don't know why we don't have that.

20             THE COURT:  Well, tell me something.  Why is it

21   unreasonable for your client not to simply pay for the

22   copying of these third-party documents?

23             MR. BLUMENFELD:  I don't think that there's an

24   issue as to copying.  One of the problems we had, Judge, was

25   that we said we know, at least from Johnson & Johnson,

1   they've told us that they produced many of these documents

2   electronicaly, so they have them on C.D. or some other

3   electronic format, and what they said to us, well -- was,

4   we'll come down, wherever it was, I don't know in that case.

5   It was Washington or Texas.  We'll make some computers

6   available for you so you can review them.

7           We said, you know, we don't want to review them.

8   We just want the documents.  Why can't you copy them onto a

9   C.D.?  Now we're hearing, well, there's a confidentiality

10  issue.

11          I can't believe that, among good lawyers, we

12  can't figure out a way to deal with that confidentiality

13  issue and send us the C.D.s so we have them rather than

14  having to send a team of lawyers to cities all over the place

15  and say, you know, sit at computer terminals and look at the

16  documents.  I mean, we don't have an issue vis-a-vis the

17  third parties.  We do, to some extent, with Johnson &

18  Johnson, but we've worked most of that out.

19          It's really an issue of just getting -- getting

20  Ciba's lawyers to give them to us.  And one of the problems

21  we've had, we said, Well, tell us which of these you have

22  electronicaly so we can deal with it.  I think the

23  answer we got was, We don't know what we have

24  electronicaly.

25          So it makes it kind of hard for us to deal with

1   it.  I think we could talk to each other and get answers and

2   find out what it is that they have.  There certainly ought to

3   be ways for us to be able to get them, and I don't

4   think it is a paying-however-many-cents-a-page issue,

5   Judge.

6            THE COURT:  Well, this is my feeling.  I feel

7   as though the discussion about these third-party documents

8   is circular.  On the one hand, some of the third parties --

9   my impression is that there is agreement that the documents

10  they have have to do with issues that are not relevant,

11  related to the '820 packaging patent.

12           So I guess --

13           MR. BLUMENFELD:  Those -- I'm sorry to

14  interrupt.  Those are out.  We said we're not seeking

15  those.

16           THE COURT:  The problem is I'm not confident

17  that I know that.

18           So in terms of my record, I want to make sure

19  that the objections from the packaging folks are sustained or

20  are moot, because you're not really pursuing those.  Is that

21  correct?

22           MR. BLUMENFELD:  Right.  We filed a piece of

23  paper I think last week saying we're not seeking those.

24           THE COURT:  Well, somehow or other, that piece of

25  paper did not get to my desk.

1    So are we really talking about Bausch & Lomb and

2    Johnson & Johnson?

3        MR. BLUMENFELD:  And there's another

4    organization, CSIRO, that we're also talking about, and

5    that's a little different, because they've just said, We need

6    more time.  We are not in a position to respond.  And that

7    one we have asked for those documents.

8        CSIRO was a co-party with Ciba in the earlier

9    litigation, but all three of those sets of objections and

10   responses are before you.  And I don't remember what day it

11   was last -- I think it was last Tuesday, the 28th, that we

12   filed our responses to those.

13       THE COURT:  Okay.  Well, in terms of Johnson &

14   Johnson and Bausch & Lomb, I guess I'm -- Bausch & Lomb, it

15   seems to me as though Bausch & Lomb says, we have no

16   objection to Ciba producing to CooperVision.  So I guess --

17   let me go back to Ciba's counsel.

18       It's all about documents in Ciba's possession

19   that were produced to Ciba from these third parties, so we're

20   not really dealing with the third parties.  It's all about

21   Ciba getting these documents to CooperVision.  Is that

22   correct?

23       MR. ALTHERR:  The Bausch & Lomb documents are the

24   hundred boxes that are down in Texas, your Honor.

25       THE COURT:  And are you telling me that the

1   documents that were actually used in place in evidence, that

2   there are a hundred boxes of documents that were actually

3   placed in evidence in these trials?

4            MR. ALTHERR:  No.  No.  Not -- not at all, your

5   Honor.

6            What I'm saying is, the documents from Bausch &

7   Lomb that are down in Texas are the ones -- they're not

8   electronic.  They put them into archives and that's where

9   they were stored.

10           Now, as far as like if what you are talking about

11  are the trial exhibits, all right, the things that would have

12  been offered at trial in that, we could probably arrange to

13  get those if that's what is -- what you're saying.  And that

14  would be no problem if they're willing to pay for the

15  copies.

16           The one point I would like to make, though,

17  on this, your Honor, as I said, everything I ran through

18  before, they've got all the contentions for both of these

19  parties.

20           THE COURT:  Well, I understand that, but I'm

21  moving beyond that, because I'm trying to wrap this up and

22  trying to reach some resolution, so work with me here.

23           I don't know what is out there.  I'm just saying

24  that, at least with respect to Bausch & Lomb, and it's

25  unclear to me what J&J has said, but it seems to me, quite

1   frankly, that any documents that were made a matter of public

2   record in a trial should be produced, period, no questions,

3   no confidentiality concerns.  All right?

4          My question, then -- so those need to be copied

5   at CVI's expense and produced.

6          Now, if CooperVision truly wants more than that,

7   then they've got to go down and look, because as far as I'm

8   concerned, I don't know what else there is.  I don't know how

9   much is relevant.  And certainly I don't think that it's

10  worth killing a lot of trees or spending a lot of time in

11  this kind of pursuit of information that may or may not have

12  any relevance to this case, particularly after I make my next

13  decision, which is this.  This case is proceeding in kind of

14  a backwards way.  We have a declaratory judgment action and

15  then the burden is placed on the defendant, the patentee, to

16  say, this is what we allege infringes.

17         So, Mr. Blumenfeld, you and your client are going

18  to have to choose two of these six patents.  I am going to

19  give you a week to do it to proceed to trial.  I am not going

20  to ask the -- I'm not going to ask Ciba to kind of frame its

21  infringement case against you when you're the ones who

22  brought the case in the first instance.

23         And so whatever claims have been identified,

24  we're going to stick with them, but we're going to cut down

25  on the number of patents so we can get this case to

1   resolution, at least as to two of the six.

2           So by next week, September 12th, Mr. Blumenfeld,

3   you choose whatever two patents you think are the ones that

4   are the most important and critical to your business strategy

5   that you're pursuing here through this litigation, and the

6   week after that, you respond with your contentions as to

7   noninfringement and invalidity as to whatever claims have

8   been identified in connection with the two patents that you

9   chose.

10          Now, how that relates to the Third Circuit, I

11  mean the third-party discovery, it seems to me as though you

12  ought to identify the patents before you go ahead with the

13  third-party discovery, but, in any event, at least with the

14  third-party discovery, we're going forward on anything that

15  was admitted as an exhibit at trial.  Anything of public

16  record, in other words.

17          Now, any questions, concerns, objections, this is

18  the time to tell me.

19          MR. ALTHERR:  Your Honor, this is Robert Altherr

20  again, for Ciba.

21          A little clarification to a couple points.

22          Johnson & Johnson you had not ruled on yet, and

23  you're going to wait to rule on --

24          THE COURT:  No.  I thought I did.  I thought I

25  said with respect to Johnson & Johnson, even though they have

1  not agreed to it, anything that's a matter of public record

2  can't have confidentiality concerns.

3              MR. ALTHERR:  Fine.

4              THE COURT:  So any documents that were admitted

5  at a trial, or otherwise made public on the docket, need to

6  be produced.

7              MR. ALTHERR:  Johnson & Johnson has not gone to

8  trial yet, your Honor.

9              THE COURT:  All right.

10             MR. ALTHERR:  It is a pending case.

11             THE COURT:  All right.  Then I don't exactly

12  know -- without agreement of the parties, I don't exactly

13  know how I'm supposed to figure out whether these documents

14  are relevant and what kind of concerns there are.

15             So with respect to Johnson & Johnson, you've got

16  to work on it.

17             MR. ALTHERR:  If I may, your Honor?

18             THE COURT:  Yes?

19             MR. ALTHERR:  In Johnson and Johnson's

20  objections, they did say, at Paragraph 10, that

21  notwithstanding the foregoing, that Johnson & Johnson has

22  agreed to expeditiously review the expert reports, expert

23  depositions and discovery responses concerning Ciba's

24  infringement contentions.

25             THE COURT:  Right.  I can read that.  I'm

1    hoping you can work it out because I don't know how to.

2            It would be helpful if by next week, September

3    12th, that I get a definitive answer from somebody as to

4    whether there's a real dispute anymore or whether you all

5    have managed to act reasonably in this regard.

6            MR. BLUMENFELD:  Your Honor, Jack Blumenfeld.

7            We certainly will abide by your ruling and choose

8    the two patents to go forward on.  I'm not sure what happens

9    to the rest of the case.  I mean, that may well define some

10   of these discovery issues.  I would hope that it would.

11   Maybe with CSIRO also.

12           I'm not sure what happens with the rest of the

13   case or what even happens on the schedule with just those two

14   patents.  And maybe, getting back to where I started, it may

15   make sense, after we go through this process in the next

16   couple weeks, to still get back with you on where we are on

17   the overall schedule and where this case is going.

18           THE COURT:  Well, gosh, it seems to me as though

19   this is not a mystery.  Lots of judges -- I don't generally

20   do this because I hate to come back to the same case after

21   I've had a trial.

22           Generally, the matter is bifurcated and the rest

23   of the case is stayed, so that at least part of the case can

24   go forward to a prompt resolution.

25           MR. BLUMENFELD:  Yes.  And, Judge, I think I

1  understood that.

2          THE COURT:  All right.

3          MR. BLUMENFELD:  What I really was talking about

4  even with the two patents and the schedule we're on, we have

5  a November 1st discovery cutoff.  It seems to me like we

6  ought to discuss that.  But maybe the thing to do is for the

7  parties to discuss that first.

8          THE COURT:  Well, that's always a good start.

9          MR. ALTHERR:  Well, your Honor, one thing I was

10  going to suggest, there was a change to the schedule.

11  Although there's a November 1 discovery cutoff, expert

12  discovery begins then and discovery continues to February

13  15th.  If you made fact discovery co-extensive with expert

14  discovery, you've got five-and-a-half months for discovery,

15  which is plenty for this case.

16          THE COURT:  If you all can't reach agreement on

17  how to get this case to trial on the schedule, then you'll

18  need to e-mail me and we'll set up a conference.  All right?

19          MR. BLUMENFELD:  Okay.

20          MR. ALTHERR:  Your Honor, if I may, this is

21  Robert Altherr again.

22          I have a question about the four patents that are

23  dropped from the suit.  Are all claims with regard to those

24  patents, then, dismissed without prejudice?

25          THE COURT:  No.  They are not dropped.  It's just

26

1    stayed.

2              MR. ALTHERR:  Just stayed?

3              THE COURT:  Yes.  And I will put that in an order

4    as soon as I find out from plaintiff in the case which

5    patents we're going forward on.

6              All right?  Thank you, counsel, very much.  Have

7    a good evening.

8              (Counsel respond, "Thank you, your Honor.")

9              (Telephone conference concluded at 5:15 p.m.)

10                           -  -  -

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

COOPERVISION, INC.,              )
                                 )
            Plaintiff,           )
                                 )
        v.                       )    C.A. No. 06-239 (SLR)
                                 )
CIBA VISION CORP.,               )
                                 )
            Defendant.           )

## PLAINTIFF COOPERVISION INC.'S ELECTION OF PATENTS

As directed by the Court during the September 5, 2007 telephone conference,
Plaintiff CooperVision, Inc. elects to proceed on U.S. Patent Nos. 5,789,461 and 5,776,999.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com
*Attorneys for Plaintiff*
*CooperVision, Inc.*

*Of Counsel*:

Morgan Chu
David I. Gindler
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067
(310) 277-1010

September 12, 2007

1751606

## CERTIFICATE OF SERVICE

I, Jack B. Blumenfeld, hereby certify that on September 12, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Karen L. Pascale, Esquire
> YOUNG, CONAWAY, STARGATT & TAYLOR LLP

I also certify that copies were caused to be served on September 12, 2007 upon the following in the manner indicated:

### BY ELECTRONIC MAIL and HAND DELIVERY

Karen L. Pascale, Esquire
YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

### BY ELECTRONIC MAIL and FIRST CLASS MAIL

John P. Iwanicki, Esquire
BANNER & WITCOFF, LTD.
28 State Street
Boston, MA  02109

> /s/Jack B. Blumenfeld
> Jack B. Blumenfeld (#1014)
> jblumenfeld@mnat.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **COOPERVISION, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **C.A. No. 06-239-SLR** |
| | ) | |
| **CIBA VISION CORP.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### RULE 7.1.1 STATEMENT

Pursuant to 7.1.1 of the Local Rules of the United States District Court for the District of Delaware, I hereby certify that counsel for CIBA Vision Corp. ("CIBA") has made a reasonable effort to reach agreement with counsel for CooperVision, Inc. ("CooperVision") on the matters set forth in CIBA Vision's Motion to Modify the Court's September 5, 2007 Oral Order Regarding Election of Patents for Trial, and that the parties have not been able to reach agreement.

YOUNG CONAWAY STARGATT & TAYLOR LLP

*/s/ Karen L. Pascale*
_____

Date: September 20, 2007

Karen L. Pascale (No. 2903) [kpascale@ycst.com]
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: 302-571-6600
*Attorneys for Defendant, CIBA Vision Corporation*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

COOPERVISION, INC.

      Plaintiff

v.

CIBA VISION CORP.

      Defendant.

C.A. No. 06-239-SLR

## ORDER

At Wilmington this _____ day of _____, 2007;

IT IS ORDERED that CIBA Vision's Motion to Modify the Court's September 5, 2007

Order  Regarding Election of Patents for Trial (D.I. ____) (the "Motion") is GRANTED, as

follows:

1.      The September 5, 2007 Oral Order of this Court (*see* D.I. 67) is hereby modified

to permit CIBA's election of  U.S. Patent No. 5,760,100 as one of the two patents to be litigated

during the initial trial proceedings in this action.

2.      The other patent to be litigated during the initial trial proceedings in this action

shall be either U.S. Patent No. 5,789,461 or U.S. Patent No. 5,776,999, as CooperVision may

elect.

3.      CooperVision shall notify the Court of its election within five (5) business days of

the date of this Order.

 

_____
UNITED STATES DISTRICT JUDGE