IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COOPERVISION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-239-SLR |
| | ) | |
| CIBA VISION CORP., | ) | |
| | ) | |
| Defendant. | ) | |

**CIBA VISION'S REPLY IN SUPPORT OF ITS MOTION
FOR LEAVE TO FILE AMENDED ANSWER AND COUNTERCLAIMS**

I. **INTRODUCTION**

CooperVision's Opposition (D.I. 74) to CIBA's proposed amendment is but a tactical ploy to further delay this litigation while aggressively pursuing CooperVision's offensive case against CIBA in the Eastern District of Texas. CooperVision, not CIBA, is responsible for the delays up until now in the case. Such gamesmanship should not be rewarded, and CIBA's Motion for leave to file its Amended Answer and Counterclaims should be granted.

II. **ARGUMENT**

A. **CIBA Should Be Granted Leave to File its Amended Answer and Counterclaims**

Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." Further, leave to amend "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice, or futility." *Ziegler v. IBP Hog Mkt.*, 249 F.3d 509, 519 (6th Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). No such evidence is present here.

1. **CooperVision Will Not Be Prejudiced If CIBA's Amended Answer and Counterclaims Are Allowed**

CooperVision cannot reasonably maintain that it will be prejudiced if CIBA is permitted to file its Amended Answer and Counterclaims. The six CIBA patents that are the subject of CIBA's infringement counterclaims are the very same patents that are the subject of CooperVision's allegations of noninfringement and invalidity in its declaratory judgment complaint in this case. CIBA's infringement allegations also concern the same CooperVision Biofinity contact lenses which already are at issue in this suit. It stretches credulity to suggest, as CooperVision does, that the addition of CIBA's counterclaims will "dramatically transform" this case or inject "multiple new claims and issues."

2. **CIBA Is Not Guilty of Any Undue Delay or Bad Faith**

Contrary to CooperVision's insinuations, CIBA is not guilty of any undue delay or bad faith in presenting its Amended Answer and Counterclaims. Indeed, CIBA presented its proposed amended pleading to CooperVision on August 22, 2007 – the first opportunity after CooperVision finally produced the necessary technical information regarding its Biofinity contact lenses from which CIBA could determine whether there were bases for infringement counterclaims.

   a) **CooperVision Has Attempted at Every Turn to Delay the Progress of This Case**

CIBA has made every effort throughout this litigation to advance the progress of this case, only to be thwarted by CooperVision at every turn. For instance, CooperVision charges in its Opposition paper that CIBA has unreasonably delayed discovery in this matter. Yet when the parties first reached an impasse in March 2007 on contention interrogatories, CIBA strongly suggested that the parties approach the Court to request that the June 14, 2007 discovery

2

conference be moved up to April. CIBA's goal was to resolve the discovery impasse promptly and thereby avoid any potential impact on the discovery schedule and other deadlines. CooperVision flatly rejected CIBA's request for an early discovery conference.

Similarly, while CooperVision is quick to point out in its Opposition that not a single deposition has been taken in this case, CooperVision fails to inform this Court that in late July, CIBA gave CooperVision deposition dates in August and early September for the inventors of the CIBA patents. CooperVision, however, later cancelled those dates, claiming that it needed copies of prior depositions in order to proceed. After CIBA pointed out that the transcripts of those prior depositions had already been produced, CooperVision complained that CIBA had failed to produce exhibits referenced in the transcripts. CIBA then confirmed, however, that exhibits from the prior depositions of the CIBA inventors had previously been produced and in CooperVision's possession for at least six months. CIBA even identified the so-called missing exhibits by production number. Even then, CooperVision refused to go forward with the inventor depositions as scheduled. Indeed, CooperVision continues to complain, without any basis in fact, that it has not been provided with the discovery it needs to conduct the inventor depositions.

Meanwhile, CooperVision has failed to respond with any dates or any witnesses to CIBA's Rule 30(b)(6) deposition notice that was served nearly two months ago (see D.I. 51).

### b) CIBA Filed the Present Motion at the First Opportunity After It Received the Necessary Technical Information on Which to Base Its Infringement Counterclaims

CooperVision was no more responsive to CIBA's discovery requests regarding CooperVision's contact lenses. Indeed, it was only after much cajoling that CooperVision finally produced samples of its Biofinity lenses to CIBA in late December last year.

CooperVision then did not respond with sufficient technical information and documents regarding the chemical composition of the Biofinity lenses and the processes used to manufacture the lenses until after the June 14, 2007 discovery conference, when the Court directed that CooperVision supplement its prior discovery responses. Following the Court's direction, CooperVision produced thousands of pages of additional documents and identified the documents that were responsive to CIBA's interrogatories nos. 4 and 6 (requesting the chemical composition and structure of the Biofinity lenses and the processes used to manufacture the lenses). Much of this information was not received until July 5, 2007. It was only then that CIBA had the necessary factual predicate for preparing its infringement contentions and asserting infringement counterclaims.

At the June 14, 2007 discovery conference, this Court extended the August 13, 2007 deadline for filing motions to amend the pleadings or join additional parties to October 1, 2007. The parties and this Court thus plainly contemplated that CIBA would file an Amended Answer and Counterclaims by the October 1, 2007 deadline. Yet, rather, than wait until October 1, CIBA filed the present motion on August 27, 2007, because it wanted to move this case forward.

### B. This Court Should Reject CooperVision's Proposal to Bifurcate Discovery Related to Liability and Damages and Willfulness

The most telling indicator of any lack of prejudice to CooperVision is CooperVision's own admission in its Opposition that it would not oppose CIBA's motion, *if*: (1) this Court extends several pre-trial deadlines, including pushing back the deadline for fact discovery from November 1, 2007 to March 1, 2008; and (2) the Court bifurcates the issues of willfulness and damages for both discovery and trial purposes.

CIBA does not object to CooperVision's suggested revision of the pre-trial schedule, as it will not require changing the dates set for the pre-trial conference and trial. Nor does CIBA

oppose bifurcation of the liability and damages and willfulness issues *for trial purposes only*. On the other hand, *bifurcation of discovery* on these issues is unnecessary and will only result in added expense, inconvenience, and delay.

CooperVision's "start and stop" approach to discovery would require the Court to conduct a trial as to liability only, and then reopen discovery for some indefinite period of time with respect to damages and willfulness if CIBA prevails. That scenario is one that neither serves the interests of judicial economy nor facilitates an expeditious resolution of this case.

### 1. CooperVision Cannot Carry Its Burden to Demonstrate Why Bifurcation of Discovery Is Warranted

Under Fed. R. Civ. P 42(b), this Court, in its discretion, can bifurcate the trial of an action for "convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." *Id.* This Court also has discretion to bifurcate an action for discovery purposes.

Although bifurcation of trials and discovery is not unusual, and in appropriate circumstances may be the preferred method, bifurcation remains "the exception, not the rule." *See Dentsply Int'l, Inc. v. Minnesota Mining and Mfg. Co.*, C.A. No. 91-355-SLR (D. Del. July 26, 1993), slip op. at 2 (quoting *Laitram Corp. v. Hewlett-Packard Co.*, 791 F. Supp. 113, 114 (E. D. La. 1993)). As the party seeking bifurcation, CooperVision has the burden of proving that bifurcation of discovery is warranted. *See, e.g., Novartis Pharmaceuticals Corp. v. Apotex Corp.*, 2004 WL 1396257, *2 (S.D.N.Y. June 22, 2004)

CooperVision argues that it would be "tremendously inefficient" for the parties to take discovery on damages issues relating to multiple patents before issues of liability have been determined. But the fact is that this case involves only one allegedly infringing product – CooperVision's Biofinity contact lens. And that product has been on sale in the United States for barely a year.

This is not a situation where voluminous documents or Herculean efforts will be required to complete damages discovery. Indeed, there is absolutely no reason to expect that discovery on all of the issues in this case, including damages related issues, cannot be completed in the nearly six months between now and March 1, 2008, which is the date that CooperVision proposes for the close of fact discovery. This is particularly true in view of this Court's recent decision to proceed to trial first on only two (2) of the patents in suit.[1]

CooperVision does not, nor can it, explain why the damages analysis in this case would present any more extensive discovery and evidence than any other patent case. CooperVision's mere assertion that bifurcation of discovery is "an efficient use of the Court's time and resources," without more, falls far short of satisfying CooperVision's burden. In fact, bifurcation of damages and willfulness issues is extremely inefficient, given that discovery of these issues is inextricably intertwined with discovery of liability-related issues.

### 2. The Substantial Overlap Between Liability and Damages and Willfulness Weighs Against Bifurcation of Discovery

Bifurcation is intended to lend itself to judicial economy. Yet rather than furthering convenience and judicial economy, bifurcation of discovery in this case will result in a needless and wasteful duplication of effort due to the overlapping and duplicative evidence required to prove liability, damages and willfulness.

For example, evidence of sales, market share, and profitability information overlaps both liability and damages when such evidence, clearly relevant to damages, is used to show "commercial success," which is one of the secondary considerations that must be considered in any obviousness, i.e., validity, determination with respect to the CIBA patents in suit. *See, e.g.,*

---

[1] *See* D.I. 67 (transcript of September 5, 2007 telephone conference) at 21-22. CIBA has moved the Court to modify the September 5 Order to allow CIBA to choose one of the two patents that will be tried first, so that contact lens claims are also litigated, instead of only method claims, as part of the first trial in this action. *See* D.I. 76, filed September 20, 2007.

*THK America, Inc. v. NSK Co. Ltd.,* 151 F.R.D. 625, 629 (N.D. Ill. 1993) (evidence regarding the commercial success of plaintiff's patented linear guides will be the same in significant respects as the evidence relating to damages). Likewise, evidence relating to CooperVision's state of mind when it committed the infringement, which is relevant to willfulness and damages, cannot be "neatly separated from the underlying liability issue of whether the patent was infringed upon in the first place." *Real v. Bunn-O-Matic Corp.,* 195 F.R.D. 618, 625 (N.D. Ill. 2000) quoting *Keyes Fibre Co. v. Packaging Corp. of Am.,* 763 F.Supp. 374, 375 (N.D. Ill. 1991). *See also Novartis Pharmaceuticals Corp.,* 2004 WL 1396257 at *2 (finding a substantial overlap of evidence concerning willfulness and liability); *Kimberly-Clark Corp. v. James River Corp.,* 131 F.R.D. 607, 609 (N.D. Ga. 1989) (the willfulness determination "is a finding of fact inextricably bound to the facts underlying the alleged infringement.").

Given the substantial overlap between the evidence that will be offered on the issue of liability and that which will be offered on damages and willfulness, there can be no question but that judicial economy and the conservation of the time and resources of the parties are best served by a single discovery period.

### 3. Bifurcation of Discovery Will Only Lead to an Increase in Discovery Disputes

Aside from the obvious increased costs associated with taking discovery in multiple phases, bifurcating discovery in this case also will inevitably lead to discovery disputes that will require judicial involvement. If discovery is split between liability on one hand, and damages and willfulness on the other, it becomes not only likely but probable that the parties will disagree about whether particular evidence relates only to "liability," only to "damages and willfulness," or to both.

Such likelihood is only amplified in light of CooperVision's current refusal to provide any discovery into the volume or dollar amount of sales of its Biofinity lenses, on the basis that damages are not at issue until CIBA has amended its answer and filed counterclaims of infringement. Each of these disputes will require the attention of this Court and additional paperwork and time by the attorneys, and generate more costs and more delays. Indeed, courts have refused to bifurcate discovery for this very reason. *See, e.g., Laitram Corp. v. Hewlett-Packard Co.*, 791 F.Supp. 113, 117 (E.D. La. 1992) (concluding that if the court limits discovery during the first period to liability only, "the parties are likely to come to the Court with repeated disputes over how requested material is related to liability, damages, state of mind, or all these issues"); *Air-Shields, Inc. v. BOC Group, Inc.*, 1992 WL 315230, *4 (D. Md. 1992) (stay of damages discovery will result in unnecessary judicial involvement in disputes over the scope of discovery).

### 4. Bifurcation Makes Early Settlement Less Likely

Finally, if damages discovery is stayed until after liability is decided, neither party will have a full and accurate picture of the value of the case until late in the proceedings, making it far less likely that the parties will reach an early settlement. As this district has recognized, discovery on damages not only assists the parties in preparing for trial, it also educates each party on the other party's view of the damages, which in turn, assists each party in evaluating its own case and assessing the risks associated with an adverse decision. "Consequently, it can facilitate settlement discussions." *Johns Hopkins University v. CellPro, Inc.*, 160 F.R.D. 30, 35 (D. Del. 1995).

Plainly, as a practical matter, neither party will be willing to engage in any serious settlement negotiations without the financial information that would be uncovered in fact discovery regarding damages.

### III. CONCLUSION

This Court should permit CIBA to file its Amended Answer and Counterclaims. Also, if this Court decides to bifurcate the issues of liability from damages and willfulness, it should do so for purposes of trial only. Bifurcation of discovery regarding these issues would not be productive, would cause unnecessary delay in resolving this case, and further would hamper any prospects for an early settlement.

Finally, in terms of the overall case management issues pending before the Court at this time, CIBA respectfully suggests that the most sensible order of events to get this case "on track" for the remainder of discovery and proceed smoothly towards an October 2008 jury trial is to:

(a) permit CIBA to file its amended pleading, which includes affirmative allegations of infringement against CooperVision on the six patents-in-suit;

(b) finalize the parties' election of two patents for the first trial in this action, to include CIBA's choice of U.S. Patent No. 5,760,100 (containing contact lens claims), together with a patent of CooperVision's choosing (i.e., either the '461 or the '999 patent);[2]

(3) further modify the scheduling order in this action (D.I. 21) to reflect the proposed amended schedule set forth on page 4 of CooperVision's Opposition paper (D.I. 74);

(4) bifurcate the damages and willfulness issues *for trial purposes only*; and

(5) stay the remainder of the parties' claims with respect to the other four patents-in-suit.

---

[2] *See* CIBA's Motion to Modify the Court's September 5, 2007 Oral Order Regarding Election of Patents for Trial (D.I. 76, filed September 20, 2007).

September 24, 2007

YOUNG CONAWAY STARGATT & TAYLOR LLP

*/s/ Karen L. Pascale*
_____
Karen L. Pascale (No. 2903) [kpascale@ycst.com]
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: 302-571-6600

Robert F. Altherr
BANNER & WITCOFF, LTD.
1001 G Street, N.W., 11th Floor
Washington, DC 20001
Telephone: 202-508-9100
Facsimile: 202-508-9299

Timothy C. Meece
Thomas K. Pratt
Shawn P. Gorman
BANNER & WITCOFF, LTD.
Ten South Wacker Drive
Suite 3000
Chicago, Illinois 60606-7407
Telephone: 312-463-5000
Facsimile: 312-463-5001

John P. Iwanicki
BANNER & WITCOFF, LTD.
28 State Street
28th Floor
Boston, MA 02109
Phone: 617-720-9600
Facsimile: 617-720-9601

***Attorneys for Defendant,
CIBA Vision Corporation***

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on September 24, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Jack B. Blumenfeld   jbbefiling@mnat.com
Rodger Dallery Smith, II   rdsefiling@mnat.com
Adam Hoffman   ahoffman@irell.com
Amir A. Naini   anaini@irell.com
Ben Yorks   byorks@irell.com
David I. Gindler   dgindler@irell.com
Jason G. Sheasby   jsheasby@irell.com
Morgan Chu   mchu@irell.com
Stephen W. Larson   slarson@irell.com

I further certify that on September 24, 2007, I caused a copy of the foregoing document to be served on certain of the above-listed counsel and on certain non-registered participants, as listed below in the manner indicated:

### *By Hand Delivery and E-Mail*

Jack B. Blumenfeld [jblumenfeld@mnat.com]
Rodger D. Smith II [rsmith@mnat.com]
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200

### *By E-Mail*

Morgan Chu [mchu@irell.com]
David I. Gindler [dgindler@irell.com]
Jason G. Sheasby [JSheasby@irell.com]
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067
(310) 277-1010

/s/ *Karen L. Pascale*
_____
Karen L. Pascale (No. 2903)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
Email: kpascale@ycst.com