IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COOPERVISION, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 06-239 (SLR) |
| | ) |
| CIBA VISION CORP., | ) |
| | ) |
| Defendant. | ) |

**COOPERVISION, INC.'S OPPOSITION TO CIBA VISION CORP.'S "MOTION UNDER PARAGRAPH NINE OF PROTECTIVE ORDER FOR CANCELLATION OF CONFIDENTIALITY DESIGNATION AS TO COOPERVISION'S LENSES"**

At defendant CIBA Vision Corporation's request, plaintiff CooperVision, Inc. has produced a significant number of contact lens samples during discovery in this matter. Most of the samples -- which collectively cost thousands of dollars -- were not commercially available in the United States until recently, and then only to customers who first obtain a doctor's prescription. In light of the expense involved, CooperVision could have sharply limited the number of samples it provided, or could have insisted that CIBA pay for the numerous samples it requested. But CooperVision elected not to do either of those things. Instead, CooperVision merely asked CIBA to agree that the samples that CooperVision produced at its expense would be used only for purposes of this litigation. Rather than stipulate to this modest request, CIBA chose to burden the Court with this superfluous motion.

CooperVision's position is simple: the sample contact lenses that it has provided to CIBA should be used only for purposes of litigating this case, and should not be used by CIBA to reverse engineer CooperVision's products, to conduct marketing comparisons, or for any other activity that does not relate to this case. CIBA's response is that CooperVision's contact lenses can be easily purchased outside of the United States, so CIBA should be entitled

to use the samples produced in discovery for any purpose it desires. This argument lacks merit. If CIBA really believed that the lenses at issue are easily obtainable from commercial sources, it presumably would have obtained the lenses commercially rather than wasting the Court's time by filing this motion.[1] But even assuming for the moment that CIBA can easily obtain equivalent lenses from commercial sources, that fact would not make it any less reasonable for CooperVision to insist that samples it provides at its own expense to CIBA during the course of discovery be used only for purposes of this litigation.

The Court has broad discretion under Fed. R. Civ. P. 26(c) to control the parties' use of discovery materials. In exercising this discretion, it is not uncommon for courts to order that discovery materials be used only for purposes of the litigation in which they were produced. *E.g.*, *Joint Stock Society v. UDV North America, Inc.*, 104 F. Supp. 2d 390, 403-04 (D. Del. 1990) (holding that evidence of defendants' "poor management," though neither a trade secret nor confidential financial data, could only be used in Delaware litigation and not in other litigations pending between the parties); *Scott v. Monsanto Co.*, 868 F.2d 786, 792 (5th Cir. 1989) (holding that district court did not abuse its discretion by ordering receiving party to use discovery materials only for purposes of litigation in which materials were produced). Indeed, Delaware Local Rule 26.2 expressly states that discovery materials may be designated as "Confidential," after which they may be used by the receiving party "only for purposes of litigating the case." That is all CooperVision is asking for here. And with the exception of CIBA's irrelevant assertion that some of CooperVision's lenses are commercially available,

---

[1] CIBA represented to a federal district judge in Florida in connection with its pending patent infringement action against Johnson & Johnson Vision Care, Inc. ("JJVC") that it had not been able to obtain samples of JJVC lenses that were available outside of the United States because "it's not quite that easy, for competitors to get other people's products." Ex. A.

CIBA provides no justification, nor any authority, for the proposition that it should be allowed to use sample lenses produced in discovery for purposes unrelated to this case.

Finally, in addition to CIBA's motion being substantively meritless, CIBA's contention that CooperVision has abused the parties' Protective Order by designating its lens samples as "confidential" is also factually incorrect. As CIBA admits, CooperVision produced the samples *before* any protective order was in place. When CooperVision produced the samples, it stated that "We are designating the lenses as Confidential pursuant to Delaware Local Rule 26.2 in order to ensure that they are used for no other purpose other than this litigation." (D.I. 71, Ex. 2). CooperVision subsequently offered to remove the confidentiality designation under Local Rule 26.2 provided only that CIBA agree not to use the samples for purposes other than litigating the case. (*E.g.*, D.I. 71, Ex. 5). CIBA refused. CooperVision did not, however, designate the samples as confidential under the parties' Protective Order, which was not entered until many months after the samples had been produced. Accordingly, CIBA's contention that CooperVision has somehow abused the Protective Order by designating its lens samples as confidential is simply wrong.

For the foregoing reasons, CooperVision respectfully submits that CIBA's motion should be denied or, in the alternative, that CIBA should be ordered to use the sample lenses provided by CooperVision only for purposes of litigating this case.

          MORRIS, NICHOLS, ARSHT & TUNNELL LLP

          */s/ Rodger D. Smith II (#3778)*
          Jack B. Blumenfeld (#1014)
          Rodger D. Smith II (#3778)
          1201 N. Market Street
          P.O. Box 1347
          Wilmington, DE  19899
          (302) 658-9200
          rsmith@mnat.com
            Attorneys for Plaintiff CooperVision, Inc.

OF COUNSEL:

Morgan Chu
David I. Gindler
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067
(310) 277-1010

October 1, 2007
1251071

- 4 -

**CERTIFICATE OF SERVICE**

I, Rodger D. Smith II, hereby certify that on October 1, 2007, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Karen L. Pascale, Esquire
> YOUNG, CONAWAY, STARGATT & TAYLOR LLP

I also certify that copies were caused to be served on October 1, 2007, upon the following in the manner indicated:

**BY ELECTRONIC MAIL and HAND DELIVERY**

Karen L. Pascale, Esquire
YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

**BY ELECTRONIC MAIL**

John P. Iwanicki, Esquire
BANNER & WITCOFF, LTD.
28 State Street
Boston, MA  02109

> */s/ Rodger D. Smith II (#3778)*
> Rodger D. Smith II (#3778)
> rsmith@mnat.com

# EXHIBIT A

1

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOHNSON & JOHNSON　　　　　　　Jacksonville, Florida
VISION CARE, INC.,

　　　Plaintiff,　　　　　　　　Case No. 3:05-cv-135-J-32TEM

vs.　　　　　　　　　　　　　　August 9, 2005

CIBA VISION CORPORATION,　　　9:00 a.m.

　　　Defendant.　　　　　　　　Courtroom No. 10B


EVIDENTIARY HEARING
BEFORE THE HONORABLE TIMOTHY J. CORRIGAN
UNITED STATES DISTRICT JUDGE

18

```
 1  patents.  That brings us here today.  And we're talking here
 2  about a new product that J&J is about to launch, ACUVUE
 3  OASYS.
 4           ACUVUE OASYS, as the court is aware, is Johnson &
 5  Johnson's new high Dk silicon hydrogel contact lens.  It's
 6  scheduled to be released commercially on August 22nd, 2005.
 7           THE COURT:  Let me ask you a question about the
 8  timing of all this, because there's a dispute -- and I'm not
 9  sure how important it's going to end up being, but -- I
10  guess it goes to the issue of irreparable harm.
11           But while I was thinking about it, the way I
12  understand this -- this litigation, I guess, was filed, as I
13  recall it, in February; is that right?
14           MR. STEINDLER:  The original case was filed in
15  February.
16           THE COURT:  Against the Phoenix.  And you-all
17  moved to dismiss it, so there was no case or controversy,
18  because -- and now I've ruled on that.
19           And, basically, your opponents say:  Why did you
20  wait so -- if you were going to seek a preliminary
21  injunction, why did you wait so long?  And your answer, That
22  is because they wouldn't give us the lens to look at.  And
23  as soon as we looked at it, that's when we decided to move
24  for preliminary injunctive relief.
25           Do I have it all about right?
```

```
1            MR. STEINDLER:  That's about right.
2            THE COURT:  Okay.  I guess my question is:  Hasn't
3  this been on the market in England since shortly after you
4  filed your original lawsuit?
5            MR. STEINDLER:  It's been on the market -- I
6  understand, from Johnson & Johnson's paper, been on the
7  market since March.  But the U.S. patent laws don't reach
8  England.
9            THE COURT:  I understand that.  But you didn't
10 know anybody in England that could send you one?
11           MR. STEINDLER:  Well, it's not quite that easy,
12 for competitors to get other people's products.
13           THE COURT:  Couldn't you just go buy it or
14 something?  I mean, I guess what I'm -- is it really the
15 case that you literally couldn't get your hands on them
16 until June 15th?  Is that...
17           MR. STEINDLER:  Let me say two things.  First of
18 all, a, it's not that easy to get your hands on products.
19 Second of all, we didn't know -- and we didn't know until
20 two weeks ago -- that the product was being sold -- that was
21 being sold in Europe was the same product that they're
22 planning to sell in the United States.  We just were able to
23 confirm that during one of the depositions taken in advance
24 of this hearing.
25           THE COURT:  Well, what is the -- and the other
```

1 thing that -- the other point that J&J raises, that I wanted
2 to at least get you to respond to, is what is the perceived
3 urgency of the matter now, as opposed to when you filed the
4 suit and when we were setting up the schedule that, I think
5 with your agreement, was not going to get this case to trial
6 until 2007?
7         And I don't recall us talking about a preliminary
8 injunction at that point or anything.  What has motivated
9 this filing, which, as you know, is a -- puts the court in a
10 slightly difficult position of having to do an essential
11 meaning adjudication of myriad issues that are before the
12 court on an uncompleted record?
13        And I recognize injunction practice permits that
14 and it contemplates that.  And in appropriate cases,
15 injunctive relief is available.
16        But I guess I'm just -- between the time that you
17 filed the suit -- and we were talking about a fairly lengthy
18 schedule of Markman and adjudication, and get us to trial in
19 '07, after the other cases were tried, to where we are now.
20 What's the motivation?  Or what's changed?  What's driving
21 this at this point?
22        MR. STEINDLER:  Well, I think there's a couple of
23 answers to that.  And the simple answer, I think, is this,
24 Your Honor.
25        When we were having a conversation about trial